UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Marvin Gerber,

        Plaintiff,

vs.

Case No.2:19-cv-13726
Hon. Victoria Roberts

Henry Herskovitz, Gloria Harb, Tom Saffold,
Rudy List, Chris Mark, Deir Yassin Remembered, Inc.,
Jewish Witnesses for Peace and Friends, The City of Ann Arbor,
Ann Arbor Mayor Christopher Taylor, in his official
And individual capacities, Ann Arbor Community Services
Administrator Derek Delacourt, in his official and individual
capacities, Ann Arbor City Attorney Stephen Postema, in his
official and individual capacities, and Senior Assistant
City Attorney Kristen Larcom, in her official and individual capacities.

        Defendants, Jointly and Severally.
_____/

**DEFENDANTS HERSKOVITZ, HARB, SAFFOLD, LIST, MARK AND
JEWISH WITNESSES FOR PEACE AND FRIENDS'
REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO SET ASIDE DEFAULT</u>**

## **TABLE OF CONTENTS**

Concise Statement of the Issues Presented..................................................................ii

Statement of Controlling/Most Appropriate Authority.............................................ii

Table of Authorities....................................................................................................iii

Brief in Support...........................................................................................................1

**I.      Defendants Have a Meritorious Defense**......................................................1

    **A. The Protestors' Signs are not Libelous**.....................................................1

    **B. The Protests are not "Targeted Picketing"**.............................................3

    **C. The Congregants are not a Captive Audience**......................................6

**II.     Plaintiffs Will Suffer no Prejudice**...............................................................7

**III.    The Default was not Willful or Culpable**....................................................7

Conclusion and Relief Requested................................................................................7

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.  Whether the Court should exercise its discretion and authority to set aside the default entered by the Clerk of the Court against Defendant Jewish Witnesses for Peace and Friends on February 3, 2020, where the default was not willful or culpable, there is no prejudice to Plaintiffs, and Defendant has a meritorious defense?

Defendant says, "Yes."

Plaintiffs say, "No."

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

Meyer v. Grant, 486 U.S. 414; 108 S. Ct. 1886 (1988)

Hill v. Colorado, 530 U.S. 703, 120 S. Ct. 2480 (2000)

Snyder v. Phelps, 562 U.S. 443, 460, 131 S. Ct. 1207 (2011)

Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004)

Thompson v. Am. Home Assurance Co., 95 F.3d 429 (6th Cir. 1996)

# TABLE OF AUTHORITIES

**CASES**

Beard v. Alexandria, 341 U.S. 622 (1951)..................................................................6

Beauharnais v. Illinois, 343 U.S. 250, 72 S. Ct. 725 (1952)................................1, 3

Boos v. Barry, 485 U.S. 312, 322, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988)..........2

Buckley v. Valeo, 424, U.S. 1, 45, 46 L. Ed. 2d 659, 96 S/ Ct/ 612 (1976).............2

Cohen v. California, 403 U.Z. 15, 21, (1971)...........................................................6

Dean v. Byerley, 354 F.3d 540, 544 (6th Cir. 2004).................................................5

Frisby v. Schultz, 487 U.S. 474 (1988).........................................................3, 4, 5, 6

Hill v. Colorado, 530 U.Z. 703, 716, 120 S. Ct. 2480 (2000)...........................3, 5, 6

Madsen v. Women's Health Ctr., 512 U.S. 753, 764-65, 114 S. Ct. 2516 (1994).....5

Meyer v. Grant, 486 U.S. 414, 421, 108 S. Ct. 1886, 1891 (1988)..........................2

Roth v. United States, 354 U.S. 476, 484, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957)........................................................................................................................2

Rowan v. Post Office Dept., 397 U.S. 728 (1970)....................................................6

Snyder v. Phelps, 562 U.S. 443, 460, 131 S. Ct. 1207 (2011).................................6

Thompson v. Am. Home Assurance Co., 95 F3d 429, 433 (6th Cir. 1996)..............6

Thorburn v. Austin, 231 F.3d 1114, 1116 (8th Cir. 2000)....................................4, 5

**RULES**

Fed.R.Civ.P. 55.........................................................................................................7

## **BRIEF IN SUPPORT**

### I. Defendants Have a Meritorious Defense

Plaintiffs contend that Defendants' protests are not protected because (1) the signs are libelous; (2) the protests constitute "targeted picketing"; and (3) the congregants at Beth Israel constitute a "captive audience." None of these contentions are supported by controlling authority—not even that cited by Plaintiffs.

### A. The Protestors' Signs are not Libelous

First, Plaintiffs' argument assumes that the signs utilized by the Protestor Defendants contain messages that are libelous, relying upon *Beauharnais v. Illinois*, 343 U.S. 250, 72 S. Ct. 725 (1952) and claiming that the Supreme Court's decision is "dispositive" here. But *Beauharnais* involved distinctly different facts.

In *Beauharnais*, the petitioner was prosecuted under an Illinois statute after publishing and distributing flyers alleging, *inter alia*, that African-Americans were rapists, robbers, and drug users. The trial court found such statements to constitute libel, and therefore rejected the petitioner's argument that his speech was protected under the First Amendment. The Supreme Court agreed, reasoning that if a statement would be libelous as to an individual, it would also be libelous as to members of a defined group. On that basis, it upheld the constitutionality of the statute.

1

The Supreme Court recognized the long-settled principle that falsely accusing another person of a crime of moral turpitude constituted libel *per se*, that such libels were punishable under criminal law, and concluded that where "an utterance directed at an individual may be the object of criminal sanctions, we cannot deny to a State power to punish the same utterance directed at a defined group." *Id* at 258.

By contrast, the Defendants' signs do not accuse the Beth Israel congregants nor Jews in general of crimes of moral turpitude nor do they contain any other content that is libelous *per se*; instead, the signs criticize U.S. policy regarding Israel, and Israel's policy regarding Palestine. These types of messages—advocating political and social change on matters of public concern—are precisely the kind of speech at the heart of the First Amendment's protections. Meyer v. Grant, 486 U.S. 414, 421, 108 S. Ct. 1886, 1891 (1988) ("The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" (quoting Roth v. United States, 354 U.S. 476, 484, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957)) Any attempt to place limitations on such core political speech is subject to exacting scrutiny. Buckley v. Valeo, 424 U.S. 1, 45, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976).

That the signs may be insulting or offensive to Plaintiffs is of no particular import in a First Amendment analysis. "[I]n public debate [we] must tolerate

insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." Boos v. Barry, 485 U.S. 312, 322, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988) (some internal quotation marks omitted); *see also* Hill v. Colorado, 530 U.S. 703, 716, 120 S. Ct. 2480 (2000) ("[T]he right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience.") Because the Protestors' conduct is core political speech, it is entitled to the highest levels of constitutional protection, unlike the libelous statements at issue in *Beauharnais*, which were entitled to none at all.

### B. The Protests are not "Targeted Picketing"

Plaintiffs' reliance upon Frisby v. Schultz, 487 U.S. 474 (1988) for the proposition that the Protestors may be properly barred from holding vigils across the street from Beth Israel, is likewise misplaced. Plaintiffs claim that, under federal precedent, "targeted picketing at a single location in a residential area" may be prohibited without running afoul of the First Amendment, but this is a highly misleading reading. Frisby, and the cases that have followed it, have narrowly limited such restrictions to targeting individuals in their private residences.

3

In Frisby, for instance, the Court specifically disclaimed that its decision reached beyond picketing in front of an individual's home when that home is used exclusively as a residence:

> Particular hypothetical applications of the ordinance -- to, for example, a particular resident's use of his or her home as a place of business or public meeting, or to picketers present at a particular home by invitation of the resident -- may present somewhat different questions. Initially, the ordinance by its own terms may not apply in such circumstances, since the ordinance's goal is the protection of residential privacy, App. to Juris. Statement A-26, and since it speaks only of a "residence or dwelling," not a place of business, *id.*, at A-28. Cf. *Carey, supra*, at 457 (quoting an antipicketing ordinance expressly rendered inapplicable by use of home as a place of business or to hold a public meeting). Moreover, since our First Amendment analysis is grounded in protection of the unwilling residential listener, the constitutionality of applying the ordinance to such hypotheticals remains open to question. These are, however, questions we need not address today in order to dispose of appellees' facial challenge. [Frisby, 487 U.S. at 488]

Thorburn v. Austin, 231 F.3d 1114, 1116 (8th Cir. 2000), another case cited by Plaintiffs, similarly involved an ordinance that prohibited "focused picketing that is directed toward a particular person in a rectangular zone in front of that person's dwelling," but "does not include the sidewalk space across the street from the targeted dwelling," and "shall not apply to any picketing, focused or otherwise, which lawfully occurs before or about any commercial or industrial establishment or business, regardless of where located." Id. at 1116. The Eighth Circuit upheld the ordinance as a content-neutral, narrowly tailored time, place, and manner restriction that advanced a plainly legitimate governmental interest. But that does

4

not help the Plaintiffs in this case, because if the same Lincoln ordinance was applied here, it would not forbid the Protestors' conduct.

Put simply, Plaintiffs are not residents of Beth Israel and the Defendants are not targeting any individual. As such, Defendants' conduct is not "targeted picketing" within the meaning of Frisby and its progeny. Additionally, unlike those cases, there is no ordinance prohibiting targeted residential picketing at issue here. The Frisby line of cases stand for the proposition that the *legislature* may enact content-neutral reasonable time, place, and manner restrictions on such picketing to advance a legitimate governmental objective[1]. But absent such a statute or ordinance, there is a "clearly established [First Amendment] right to engage in peaceful targeted residential picketing." Dean v. Byerley, 354 F.3d 540, 544 (6th Cir. 2004).

Plaintiffs' attempts to analogize Beth Israel to a private residence because it may be called a "house of worship" are likewise unconvincing (and unsupported by any controlling precedent). And by Plaintiffs' own admission, Beth Israel is a public meeting place, open to members of the public of any faith. The Frisby opinion, by its own terms, would not have reached a private residence used as a place of public meeting, and it certainly would not apply where the building in

---

[1] Comparable restrictions by judicial decree are disfavored. Hill, 530 U.S. at 713; Madsen v. Women's Health Ctr., 512 U.S. 753, 764-65, 114 S. Ct. 2516 (1994)

5

question is not a private residence. And as Thorburn makes clear, it is the actual use of the building that controls the analysis, not the zoning of the area where the building is located.

### C. The Congregants are not a Captive Audience

Plaintiffs argue that the congregants at Beth Israel and its annex, entering public places from another public place, are a "captive audience," apparently because they should not be subjected from "the necessity of repeatedly averting their eyes and turning their heads away from the direction in which the offensive posters are positioned." R. 22 at PageID.521. This is nonsense.

To the extent that the Supreme Court has applied the so-called "captive audience doctrine," it has done so "only sparingly to protect unwilling listeners from protected speech." Snyder v. Phelps, 562 U.S. 443, 460, 131 S. Ct. 1207 (2011). As with the "targeted picketing" cases, it applies primarily to one's home, or places where avoidance of the message is practically impossible. Frisby, supra; Rowan v. Post Office Dept., 397 U.S. 728 (1970); Beard v. Alexandria, 341 U.S. 622 (1951). But where the speech at issue is protected by the First Amendment and the speaker is in a traditional public forum, even offensive messages must be tolerated "because offended viewers can 'effectively avoid further bombardment of their sensibilities simply by averting their eyes.'" Hill, 530 U.S. at 716. (quoting Cohen v. California, 403 U.S. 15, 21 (1971)) So it is here.

6

## II. Plaintiffs Will Suffer no Prejudice

Plaintiffs misconstrue the meaning of "prejudice," for purposes of setting aside a default. Plaintiffs' primary complaint is that they will not receive the injunctive relief to which they believe they are entitled as quickly if they are required to litigate to a decision on the merits. In other words, they complain of delay. But mere delay in obtaining relief does not constitute prejudice. Thompson v. Am. Home Assurance Co., 95 F.3d 429, 433-34 (6th Cir. 1996).

## III. The Default was not Willful or Culpable

For purposes of a Rule 55(c) analysis, "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." Thompson v. Am. Home Assurance Co., 95 F.3d 429, 433 (6th Cir. 1996). Defendant's stated reasons for the default (an honest mistake in not perceiving the revised language regarding JWP in Plaintiffs' voluminous First Amended Complaint, coupled with the good-faith belief that JWP is not, in fact, a legal entity capable of being sued) do not evince an intent to thwart judicial proceedings nor a reckless disregard.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, for all of the reasons set forth herein, Defendant JWP respectfully requests that this Honorable Court set aside the 2/3/20 entry of default.

Respectfully submitted,

By: /s/Cynthia Heenan
Cynthia Heenan, P53664
***Attorneys for Defendants Henry Herskovitz, Gloria Harb, Tom Saffold, Rudy List, Chris Mark, and Jewish Witnesses for Peace and Friends***
220 Bagley St., Ste. 740
Detroit, MI 48226
(313) 961-2255/Fax: (313) 922-5130
Heenan@ConLitPC.Com

Dated: February 20, 2020

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 20, 2020, he electronically filed a copy of Defendants' *Reply to Plaintiffs' Brief in Opposition to Defendant's Motion to Set Aside Default*. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/John A. Shea
John A. Shea (P37634)
Attorney for Defendants
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net/

Dated: February 20, 2020

8