UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN GERBER, et al,

      Plaintiffs,

v.

HENRY HERSKOVITZ, et al,

      Defendants.

Case No. 2:19-cv-13726
Hon. Victoria Roberts

**CITY OF ANN ARBOR**
**DEFENDANTS' MOTION TO**
**DISMISS PURSUANT TO**
**FRCP 12(b)(1) AND (6)**

---

Marc M. Susselman (P29481)
Attorney for Plaintiff
43834 Brandywyne Rd.
Canton, MI  48187
(734) 416-5186
marcsusselman@gmail.com

Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the City of Ann Arbor
Derek Delacourt, Kristen D. Larcom,
Christopher Taylor and Stephen K.
Postema
301 E. Huron St., P.O. Box 8647
Ann Arbor, MI  48107-8647
Phone: (734) 794-6170
twilhelm@a2gov.org

Cynthia Heenan (P53664)
Hugh M. Davis (P12555)
Constitutional Litigation
Associates, P.C.
Attorneys for Defendants Herskovitz,
Harb, Saffold, List, Mark and JWP
220 Bagley St., Suite 740
Detroit, MI  48226
(313) 961-2255
Heenan@ConLitPC.Com
Davis@ConLitPC.Com

John A. Shea (P37634)
Attorney for Defendants Herskovitz,
Harb, Saffold, List, Mark and JWP
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

---

### DEFENDANT CITY OF ANN ARBOR AND INDIVIDUAL CITY DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND (6)

Defendants City of Ann Arbor, Mayor Christopher Taylor, Community Services Area Administrator Derek Delacourt, City Attorney Stephen Postema, and Senior Assistant City Attorney Kirsten Larcom, by and through the Office of the City Attorney, Timothy S. Wilhelm, Senior Assistant City Attorney, move this Court to grant their Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction due to lack of standing and Fed. R. Civ. P. 12(b)(6) for failure to state a claim against the City Defendants on which relief could be granted.

This Motion is filed as the City Defendants' first responsive pleading to Plaintiffs' First Amended Complaint as permitted under Fed. R. Civ. P. 12 and pursuant to the January 3, 2020 Order Granting Motion and Setting Deadlines (ECF 10) which set March 10, 2020 as the deadline for the filing of Defendants' first responsive pleading.

In addition, on March 9, 2020, pursuant to L.R. 7.1(a), the City's counsel spoke with Plaintiffs' counsel via telephone and explained the nature of this Motion and requested but did not obtain concurrence in the relief sought.

Office of the City Attorney

/s/ TIMOTHY S. WILHELM
Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the Defendants City of Ann
Arbor, Christopher Taylor, Derek Delacourt,
Stephen K. Postema,
and Kristen D. Larcom
301 E. Huron St., P.O. Box 8647
Ann Arbor, MI  48107-8647
Phone: (734) 794-6170
twilhelm@a2gov.org

Dated: March 10, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notice of such filing to the following: Plaintiff's Counsel and  I hereby certify that I have mailed by US Mail the document to the following non-ECF participants: None.

/s/ Jane Allen
Assistant
Ann Arbor City Attorney's Office
City of Ann Arbor
301 E. Huron, P.O. Box 8647
Ann Arbor, MI  48107-8647
(734) 794-6180

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN GERBER, et al,

    Plaintiffs,

v.

HENRY HERSKOVITZ, et al,

    Defendants.

Case No. 2:19-cv-13726
Hon. Victoria Roberts

**BRIEF IN SUPPORT OF
CITY OF ANN ARBOR
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO
FRCP 12(b)(1) AND (6)**

---

Marc M. Susselman (P29481)
Attorney for Plaintiff
43834 Brandywyne Rd.
Canton, MI  48187
(734) 416-5186
marcsusselman@gmail.com

Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the City of Ann Arbor
Derek Delacourt, Kristen D. Larcom,
Christopher Taylor and Stephen K.
Postema
301 E. Huron St., P.O. Box 8647
Ann Arbor, MI  48107-8647
Phone: (734) 794-6170
twilhelm@a2gov.org

Cynthia Heenan (P53664)
Hugh M. Davis (P12555)
Constitutional Litigation
Associates, P.C.
Attorneys for Defendants Herskovitz,
Harb, Saffold, List, Mark and JWP
220 Bagley St., Suite 740
Detroit, MI  48226
(313) 961-2255
Heenan@ConLitPC.Com
Davis@ConLitPC.Com

John A. Shea (P37634)
Attorney for Defendants Herskovitz,
Harb, Saffold, List, Mark and JWP
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

---

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED.................................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................v

INDEX OF AUTHORITIES........................................................................... v-vii

I.      INTRODUCTION ............................................................................1

II.     STATEMENT OF FACTS ...........................................................3

III.    STANDARD OF REVIEW ...........................................................8

IV.    ARGUMENT....................................................................................9

      A     PLAINTIFFS LACK STANDING ........................................9

            1.     Plaintiffs Have Not Suffered an Actual Concrete Injury............10

            2.     Plaintiffs' Alleged Injury is Not Fairly Traceable to the City Defendants' Action or Inactions ..................................................13

            3.     Plaintiffs' Alleged Injury Will Not Be Redressed by this Court 15

      B.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CITY DEFENDANTS ...............................................................................15

            1.     Plaintiffs Have Failed to State any Violation of the U.S. Constitution or Federal Law that would Entitle Them to Relief .......................................................................................16

                 a.     Plaintiffs Fail to State a §1983 Civil Rights Violation.......16

                 b.     Plaintiffs Fail to State a Conspiracy Claim ......................17

                 c.     Plaintiffs Fail to State a Substantive Due Process Violation .........................................................................20

                 d.     Plaintiffs Fail to State a Right to Petition Violation..........20

e.      Plaintiffs Have Not Stated a RFRA or RLUIPA Violation.21

f.      The Individual City Defendants are Entitled to Qualified
        Immunity on All Individual Capacity Claims.......................22

2.      The Court Should Decline Supplemental Jurisdiction Under
        §1367............................................................................................24

3.      Alternatively, Plaintiffs Fail to State a Claim Under State
        Law..............................................................................................24

CONCLUSION .......................................................................................................25

INDEX OF EXHIBITS

## STATEMENT OF ISSUES PRESENTED

**I.**  **Should Plaintiffs' First Amended Complaint be dismissed for lack of Article III jurisdiction due to Plaintiffs' lack of standing?**

City Defendants Answer:          Yes
This Court Should Answer:      Yes

**II.**  **Should Plaintiffs' First Amended Complaint be dismissed as to the City Defendants for failure to state a claim upon which relief may be granted?**

City Defendants Answer:          Yes
This Court Should Answer:      Yes

**III.**  **Are the individual City Defendants Taylor, Delacourt, Postema and Larcom entitled to Qualified Immunity as to Plaintiffs' federal claims against them?**

City Defendants Answer:          Yes
This Court Should Answer:      Yes

**IV.**  **Should the Court decline to exercise §1367 supplemental jurisdiction over Plaintiffs' state law claims?**

City Defendants Answer:          Yes
This Court Should Answer:      Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)..............9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)...................................................................................9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)...............................................................................10, 14

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796 (2005)...............................................................................12, 20

## TABLE OF AUTHORITIES

### CASES

*Albright v. Oliver*, 510 U.S. 266; 114 S.Ct. 807 (1994) ...........................................16

*B&B Entm't, Inc. v. Dunfee*, 630 F.Supp.2d 870 (S.D. Ohio 2009)............ 17-18, 23

*Bowers v. Flint*, 325 F3d 758 (6th Cir 2003) ............................................................20

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, (6th Cir. 2012) ............................8

*Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ...................................................................................9

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600; 99 S.Ct. 1905 (1979) ...................................................................................16

*City of Boerne v. Flores,* 521 U.S. 507 (1997) ........................................................22

*Clair v. N. Ky. Indep. Health Dist.*, 504 F.Supp.2d 206 (E.D. Ky. 2006)...............20

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998 (1989) ...................................................................................12, 17

*Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992) ................................20

*Felber v. Yudof*, 851 F.Supp.2d 1182 (N.D. Cal. 2011) .........................................20

*Frazier v. Michigan,* 41 Fed. Appx. 762 (6th Cir. 2002).........................................17

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009)

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790 (1971) ...................................22

*Harlow v. Fitzgerald*, 457 U.S. 800; 102 S.Ct. 2727 (1982)....................................23

v

*Haverstick Enter's, Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251
  (E.D. Mich. 1992) ..........................................................................................23

*Indiana Coalition for Public Educ. – Monroe County v. McCormick,* 338
  F.Supp.3 926 (S.D. Ind. 2018)......................................................................14

*Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146 (1973) ...............................17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351
  (1992) ....................................................................................................10, 14

*Macera v. Vill. Bd. of Ilion*, 2019 WL 4805354, (N.D.N.Y. Sept. 30, 2019
  slip copy ...................................................................................................13

*Mandel v. Bd. of Trustees of Calif. State Univ.*, 2018 WL 5458739 (N.D.
  Cal. 2018 unpublished ................................................................................13

*Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 104 S. Ct.
  1058 (1984)................................................................................................21

*Monell v. Dept of Soc. Services*, 436 U.S. 658; 98 S.Ct. 2018 (1978) ...................17

*Packard v. Farmers Insur. Co. of Columbus*, 423 Fed. Appx. 580, 584 (6th
  Cir. 2011) .................................................................................................24

*Pearson v. Callahan,* 555 U.S. 223, 244; 129 S.Ct. 808 (2009) ...........................22

*Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 840 (6th Cir.
  2000) .......................................................................................................21

*Rosen v. Tenn. Comm'r of Fin. & Admin.,* 288 F.3d 918 (6th Cir. 2002)................9

*Shorts v. Bartholomew*, 255 Fed.Appx. 46, 57 (6th Cir. 2007) ...............................17

*Siegel v. U. S. Dep't of Treasury*, 304 F.Supp.3d 45 (D.D.C. 2018) ................14, 15

*Sines v. Kessler,* 324 F.Supp.3d 765, 802 (WD Va. 2018)......................................12

*Snyder v. Phelps*, 562 U.S. 443, 458; 131 S.Ct. 1207, 1219 (2011)........................11

*Stocker v. United States*, 705 F.3d 225, 229 (6th Cir. 2013) ...................................8

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796
  (2005)..................................................................................................12, 20

*Tucker v. City of Fairfield, Ohio*, 398 F.3d 457 (6th Cir. 2005) ............................23

*United Bd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S.
  825, 103 S.Ct. 3352 (1983)..........................................................................19

*Warth v. Seldin,* 422 U.S. 490, 498; 95 S.Ct. 2197 (1975).......................................9

*Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001) .................................17

**RULES**

Fed. R. Civ. P. 8(a) ......................................................................................9, 15

Fed. R. Civ. P. 12(b)(1) ..................................................................................8

Fed. R. Civ. P. 12(b)(6) ..................................................................................8

**STATUTES**

28 U.S.C. §1367 ...........................................................................................24

42 U.S.C. §1982 ......................................................................................*passim*

42 U.S.C., §1983 .....................................................................................*passim*

42 U.S.C. § 1985(3) ................................................................................*passim*

42 U.S.C. §1986 ......................................................................................*passim*

42 U.S.C. §2000, Religious Land Use and Institutionalized Persons Act, (RLUIPA) ...........................................................................7, 21, 22

RELIGIOUS FREEDOM RESTORATION ACT OF 1993 (RFRA) .........................7, 21, 22

## I.    <u>INTRODUCTION</u>

This lawsuit arises out of Plaintiffs' allegations that the regular, lawful, and peaceful protests and display of political signs by a small number of individual protesters on the public sidewalk in front of Beth Israel Synagogue in Ann Arbor for several hours before and during the Synagogue's regularly scheduled Saturday morning religious services over the past 16 years violates the Plaintiffs' rights protected under federal and state law.  The protests largely involve the display of political signs, which Plaintiffs acknowledge relate to matters of public concern, some of which were placed on the narrow lawn extension between the sidewalk and curb in front of the Synagogue.

The Plaintiffs allege in conclusory fashion that the Protesters' conduct and signs are not protected speech under the First Amendment, but instead are illegal, offensive, and have caused them severe emotional distress and diminished their enjoyment their religious worship, all of which violates Plaintiffs' rights under federal and state law.

Equally novel, Plaintiffs seek to hold the City Defendants liable under various federal and state law theories for ostensibly enabling, aiding and abetting, and conspiring with the Protesters in their alleged violations of Plaintiffs' right to free exercise of religion by failing to enforce the City Code consistent with Plaintiffs' view of the law, thereby failing to put a stop to the Protesters' offensive conduct.

While the Protesters' conduct and messages may be distasteful and hurtful to Plaintiffs and their fellow congregants, Plaintiffs' claims against the City Defendants must all be dismissed as a matter of law.

Plaintiffs fail to allege sufficient well-pleaded facts to establish standing and jurisdiction in this Court or to state a cognizable claim on which relief could be granted.  Most importantly, Plaintiffs fail to allege facts establishing an actual concrete and particularized injury.  Nowhere in their First Amended Complaint do they allege that the Protesters or City Defendants have prevented them from attending Sabbath services or from exercising their faith.  Also, contrary to their conclusory assertions, the Protesters' activities on the public sidewalk, including the display of signs, are protected under the First Amendment; therefore, there is no basis on which the City could stop the protests.  And, even if the signs placed in the lawn extension were somehow in violation of City Code and subject to regulation or permitting, Plaintiffs' have no right to enforcement of the Code against the Protesters.  The City Defendants' alleged failure to enforce did not and cannot violate the Plaintiffs' rights.

A close review of Plaintiffs' claims reveals that they have failed to establish Article III standing to sue the City Defendants in federal court.  They cannot establish an actual concrete injury that is fairly traceable to the City Defendants' conduct that is likely to be redressed by a favorable ruling from this Court.

2

Also, and no less important, Plaintiffs' First Amended Complaint lacks sufficient well-pleaded facts to support their claims against the City Defendants. All of Plaintiffs' claims suffer from vague, generalized and conclusory allegations and lack well-pleaded facts showing who did what, when, where, and how Plaintiffs were allegedly injured. Plaintiffs' First Amended Complaint fails to meet the minimum standards for pleading claims in federal court, and consequently, Plaintiffs' claims against the City Defendants should all be dismissed for failure to state a claim.

Finally, even if, arguendo, Plaintiffs could somehow establish standing and state a claim, the individual City Defendants are entitled to qualified immunity because their actions were objectively reasonable under the circumstances.

For these reasons, the Court should dismiss all of Plaintiffs' claims against the City Defendants and decline supplemental jurisdiction over their State law claims.

## II.   STATEMENT OF FACTS

Disregarding the many vague and unsupported generalizations and legal conclusions in the First Amended Complaint, the following is the City Defendants' statement of the salient facts involved in this matter.

Plaintiff's Marvin Gerber and Dr. Miriam Brysk allege that a group of protesters led by Henry Herskovitz has regularly protested in front of Beth Israel Synagogue located in Ann Arbor every Saturday for 16 years at approximately 9:30 a.m. for several hours before and during the Sabbath services. The protests largely

3

involve Mr. Herskovitz and sometimes a small number of other protesters holding signs or leaning them against trees or portable chairs in the lawn extension. In some instances, the Protesters have stuck miniature American flags in the lawn extension.

Plaintiffs are long-standing City residents and members of the Synagogue. They allege the signs are visible to people as they pass by on the sidewalks to enter onto the Synagogue property and walk to the Synagogue entrance to attend Sabbath services. Plaintiffs have viewed the signs many times. They allege that the signs are all anti-Semitic, anti-Israel, and anti-Zionist and relate to the "purported Jewish outsized influence in world finance and controlling power in international affairs," or the Israeli-Palestinian conflict, yet they fully acknowledge that the signs relate to matters of public concern. Plaintiffs allege the signs have caused them severe emotional distress and diminished their enjoyment of and willingness to attend Sabbath services.

Notably missing from their First Amended Complaint is any allegation that Plaintiffs have been prevented from exercising their right to free exercise of religion or from attending Sabbath services. There is no allegation of interference with their access to the property or the Synagogue, nor that once congregants are in the building, the Protesters have interrupted or interfered with religious services.

The City has a Code of Ordinances ("Code") which regulates, among other things, streets and signs. Plaintiffs' interpretation of the Code as to the Protesters

4

differs from the City's.  Plaintiffs allege generally that the Protesters' conduct violates the Code, yet they concede the City has advised Plaintiffs, the Synagogue, and its congregants that the Protesters' conduct was lawful and protected under the First Amendment and that the City could not take enforcement action to prohibit or curtail the protests without violating the Protestors' constitutional rights.

City police officers have been present at the Synagogue on various occasions during the many years of weekly Saturday protests but have not taken action to stop prohibit the protests because they are protected under the First Amendment.  Because the protests are protected activity, the Protesters do not have, have never obtained, nor have ever been required to get permits for their activities or the placement of signs in the lawn extension.

Related to the disagreement over the lawfulness of the protest activities, in Spring 2019, Plaintiffs' attorney, Marc Susselman, concluded that the Protesters' conduct violated the Code and should be prohibited or, at a minimum, subjected to the City's permitting process, which he asserted would prohibit their signs or conduct. Attorney Susselman demanded that the City take enforcement action against the Protesters to prohibit or curtail their protests, presumably the placement of temporary signs in the lawn extension.  He presented his legal conclusions and rationale to the City on various occasions, including to Senior Assistant City Attorney Kristen

5

Larcom[1] and Jon Barrett, City Zoning Administrator, as well as several City police officers. The City heard or received his position but disagreed and refused to take enforcement action against the Protesters' lawful and protected protest activities to which Plaintiffs' counsel demanded that the City explain how his interpretation and legal conclusions were faulty.

Plaintiffs allege no overt actions by the City Defendants indicating agreement with the content of the Protesters' signs, nor anything demonstrating racial or discriminatory animus toward Plaintiffs or the Synagogue. To the contrary, Plaintiffs acknowledge that the City explained that the Protesters' activities, including the temporary signs, were protected under the First Amendment and the City could not legally take enforcement action against them.[2]

Plaintiffs filed their Complaint on December 19, 2019 alleging numerous federal and state claims against the Protesters and City Defendants. The Court entered an Order granting the Protesters' Motion for Additional Time, directing Plaintiffs to file an amended complaint, and setting dates for Defendants' first responsive motions

---

[1] After being told to direct all further communications on the matter to the City Attorneys Office, Attorney Susselman filed a grievance against Defendant Kristen Larcom which, after reviewing her response, the Grievance Commission rejected and closed in a letter dated November 15, 2019.

[2] On October 18, 2004, in response to the protests at Beth Israel Synagogue, the City adopted a Resolution Affirming Freedom to Worship Without Interference and Condemning the Picketing of Houses of Worship. (Ex A).

6

and the briefing thereof.  (ECF 10).

Plaintiffs timely filed their First Amended Complaint adding allegations and claims.  In all, Plaintiffs First Amended Complaint contains 95 pages and asserts a hodge-podge of legal theories in 23 claims.  Counts III-IV, VI, VIII-XIII allege federal claims and Counts XV-XVI, XX-XXIII allege state claims against the City Defendants.  In their many claims, Plaintiffs generally allege that the City Defendants violated Plaintiffs' right to enforcement of the Code which would have put a stop to the Protesters' activities, and, that by not enforcing the Code, the City Defendants conspired with and enabled the Protesters in their alleged violations of Plaintiffs' fundamental rights.  They allege violations of their rights under §§1982, 1983, 1985(3), 1986, rights to free exercise of religion, petition the government, freedom of travel, substantive due process, RFRA, RLUIPA, as well as asserting violations of provisions of the Michigan Constitution and state civil rights statutes prohibiting racial discrimination along with various state and common law tort claims.

Plaintiffs seek injunctive relief to compel the City to take specific enforcement action and preclude the Protesters from continuing their protests or to otherwise impose limits on their activities (such as distance, dates and times, and number of signs).  Plaintiffs also seek compensatory damages against the City and compensatory and punitive damages against the individual City Defendants who were allegedly involved in the decision not to enforce and stop the Protesters.

Per the Court's Order (ECF 10), the City Defendants filed the this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and request dismissal all claims against the City Defendants for lack of Article III jurisdiction due to lack of standing, and for failure to state a cognizable claim on which relief could be granted.

### III.   <u>STANDARD OF REVIEW</u>

Rule 12(b)(1) allows a court to dismiss a complaint for lack of jurisdiction, including a plaintiff's lack of standing.  *Stocker v. United States*, 705 F.3d 225, 229 (6th Cir. 2013). When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the court must accept all material allegations of the complaint as true. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).   The plaintiff bears the burden of establishing jurisdiction and, to adequately allege jurisdiction, the complaint "must contain non-conclusory facts which, if true, establish that the district court had jurisdiction over the dispute." *Id.* at 440.

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."  In evaluating a Rule 12(b)(6) motion, "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).

To meet the pleading requirements set forth in *Twombly* and *Iqbal*, complaint must contain "plausible statements as to when, where, in what or by whom, in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

## IV.   <u>ARGUMENT</u>

### A.   <u>PLAINTIFFS LACK STANDING.</u>

Standing to pursue a claim is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498; 95 S.Ct. 2197 (1975). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002)(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

To establish Article III standing to sue in federal court, a plaintiff must demonstrate three elements:  i) an actual, concrete and particularized injury in fact; ii) the injury must have a causal connection or be fairly traceable to conduct complained of; and iii) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, supra at 560–61. The U.S. Supreme Court has consistently held "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."  *Id.* at 574.  Here, Plaintiffs fail to satisfy any of the three elements of standing and fail to establish jurisdiction in this Court.

### 1.    Plaintiffs Have Not Suffered an Actual Concrete Injury.

In paragraph 3 of the First Amended Complaint, Plaintiffs outline the indirect and derivative nature of their claims against the City Defendants:

> The conduct of the protesters is infringing on the 1st Amendment right of the congregants to exercise their freedom of religion without being harassed and insulted by the protesters.  The City, by its failure to enforce its own Code provisions to curtail the protesters' conduct, is aiding and abetting the protesters [sic] harassment of the congregants, thereby making the protesters state actors under 42 U.S.C. §193 and the protesters and the City co-conspirators under 42 U.S.C. §§1983 and 1985(3).

10

Continuing at paragraphs 20-21, Plaintiffs allege that each of them has attended religious services and "has seen the protesters' signs as [they] approached the Synagogue in order to participate in the Sabbath worship on numerous occasions. The anti-Semitic messages of several of the signs, as well as the virulently anti-Israeli messages, offend and anger [them] cause [them] extreme emotional distress, significantly diminish [their] enjoyment in attending the Sabbath services, and have adversely affected [their] willingness to travel to the Synagogue's location to attend Sabbath services in order to exercise [their] 1st Amendment right to freedom of religion."

However, Plaintiffs do not allege that they have been prevented from attending Sabbath services or that the Protesters blocked their path onto the property or into the Synagogue. Likewise, there is no allegation that the protests and signs outside affected the services taking place inside. Without more, Plaintiffs' allegation that they were injured by having to walk past the Protesters' signs as they entered onto the Synagogue property on unspecified dates simply does not rise to the level of an actual concrete particularized injury for Article III jurisdiction. See, *Snyder v. Phelps*, 562 U.S. 443, 458; 131 S.Ct. 1207, 1219 (2011)(recognizing that protected speech which may be upsetting, hurtful, or misguided to some or that arouses contempt, cannot be restricted); *Sines v. Kessler*, 324 F.Supp.3d 765, 802 (WD Va. 2018)(recognizing that

11

picketing and marching in protest, even when motivated by racist ideology, are protected speech).

Turning to the claims against the City Defendants, Plaintiffs generally allege that they suffered injuries resulting from the City's failure to enforce the Code against the Protesters implying that the City's **inaction** violated their right to enforcement. Plaintiffs' claim is, in essence, that the City violated Plaintiffs' due process rights by failing or refusing to enforce the Code consistent with Plaintiffs' view of the law. Such a claim fails because Plaintiffs have no right to enforcement of the Code, and they certainly do not have a right to enforcement in their favor. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768, 125 S. Ct. 2796 (2005)(holding there was no right to enforcement of a restraining order because all police officers must use some discretion in deciding when and where to enforce); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97, 109 S. Ct. 998 (1989)(holding the State has no duty to protect citizens from private harms).

The opinion in *Felber v. Yudof*, 851 F.Supp.2d 1182, 1186 (N.D. Cal. 2011) is instructive. That case involved Jewish students claiming they had been subjected to anti-Semitic harassment and intimidation by members of pro-Palestinian and Muslim student groups and that the University and its officials violated their First Amendment right to the free exercise of religion and assembly by failing to adequately secure the

hostile campus environment.  The court found the students lacked an actual injury, and explained:

> [E]ven assuming that plaintiffs have alleged, or could amend to allege, sufficient acts of harassment and intimidation directed against them based on their religion to be deemed as an interference with their free exercise of that religion; they simply have no basis for pursuing such constitutional claims against the defendants.  With exceptions not implicated here, state actors have no constitutional obligation to prevent private actors from interfering with the constitutional rights of others. *Felber*, supra at 1186.

See also, *Mandel v. Bd. of Trustees of Calif. State Univ.*, 2018 WL 5458739 (N.D. Cal. 2018 unpublished – Ex B)(Jewish students failed to state claim against university for deliberate indifference); *Macera v. Vill. Bd. of Ilion*, 2019 WL 4805354, pp 12–13 (N.D.N.Y. Sept. 30, 2019 slip copy – Ex C)(plaintiffs failed to state a claim against Village for failure to enforce because they had no right to enforcement of the zoning ordinance and parking regulations).

Based on the similarities in facts and allegations to this case, the rationale in those cases should control here.  Plaintiffs have no right to enforcement of the Code, and they could not have been deprived of a non-existent right. Thus, Plaintiffs fail to identify an actual injury sufficient to establish standing and Article III jurisdiction.

## 2. Plaintiffs' Alleged Injury is Not Fairly Traceable to the City Defendants' Action or Inactions.

Even if Plaintiffs could establish an actual injury, their alleged injury is not fairly traceable to the City Defendants' conduct because their alleged injuries, viz a

viz the City Defendants, are premised on alleged injuries inflicted by the Protesters' activities which Plaintiffs claim the City indirectly enabled by failing to enforce the Code and stop them.  The Supreme Court addressed this concern regarding indirect enforcement in *Lujan*, stating: "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, supra at 561–62 (much more is needed to establish standing in cases challenging the government's regulation of third parties).

In this case, Plaintiffs fail to meet this substantially more difficult burden; they cannot fairly trace their alleged injuries to the City's refusal to enforce the Code against the Protesters nor can Plaintiffs' use the injuries allegedly inflicted by the Protesters to establish standing for their claims against the City Defendants. Plaintiffs' First Amended Complaint relies heavily on legal conclusions for an alleged entitlement to relief against the City Defendants, but their reliance on the conduct of the third-party Protesters is too attenuated to establish a causal connection to the City Defendants' actions and Article III standing. See, *Siegel v. U. S. Dep't of Treasury*, 304 F.Supp.3d 45, 53 (D.D.C. 2018)[3]; *Indiana Coalition for Public Educ. – Monroe*

---

[3] A plaintiff's status as a taxpayer is insufficient to transform a generalized grievance about the government's compliance with the law into a particularized injury that would support standing.  *Siegel*, supra.

14

*County v. McCormick*, 338 F.Supp.3 926, 937-938 (S.D. Ind. 2018)(challenge to state school funding statute and seeking injunction preventing superintendent from distributing funds to religious charter schools failed to establish causation for Article III standing).

### 3.    Plaintiffs' Alleged Injury Will Not Be Redressed by this Court.

As noted above, existing law protects the Protesters' ability to protest and display signs relating to matters of public concern on the public sidewalk in front of the Synagogue, and the First Amended Complaint acknowledges this.  So, even if Plaintiffs could force the City to enforce and require the Protesters to obtain a permit, the Protesters would be able to continue their protest activities as permitted under the First Amendment.  Plaintiffs fail to establish the redressability element for Article III standing.

## B.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CITY DEFENDANTS.

In addition to the lack of Article III standing, Plaintiffs' First Amended Complaint also fails to state a cognizable claim under federal or state law against the City Defendants on which relief could be granted.

None of Plaintiffs' federal claims are supported by the requisite well-pleaded and non-conclusory facts needed to meet the pleading standards to state a plausible claim under federal law.  See, Fed. R. Civ. P. 8(a); *Iqbal*, supra; *Twombly*, supra.

Plaintiffs' First Amended Complaint is factually and legally deficient and fails to state a cognizable claim on which relief could be granted.

**1. Plaintiffs Have Failed to State any Violation of the U.S. Constitution or Federal Law that would Entitle Them to Relief.**

**a. Plaintiffs Fail to State a §1983 Civil Rights Violation.**

In Count IV, Plaintiffs attempt to allege a violation of 42 U.S.C. §1983. It is widely recognized that §1983 does not provide a private cause of action or any substantive federal rights. *Albright v. Oliver*, 510 U.S. 266, 271; 114 S.Ct. 807 (1994). In other words, Plaintiffs cannot go into court and claim a violation of §1983, because §1983 "does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617; 99 S.Ct. 1905 (1979).

It is unclear what Plaintiffs are alleging in Count IV because it lacks sufficient factual detail. Plaintiffs allege, in conclusory fashion, that the City had a policy of not enforcing the Code against the Protesters and their signs on every Saturday for 16 years, but they fail to provide any details about the who, what, where, and when needed to support their claim. For example, Plaintiffs fail to identify specific conduct which violated their religious rights; their claims refer vaguely to "conduct" without any specificity as to what actions they are truly complaining about. Plaintiffs appear to presume that every Protester sign violated the Code, but they do not allege facts about which signs, which dates, or where the signs were located.

16

Similarly, Plaintiffs fail to plead sufficient details showing how each individual City Defendant was involved.  Simply stating in conclusory terms that the City Defendants violated the Plaintiffs' unidentified rights every Saturday for 16 years is not enough, and the individual capacity claims against these Defendants should be dismissed. *Frazier v. Michigan,* 41 Fed. Appx. 762, 764 (6th Cir. 2002)(dismissing claims that failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Official capacity claims against the individual City Defendants are duplicative of the claims against the City and should be dismissed.  *Shorts v. Bartholomew*, 255 Fed.Appx. 46, 57 (6th Cir. 2007).

To the extent Plaintiffs attempt to allege a §1983 custom and policy claim against the City under *Monell v. Dept of Soc. Services*, 436 U.S. 658. 694; 98 S.Ct. 2018 (1978), their efforts fail as a matter of law.  "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under §1983."  *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001).

Here, Plaintiffs fail to state a §1983 claim against the City because they have no right to enforcement of the City Code. *DeShaney*, supra; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146 (1973); see also, *B&B Entm't, Inc. v. Dunfee*, 630 F.Supp.2d 870, 877-878 (S.D. Ohio 2009).  There is no constitutional violation here, and Plaintiffs fail to state a cognizable §1983 claim on which relief could be granted.

### b.      Plaintiffs Fail to State a Conspiracy Claim.

In Counts III, VI, and VIII Plaintiffs attempt to allege the City Defendants conspired with the Protesters to violate the Plaintiffs' rights to free exercise of religion in violation of 42 U.S.C. §§1982, 1983, and 1985(3). They also allege the City Defendants violated §1986 (Count IX) by failing to prevent the alleged §1985(3) violation.

Generally, to state a claim for conspiracy, a plaintiff must show that, i) there was a single plan; ii) the defendant(s) shared in the general conspiratorial objective; and iii) an overt act by the defendant(s) was committed in furtherance of the conspiracy that injured the plaintiff. *B&B Entm't*, supra.

Section 1982 provides that "[a]ll citizens of the United States" have the same right "as is enjoyed by white citizens" to "inherit, purchase, lease, sell, hold, and convey real and personal property." Basically, §1982 bars all racial discrimination in the sale or rental of property.  Section 1983 creates a right to recover damages against "[e]very person who, under color of [law] subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities." 42 U.S.C. §1983. To state a § 1983 claim, a plaintiff must establish that, 1) a person acting under color of state law; 2) deprived the plaintiff of a constitutional right.  *B&B Entm't*, supra.

To state a claim action under § 1985(3), Plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of

18

persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is "injured in his person or property" or "deprived of having and exercising any right or privilege of a citizen of the United States." *United Bd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352 (1983). Section 1985(3) applies only if there is a showing that some racial or other class-based invidiously discriminatory animus motivated the conspirators' actions. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103, 91 S.Ct. 1790 (1971).

Section 1986 provides a cause of action against a person who neglects to prevent a violation of section 1985. But, without a violation of §1985, there can be no violation of §1986. *Haverstick Enter's, Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1260 (E.D. Mich. 1992).

In this case, the First Amended Complaint fails to allege specific facts showing that any City Defendants entered into an agreement with any or all of the Protesters or took any overt action which violated Plaintiffs' rights. And, there are certainly no facts showing that any City Defendant acted with racial animus or an intent to discriminate against Plaintiffs because of their religion. The City Defendants' decision not to enforce against the Protesters' protected conduct is not complicity with the Protesters and does not convert their respective lawful activities into a conspiracy.

19

Plaintiffs have failed to plead facts to support the basic elements of a conspiracy under §§1982, 1983, 1985(3), or 1986 and those claims must be dismissed.

### c. Plaintiffs Fail to State a Substantive Due Process Violation.

To establish a substantive due process claim, Plaintiffs must show that the City Defendants deprived them of a protected right or legitimate entitlement under color of law, and that such violation was arbitrary and capricious in the strict sense, and not based on any legitimate governmental interest. *Bowers v. Flint*, 325 F3d 758, 763 (6th Cir 2003). It is well-settled that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *Town of Castle Rock*, supra at 756.

In this case, Plaintiffs' substantive due process claim fails because enforcement of the Code in a particular manner against the Protesters was not a constitutionally protected right to which Plaintiffs had a legitimate claim of entitlement. The City's discretionary decision not to enforce because the Protesters' were engaged in lawful conduct protected under the First Amendment did not rise to the level of shocking the conscience. See, *Clair v. N. Ky. Indep. Health Dist.*, 504 F.Supp.2d 206, 216 (E.D. Ky. 2006).

### d. Plaintiffs Fail to State a Right to Petition Violation.

The First Amendment includes a right to petition the government for a redress of grievances. *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 297 (6th Cir. 1992). Although the First Amendment protects information gathering, it does not provide a

constitutional right to blanket access to all information within the government's control. *Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 840 (6th Cir. 2000). Thus, while the First Amendment protects the right to petition and speak to the government, it does not require the government to listen or respond. See, *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285, 104 S. Ct. 1058 (1984).

In this case, Count XI fails to state a cognizable claim for violation of the right to petition.  Plaintiffs, nor their attorney, had a right to compel any City employee to provide information on demand.  The refusal to respond to Plaintiffs counsel's demands for legal interpretations and other information was not a violation of the right to petition the government. Further, as the Michigan Grievance Commission acknowledged, City staff can refuse to communicate directly with the public and have legal questions addressed to the City Attorneys Office.

### e.   Plaintiffs Have Not Stated a RFRA or RLUIPA Violation.

Plaintiffs fail to state claims under the Religious Freedom Restoration Act of 1993, 42 U.S.C. §2000 42 U.S.C. § 2000bb, et seq. (RFRA) (Count XII) and Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000-cc ( RLUIPA) (Count XIII) because the City did not take any action which directly impacted Plaintiffs, their religious exercise, or the Synagogue property.  In other words, the City did not compel or prohibit Plaintiffs or the Synagogue from doing anything.  The facts as alleged simply do not trigger RFRA or RLUIPA.

21

More specifically, Plaintiffs cannot state a RFRA claim because the Supreme Court has held that it is not applicable to local government. *City of Boerne v. Flores,* 521 U.S. 507 (1997)(holding that, as applied to states and their subdivisions, RFRA was not a valid exercise of Congress's power to enforce the Fourteenth Amendment). Thus, RFRA is wholly inapplicable to the City, and any attempt to state a RFRA claim necessarily fails.

Similarly, Plaintiffs fail to state a claim under RLUIPA because they lack an adequate property interest on which to base such a claim. Membership in the Synagogue is insufficient to provide a property interest for purposes of RLUIPA, and Plaintiffs' First Amended Complaint lacks details showing how the City Defendants burdened their religious exercise.

### f.   The Individual City Defendants are Entitled to Qualified Immunity on All Individual Capacity Claims.

Qualified immunity shields government officials performing discretionary functions from personal liability for civil damages when the official reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan,* 555 U.S. 223, 244; 129 S.Ct. 808 (2009). Determining whether qualified immunity applies requires two inquiries: 1) whether the plaintiff has shown that a violation of its federal rights occurred, and 2) whether the right was clearly established at the time of the violation. *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). Immunity applies

when the official's actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S.Ct. 2727 (1982)

In this case, Plaintiffs' First Amended Complaint is devoid of well-pleaded facts establishing that the individual City Defendants Taylor, Delacourt, Postema and Larcom personally violated Plaintiffs' federal rights or that the law was so clearly established that it would put every reasonable official in their positions on notice that their actions would violate Plaintiffs' federal rights.[4] To be clear, the gist of Plaintiffs' complaint against the City Defendants is based on the City's failure to enforce the Code and not on a violation of Plaintiffs free exercise of religion. As stated above, Plaintiffs had no right to enforcement of the Code. *B&B Entm't*, supra. In addition, Plaintiffs offer nothing to support their conclusion that it was objectively unreasonable for the individual City Defendants to each decide not to enforce the Code and allow the Protesters to engage in constitutionally protected expression on the public sidewalk in front of the Synagogue every Saturday for the past 16 years, which is contrary to existing law. *Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 463 (6th Cir. 2005)(holding that use of a portable rat balloon on the public right-of-way was

---

[4] The Mayor, in the City of Ann Arbor's weak-Mayor form of government, is not involved in prosecutorial process or decisions.

protected speech). The individual City Defendants are entitled to qualified immunity and dismissal of Plaintiffs' claims against them in their individual capacities.

### 2. The Court Should Decline Supplemental Jurisdiction Under §1367.

Plaintiffs' remaining claims sound only in state law. Federal courts can only exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367 which provides that a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction" §1367(c)(3). The Sixth Circuit has applied "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Insur. Co. of Columbus*, 423 Fed. Appx. 580, 584 (6th Cir. 2011). This Court should decline supplemental jurisdiction over the remaining state law claims.

### 3. Alternatively, Plaintiffs Fail to State a Claim Under State Law.

Counts XV-XVI and XX-XXIII purport to allege state law claims against the City Defendants based on various legal theories. Like their federal claims, each of Plaintiffs' state law claims suffers from numerous fatal flaws. Each of their state law claims seeks to hold the City Defendants liable indirectly for alleged injuries inflicted on Plaintiffs by the Protesters' lawful protest activities which were allegedly enabled by the City's failure to enforce the Code and stop them. This theory of liability is too derivative, attenuated, and speculative, and any claim based on it fails to state a cognizable claim.

24

Additionally, all of the state law claims lack sufficient well-pleaded facts to state a cognizable claim and should be dismissed for failure to state a claim.

## CONCLUSION

For the reasons above, the City Defendants respectfully requests that this Court dismiss all claims against the City Defendants with prejudice and award the City Defendants their costs and fees deemed just and proper under the circumstances.

Office of the City Attorney

/s/ TIMOTHY S. WILHELM
Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the Defendants City of Ann
Arbor, Christopher Taylor, Derek Delacourt,
Stephen K. Postema,
and Kristen D. Larcom
301 E. Huron St., P.O. Box 8647
Ann Arbor, MI  48107-8647
Phone: (734) 794-6110
twilhelm@a2gov.org

Dated: March 10, 2020

CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notice of such filing to the following: Plaintiff's Counsel and  I hereby certify that I have mailed by US Mail the document to the following non-ECF participants: None.

/s/ Jane Allen
Assistant
Ann Arbor City Attorney's Office
City of Ann Arbor