Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

2019 WL 4805354
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald A. MACERA, et al., Plaintiffs,
v.
VILLAGE BOARD OF ILION, et al., Defendants.

6:16-CV-668 (LEK/TWD)
|
Signed 09/30/2019

**Attorneys and Law Firms**

Ronald A. Macera, Ilion, NY, pro se.

Catherine M. Macera, Ilion, NY, pro se.

David H. Walsh, IV, Kenney Shelton Liptak Nowak LLP, Jamesville, NY, for Defendants.

MEMORANDUM-DECISION AND ORDER

Lawrence E. Kahn, U.S. District Judge

I. INTRODUCTION
*1 Pro se plaintiffs Ronald and Catherine Macera, residents of the Village of Ilion, New York ("Ilion" or the "Village"), brought this civil-rights action against the Ilion Board of Trustees (the "Board"), Village Fire Chief and Code Enforcement Officer James Trevett ("Trevett"), and Village Police Chief Timothy Parisi ("Parisi"). Dkt. Nos. 1 ("Complaint"); 26 ("Amended Complaint").

Plaintiffs brought suit under 42 U.S.C. § 1983 alleging violations of their First Amendment rights to freedom of speech, their Fourteenth Amendment due process rights, and violations of New York State's Freedom of Information Law ("FOIL"). Compl.; Am. Compl.

Now before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 113 & 114 ("Plaintiffs' Summary Judgment Motion"); 113-3 ("Macera Affirmation"); 113-4 ("Plaintiffs' Summary Judgment Memorandum"); 113-5 ("Plaintiffs' Statement of Material Facts" or "Plaintiffs' SMF"); 110 ("Defendants' Summary Judgment Motion"); 110-1 ("Walsh Affirmation"); 110-19 ("Defendants' Summary Judgment Memorandum"); 110-20 ("Defendants' Statement of Material Facts" or "Defendants' SMF"). Both parties have filed responses in opposition and replies to those response. Dkt. Nos. 123 ("Plaintiffs' Summary Judgment Response"); 123-1 ("Plaintiffs' Response SMF"); 119 ("Defendants' Summary Judgment Response"); 126 ("Plaintiffs' Summary Judgment Reply"); 121 ("Defendants' Summary Judgment Reply"). Plaintiffs have also filed a Motion to Amend, Dkt. No. 112 ("Motion to Amend"), to which Defendants object, Dkt. No. 117 ("Defendants' Opposition to the Motion to Amend").

For the following reasons, Plaintiffs' Motion for Summary Judgment and Motion to Amend are denied and Defendants' Motion for Summary Judgment is granted in part and denied in part.

II. BACKGROUND

A. Initial Matters
Before turning to the factual background of this dispute, the Court has a few words for the parties about their filings in this case.

Local Rule 7.1 requires a party moving for summary judgment to file a "Statement of Material Facts." L.R. 7.1(a)(3). This statement:

> "[S]hall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established ... Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."

Id. Plaintiffs failed to comply with this rule. Plaintiffs' SMF submitted with their Motion for Summary Judgment largely consists of legal conclusions and contains only two citations to the Record. See Pls.' SMF ¶¶ 4, 18.

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

at 33.

Throughout this period, Plaintiffs had other mounting issue with the Lawrences. Primary among these was parking for the Lawrences' day care business. Id. at 52. According to Plaintiffs, customers of the day care would regularly block the shared driveway with their parked cars. Id. Plaintiffs took photos documenting these traffic violations, see Pls.' SJ Mot., Ex. 12 (purporting to show 120 separate parking violations in front of 12 and 14 English Street), and called the police about these violations on approximately eight occasions, Mcaera Dep. at 52. Plaintiffs claim Ilion police never responded to those eight calls, id. at 53, though police records indicated an officer responded on seven of eight occasions, Defs.' SJ Mot., Ex. Q.

*2. 2013 and early 2014: The Fence and the Litigation*

Things came to a head in June 2013. First on or around June 22, 2013, the Lawrences paved the front yard of 14 English Street, apparently to provide parking to customers of their day care. Macera Dep. at 47–48. Plaintiffs contend that the Lawrences never received the necessary zoning variance for this paving. Id. at 49–50.

At that time, the Lawrences also decided to relocate their fence. Macera Dep. at 36; Pls.' Resp. SMF ¶ 14. They planned to move the fence so that it ran from the wall separating Plaintiffs' barn and the Lawrences' lean-to garage to the corner of the Lawrences' house, thus enclosing the Lawrences' back yard. Id. at 36–37. Plaintiffs allege that they became aware of the Lawrences plans to relocate the fence when Joe Lawrence "threaten[ed] us ... and ... claimed that he would put [the fence] straight down the middle of the driveway because he could do whatever he wanted to do because he had people in the Village that would support them." Macera Dep. at 38.

a. Communications with Trevett

In response to the Lawrences' plans, Plaintiffs took action. On June 26, 2013, they emailed the general Village email address and asked for the name and contact officer for the "Codes/Zoning enforcer." Dkt. No. 16 ("Plaintiffs' Resp. to Motion to Dismiss" or "Plaintiffs' MTD Response") at 76. Informed that Trevett was the Village's Codes Enforcement Officer, they wrote to him on June 27, 2013 to notify him of the Lawrences' plans, how those plans would violate the easement provision in their deed, and how the Village would be responsible if they allowed this violation of Plaintiffs' deed to go forward. Macera Dep. at 38–39; Defs.' SJ Mot., Ex. L. After a phone call at some time after Plaintiffs' letter, Trevett replied in writing on July 19, 2013 and informed Plaintiffs that the Village did "not take sides" in property disputes between private parties and that this was a "civil matter" "to be taken up in a court of law." Pls.' SJ Mot., Ex. 46 at 4. Plaintiffs then emailed Trevett asking for the "zoning ordinance provisions regarding daycare business[es] in residential area[s]," to which he replied on July 23, 2013 with a copy of the regulations governing the ZBA. Pls.' MTD Resp. at 77. Plaintiffs followed up shortly thereafter, asking for more information about the Village zoning laws or a record that English Street had been properly zoned to have a day care business. Id. at 78. Trevett replied on August 19, 2013 and told Plaintiffs that they would need to contact "Linda Coffin our Village Clerk, as she does all the zoning board paperwork and ... has the minutes of the meeting that the daycare was approved." Id. In the meantime, the Lawrences relocated the fence, without a permit. See Macera Dep. at 37–38.[2]

b. Communications with Parisi

*4 While Plaintiffs were communicating with Trevett, on July 25, 2013, they emailed the Village email address again and, apparently seeking to discuss the parking violations on English street, asked for the contact person for the Village Traffic Commission. Pls.' SJ Mot., Ex. 15 at 1. On July 29, 2013, Parisi emailed back and told Plaintiffs they could direct their concerns to him "for Traffic Commission consideration." Id. at 2. On July 30, 2013, Plaintiffs responded to voice concerns about the newly installed parking lot in front of the Lawrences' house at 14 English Street, including cars parked over the sidewalk and harassment from the Lawrences and their clients. Id. at 3. Plaintiffs also attached photos of alleged parking violations. Id. at 4–8. Parisi responded on August 1, 2013 and stated that the Lawrences had lawfully paved their front yard, but that "the Police Department will make every effort to enforce the parking ordinances." Id. at 9. Parisi further stated that he would "instruct patrols to monitor the parking" and "as the violators are ticketed, it should abate parking violations." Id. Plaintiffs replied on

state laws, such as the open meetings law. See, e.g., Pls.' SJ Resp., Exs. KK-18 to -19.

### 3. 2014 to 2016 Events

In July 2014, the Lawrences moved from 14 English Street to a home elsewhere in Ilion, relocating their day care in the process. Macera Dep. at 34. 14 English Street remained vacant for several months thereafter, and around March or April of 2015, the owner of 14 English Street removed the fence. Id. at 41. On July 17, 2014, the ZBA held a hearing to consider the Lawrences' new application for a variance permit to operate their day care in their new location. Pls.' SJ Mot., Ex. 51. This meeting too was advertised in the local paper and open to the public, though Plaintiffs apparently did not know about it and did not attend. Id.

After the Lawrences moved, Plaintiffs' troubles with 14 English Street seem to have abated. Their dispute with the Village appears to have continued though, largely through Plaintiffs' use of New York's FOIL provisions to obtain information about Village processes and code enforcement.

#### a. FOIL Requests

Plaintiffs' first FOIL request dates from August 19, 2013, when Plaintiff attempted to secure the minutes of the ZBA meeting where the Lawrences' first day care application was approved. Pls.' SJ Resp., Ex. KK. From then on, Plaintiffs made two requests in 2014, six in 2015, two in 2016, and six in 2017. Pls.' SJ Resp., Exs. KK to KK-19. At least six of these requests were denied because no records existed. Of note, Plaintiffs requested records of inspections of day cares for compliance with the fire code from 2007–2015, only to learn that the records did not exist. Pls.' SJ Resp., Ex. JJ. Plaintiffs later requested the same information for 2016 and received records of 14 inspections. Also, when Plaintiffs requested the zoning permits granted to home day cares in the Village, they received from the Village a page with handwritten notes on it saying, "Talked to Lawrences about fence in back yard – no permit required."

Over time, these emails grew increasingly testy, as Plaintiffs regularly appealed any FOIL denials to the appeals body—the Board—and began to point out numerous alleged violations of FOIL and other New York

#### b. Interactions with Mayor Leonard and the Letter of Intent

Because the Board heard appeals of denied FOIL requests, Plaintiffs had several interactions with Village Mayor Terry Leonard ("Leonard") in 2014 and 2015. On December 9, 2014, Plaintiffs had a phone conversation with Leonard regarding a FOIL appeal. Pls.' MTD Resp., Ex. N. Then in early January 2015, Plaintiffs and the Mayor arranged a meeting at which Plaintiffs could describe their "grave concerns" regarding the Village. Id. at 14–16. They met on January 14 and, on January 15, Plaintiffs emailed Leonard to thank her for meeting with them and to explain further their concerns about H&H, the TRO, and a lack of parking enforcement by Ilion police. Id. at 17. Plaintiffs met with Leonard again in early March regarding their FOIL appeal, this time joined by "the villages new attorney" so that the attorney could "get a complete background of [Plaintiffs'] case." Id. at 25–26.

*6 These meetings apparently failed to allay Plaintiffs' distrust of the Board. On June 3, 2015, Plaintiffs sent the Board a notice of their intent to sue the Village in federal court for violations of the Fifth and Fourteenth Amendments. Pls.' SJ Mot., Ex. 3. However, as the instant action was not filed until June 14, 2016, Plaintiffs evidently did not take immediate action on their letter.

#### c. The Summer 2016 incident

Starting in 2016, Plaintiffs started to develop concerns about a new neighbor named Mark Lyman ("Lyman") who lived at 16 English Street. On March 16, 2016, Plaintiffs emailed Leonard to complain that Lyman's house was in such disrepair that it posed a health hazard. Pls.' MTD Resp., Ex. N at 52. They also stated that Trevett had spoken with the owner, but the owner had not received a citation. Id. Apparently Lyman's behavior did not improve, because on June 1, 2016, Plaintiffs called the fire department to report that Lyman was burning hazardous materials in his back yard. Id. at 60; see also Pls.' SJ Mot., Ex. 23. The next day, Plaintiffs emailed

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

defendant (the Lawrences); (2) the case is moot because the fence was removed prior to the commencement of this suit; (3) the Amended Complaint does not allege sufficient additional facts to revive Plaintiffs' dismissed due process claim; (4) the Amended Complaint does not allege sufficient additional facts to revive Plaintiffs' dismissed FOIL claim; (5) there is no evidence of retaliatory animus sufficient to support Plaintiffs' First Amendment Retaliation claim; and (6) Trevett, Parisi, and the Village are entitled to qualified immunity. Defs.' SJ Mem. at 1.

Also on September 7, 2018, Plaintiffs filed a Motion for Summary Judgment. In their Motion, Plaintiffs provide no argument regarding their First Amendment or FOIL claims, but allege additional grounds for their due process claims. See generally Pls.' SJ Mot. First, Plaintiffs argue that they "are entitled to Summary judgment of Due Process Violation, by establishing and maintaining a conflict of interest, and taking of our Property [sic]." Pls.' SJ Mem. at 1. The Conflict of interest claim appears to be that the Village "interfered with [Plaintiffs'] due process" by giving "consent of 'no conflict' [sic]" to H&H's service as Village Attorney while simultaneously representing the Lawrences. Pls.' SJ Mem. at 3. The "taking" allegation is not explained, but appears to be a reiteration of Plaintiffs' statement in the Amended Complaint that, by failing to prevent the erection of the fence, the Village "render[ed] [Plaintiffs'] entire property over to the day care." Am. Compl. at 7. Further, Plaintiffs also argue that they are entitled to Summary Judgment "for failure to train/educate, allowing a fraudulent representation of a Village of Ilion Official, [and] for knowingly and intentionally allowing Defendant Trevett assist the Lawrence's repeatedly abusively have power over our entire property since 2011 [sic]." Pls.' SJ Mem. at 5. The failure to train allegation appears to specifically reference Trevett. Id. at 11 ("The Village Board fails grossly at training employees ... for they allowed Defendant Trevett, to endanger to entire community....").

*8 On the same day, Plaintiffs also filed what appeared to be a Motion to Amend. On October 2, 2018, Defendants filed a Response in Opposition to the Motion to Amend, Dkt. No. 117, to which Plaintiffs replied, Dkt. No. 126. Additionally, both parties filed Responses in Opposition to the opposing party's Motion for Summary Judgment, Dkt. Nos. 119; 123, and Replies, Dkt. Nos. 121; 126.

Within its myriad allegations, Plaintiffs' Response appears to allege yet more bases for their due process claims, specifically that the Village codes available online were incomplete and the complete codes were unavailable, Pls.' SJ Resp. at 13, 20, and that when the Herkimer County Supreme Court issued the TRO in the state court suit, "Plaintiffs were violated of the Civil rights to be heard ... [and] this was an outrageous abuse of procedural Due Process [sic]." Id. at 9–10. It also elaborates on Plaintiffs' FOIL claims, including that "FOIL [w]as used in a fashion to continue the line of retaliation, as the [Village Board] is in clear violation of the legislature intent of FOIL [sic]." Id. at 12.

III. Legal Standard

A. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

### 1. FOIL

Plaintiffs FOIL-based claims must be dismissed for the reasons that follow.

In its November 2017 Memorandum-Decision and Order, the Court noted that "it is far from clear to the Court that Plaintiffs actually intended to bring a state-law challenge to the denial of their FOIL requests, since they purported to bring this action only under § 1983." See Nov. 2017 Mem.-Decision and Order at 14. The Court then dismissed the FOIL claim, explaining that "even if [Plaintiffs'] Complaint could be construed to assert [a state-law challenge to the denial of their FOIL request], it would fail, because Plaintiffs seek only monetary damages ... and 'FOIL does not give rise to a private cause of action to recover money damages.' " Id. at 14 (quoting Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 12-CV-6054, 2013 WL 4719090, at *3 (E.D.N.Y. Sept. 3, 2013)).

Plaintiffs subsequent filings have failed to clarify their claim. See Am. Compl. (specifying no cause of action while largely repeating, at greater length, FOIL allegations found in the Complaint); Pls.' SJ Mem. (failing to discuss FOIL); Pls.' SJ Resp. at 12–18 (describing how the Village Board allegedly violates FOIL). But throughout this litigation, Plaintiffs have never wavered from their demand for damages and have never demanded injunctive relief. See Compl. ¶ 34 (demanding $7,500,000); Am. Compl. (containing no prayer for relief); Pls.' SJ Mot., Ex. 20 (settlement offer from Plaintiffs to Defendants for $580,000); Pls.' SJ Mem. at 12 (demanding $3,542,000). Since Plaintiffs have failed to clarify their FOIL claim or amend their demand for damages, the Court dismisses any state-law FOIL claim Plaintiffs purport to bring for the same reasons described in the November 2017 Memorandum-Decision and Order.

*11 Alternatively, to the extent Plaintiffs' FOIL claims are brought solely under § 1983, they also fail. "Courts in this District have repeatedly recognized that a section 1983 action is not the proper vehicle for bringing a FOIL claim." Hall v. Benniger, No. 19-CV-85, 2019 WL 2477994, at *2 (N.D.N.Y. Mar. 4, 2019), report and recommendation adopted, No. 19-CV-85, 2019 WL 1760050 (N.D.N.Y. Apr. 22, 2019) (Kahn, J.). "The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information Law is a state court proceeding pursuant to New York C.P.L.R. Article 78 upon exhaustion of administrative remedies." Schuloff v. Fields, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997).

For this reason, Plaintiffs' claims regarding denials of their FOIL requests are dismissed.

### 2. Due Process

In the November 2017 Memorandum-Decision and Order, the Court dismissed Plaintiffs' due process allegations for failing to state a cognizable claim, but granted leave to amend so that Plaintiffs could remedy the defects. Nov. 2017 Mem.-Decision and Order at 12-15. Defendants urge this Court that Plaintiffs' due process claims should once again be dismissed because Plaintiffs have still not raised a cognizable claim. The Court agrees.

Before turning to Plaintiffs' due process claims, the Court will discuss § 1983's state action requirement. Plaintiffs' filings make numerous allegations against both the Lawrences and H&H attorneys, but because none of those individuals are state actors, their conduct cannot form the basis for a § 1983 violation. See Am. Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (" § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (quotations omitted).

Reading their submissions generously, Plaintiffs attempt to satisfy the state action requirement by suggesting that the Lawrences' and H&H's conduct is "fairly attributable to the State." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982); see also Pls.' SJ SMF at 3 ("The Village Attorney with Village support and the daycare launched a lawsuit...."). An alleged due process violation is attributable to the state "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " Ogunbayo v. Montego Med. Consulting P.C., No. 11-CV-4047, 2012 WL 6621290, at *6 (E.D.N.Y. Sept. 18, 2012), report and recommendation adopted as modified, No. 11-CV-4047, 2012 WL 6625921 (E.D.N.Y. Dec. 19, 2012) (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)). After

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

### i. Municipal Defendant

**\*13** By suing the Village Board in its official capacity, Plaintiffs have brought suit against the Village of Ilion itself. Lore, 670 F.3d at 164. This implicates the rules of municipal liability as establishing in Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) and its progeny. To establish municipal liability, Plaintiffs must show that a constitutional violation was effected pursuant to an identified municipal policy or custom. Monell, 436 U.S. at 694–95. Here, Plaintiffs have no valid claim against the Village because they have failed to allege a cognizable constitutional violation.

Plaintiffs have no legal entitlement to the enforcement of local zoning or traffic laws. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1988) ("The [Due Process] Clause is ... not ... a guarantee of certain minimal levels of safety and security."). As a general rule, "[g]overnment officials ... are given broad discretion whether to undertake enforcement actions." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 191–92 (2d Cir. 1994); Citizens Accord, Inc. v. Town of Rochester, No. 98-CV-715, 2000 WL 504132, at \*12 (N.D.N.Y. Apr. 18, 2000), aff'd, 29 F. App'x 767, 2002 WL 355929 (2d Cir. 2002). In particular, "[i]t is a long standing rule in New York that 'the decision to enforce ... [town building and zoning] codes rests in the discretion of the public officials charged with enforcement.'" Leland v. Moran, 235 F. Supp. 2d 153, 159–62, 165 (N.D.N.Y. 2002), aff'd, 80 F. App'x 133 (2d Cir. 2003) ("[There is a settled principle in New York that, absent some constitutional mandate, public officials have discretion whether to enforce statutes.") (collecting cases). Similarly, because of the significant discretion law enforcement officials require to execute their duties, the Supreme Court has held that there is no clear entitlement to law enforcement action. See DeShaney, 489 U.S. at 195; Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 761 (2005) ("It is common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances."). Therefore, Plaintiffs can claim no constitutionally protected property interest in the enforcement of the zoning, permitting, or traffic laws.

Plaintiffs allege that state law and Village ordinances cabined official discretion sufficiently to create a legal entitlement. Pls.' SJ Mem. at 8; Pls.' SJ Resp. at 8; see also RRI, 870 F.2d at 918 (legal entitlement exists where "the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured"). But even so, official discretion in zoning and enforcement decisions is the rule in New York even in the face of mandatory statutory language, and for sound policy reasons. See Leland, 235 F. Supp. 2d at 165 (declining to read statute with mandatory language as imposing a "non-discretionary duty upon a village mayor to cause all violations of all laws within his or her jurisdiction to be prosecuted" because doing so would "lead to absurd results"); cf. Castle Rock, 545 U.S. at 761. Indeed, "no municipality has the resources necessary to prosecute each and every violation of the law and the executive must, therefore, exercise [her] or [his] discretion in determining how to allocate those finite resources." Leland at 166. The alternative "would improperly draw courts into becoming 'super-mayors' or 'super-prosecutors.'" Id. (citing Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58 (2d Cir. 1985)). "Citizens of any village could commence actions in court pursuant to 42 U.S.C. § 1983 for any alleged violation of a state or local law, however trivial the violation may be, and require the court to review the citizen's complaint to ascertain whether there has been a violation of the law and, thus, whether the mayor was obligated to prosecute the violation." Leland at 166.

**\*14** For these reasons, Plaintiffs have no property interest in the enforcement of town ordinances against the Lawrences, and thus cannot establish a violation of their due process rights due to Village enforcement decisions. See also Zahra v. Town of Southold, 48 F.3d 674, 681 (2d Cir. 1995) (holding that an ordinance dealing with building inspections did not create a property interest, stating that "even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, at least when the applicant has a state law remedy"); Natale, 170 F.3d at 263 ("[F]ederal courts are not to be turned into zoning boards of appeals.") (citing Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974) (Marshall, J. dissenting)).

### ii. Individual Defendants

For similar reasons, Plaintiffs due process claims against Trevett—for failing to stop the Lawrences from relocating their fence—and Parisi—for failing to adequately enforce the parking regulations—must fail.

Plaintiffs allege that Trevett "knowingly and intentionally

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

#### c. The State Court Suit

Plaintiffs allege that the state court suit brought against them by the Lawrences also violated their due process rights. Pls' SJ Resp. at 9–10. They state that the two TROs issued by the Herkimer County Supreme Court in January 2014 "were perfumed [sic] under ex parte, both times. Plaintiffs were denied the right to be heard ... no opportunity to defend ourselves." Id. at 19. They argue that "this was an outrageous abuse of procedural Due Process." Id. at 10. However, ex parte TROs do not violate due process so long as there is sufficient post-deprivation notice and an opportunity to be heard. See, e.g., Fed. R. Civ. P. 65; see also Mitchell v. W. T. Grant Co., 416 U.S. 600 (1974) (ex parte pre-judgment attachment procedure does not violate due process). In the case of the New York TRO statute, C.P.L.R. 6301, there are adequate post-issuance remedies, and the statute has been applied repeatedly in federal courts without constitutional question. See, e.g., Dosiak v. Town of Brookhaven, No. 16-CV-6658, 2017 WL 7048912, at *14 (E.D.N.Y. Nov. 27, 2017). Hence, there was no violation of Plaintiffs' due process rights when the Herkimer County Supreme Court issued the TROs in 2014. What's more, if somehow the TROs had violated Plaintiffs' due process rights, it would have been "the court, not the [opposing litigants], that [did so by] fail[ing] to provide [the necessary] hearing[,] and a remedy for such an omission exists in the form of an Article 78 proceeding which provides relief ... through a writ of mandamus." Id.; see also Rankel v. Town of Somers, 999 F. Supp. 2d 527, 546 (S.D.N.Y. 2014) ("[I]t is well established that Article 78 proceedings, which Plaintiff could have pursued, satisfy due process requirements.") (citing Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881–82 (2d Cir. 1996)).

*16 Finally, if the Lawrences' lawsuit could somehow be attributed to Defendants, Plaintiffs' proper claim would be a due process violation for malicious prosecution. But because Plaintiffs "were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment," any § 1983 claim arising out of that alleged "malicious prosecution" would fail. Washington v. Cty. of Rockland, 373 F.3d 310, 316 (2d Cir. 2004).

#### d. Failure to Train

Plaintiffs allege that the Village failed to train its employees and, in failing so, violated their due process. Pls.' SJ Mem. at 5. Specifically, they allege inadequate training for: (1) Trevett in enforcing state and city regulations, id. at 11–12; (2) the "Village Clerk(s)" who "mishandled" Plaintiffs' FOIL requests, Pls.' SJ Facts at 4; (3) and Village police officers who did not report child welfare issues, id. Under Monell, a municipality can be liable for failing to train its officials and employees when that failure "amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact." Anthony v. City of New York, 339 F.3d 129, 140 (2d Cir. 2003) (citing City of Canton v. Harris, 489 U.S. 378, 388–89 (1989)). However, liability attaches only where the "underlying action of [the municipality's] officers" was unconstitutional. Smith v. Town of E. Haven, No. 01-CV-1375, 2005 WL 677284, at *7 (D. Conn. Mar. 22, 2005). As described above, the Court has already decided that Trevett's enforcement decisions did not violate Plaintiffs' constitutional due process rights. Additionally, the statutory rights guaranteed by New York's FOIL provisions are not constitutional, and thus their violation cannot serve as a predicate for Monell liability. See Putnam Pit, Inc. v. City of Cookeville, Tenn., 221 F.3d 834, 840 (6th Cir. 2000) ("[T]he First Amendment ... does not provide blanket access to information within the government's control."); Nicholson v. Scoppetta, 344 F.3d 154, 166–67 (2d Cir. 2003) (requiring the deprivation of a constitutional right for municipal liability under Monell). And as for Plaintiffs' claims regarding Village police officers, these claims are wholly conclusory, as Plaintiffs have submitted no evidence about police training at all. Hence, Plaintiffs' failure-to-train claim must fail.

#### e. Taking

Plaintiffs have also alleged a vague "taking" of their property. The gist of this claim is that by failing to prevent the erection of the fence, the Village "render[ed] [Plaintiffs'] entire property over to the day care." Am. Compl. at 7. However, in order to establish a regulatory taking, a plaintiff is "required to show that the regulation

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

an issue of material fact as to Defendants' motives and Defendants are entitled to judgment as a matter of law on these issues.

### a. Parisi

Plaintiffs' First Amendment claim against Parisi arises out of his alleged failure to have the Ilion police department enforce the Village parking regulations on English Street.

**\*18** As an initial matter, Plaintiffs' complaints against Parisi are confined to the period before July 2014, when the Lawrences moved their day care from 14 English Street to a new location. Subsequent to that, in particular since 14 English Street stood vacant for a number of months afterwards, the parking problem presumably abated. Parisi appears to have no role in Plaintiffs' disputes with the Village Board over FOIL requests and meeting procedure, nor does the Record show him copied on any of the June and July 2016 communications. Since Parisi was not personally involved in those later incidents, he cannot be liable for any alleged constitutional violations from that time period. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

As regards the events prior to July 2014, Plaintiffs have failed to meet their burden on the improper motive prong of this First Amendment retaliation claim. Evidence of improper motive "may include expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." Blue, 72 F.3d at 1084.

Plaintiffs' evidence demonstrates no direct evidence of improper motive and little circumstantial evidence of retaliatory intent. A review of the Record reveals that Plaintiffs first contacted Parisi about their parking issues at the end of July 2013. Pls.' SJ Mot., Ex. 15 at 1. But Plaintiffs' concerns about parking began long before July 2013, see Macera Dep. at 51–53; Pls.' SJ Mot., Ex. C, during a period in which they had no interaction with Parisi. This belies that argument that a lack of enforcement was due to any retaliatory animus. Moreover, after the July 2013 email, Parisi and Plaintiffs exchanged cordial emails over the following months, culminating in a March 2014 email in which Plaintiffs thanked Parisi for "patrol[ling] for violations" and noted that a ticket had been issued a few days before. Pls.' SJ Mot., Ex. 15 at 17. This body of evidence reveals Parisi to be, on the whole, a responsive public servant. See, e.g., Pls.' SJ Mot., Ex. 15 at 14 (investigating Plaintiffs' complaint regarding an officer who had failed to ticket a purportedly illegally parked car).

Additionally, Ms. Macera testified at her deposition that she and her husband had called the Ilion police department "about eight times" from 2008 to 2013, Macera Dep. at 52, but the first call by Plaintiffs documented in the Record dates only to June 19, 2013, well after Plaintiffs issues with parking began, see Macera Dep. at 51–53; Pls.' SJ Mot., Ex. C. Further, Police records confirm that Ilion Police Officers responded to these calls. Defs.' SJ Mot., Ex. Q. Though Plaintiffs may have been dissatisfied with officers' decisions not to issue tickets as a result of many of these calls—especially in light of the number of purported violations occurring on their street, Pls.' SJ Mot., Ex. 12 (110 photos purportedly documenting parking violations on English Street)— "the First Amendment guarantees the people's right to petition their government: not to petition successfully." Reardon v. Keating, 980 F. Supp. 2d 302, 313 (D. Conn. 2013).

Moreover, the tradition of police discretion in enforcing the law is well established. See City of Chi. v. Morales, 527 U.S. 41, 62 n.32 (1999) (noting that "all police officers must use some discretion in deciding when and where to enforce city ordinances"). In light of this discretion, the Court cannot say the enforcement record on Plaintiffs' street is "unusual" enough to demonstrate retaliatory intent. Cf. Leland, 235 F. Supp. 2d at 166 ("[N]o municipality has the resources necessary to prosecute each and every violation of the law and the executive must, therefore, exercise his or her discretion in determining how to allocate those finite resources.").

**\*19** Overall, the Record fails to raise genuine dispute of material fact that Parisi—or anyone at the Ilion Police Department—harbored retaliatory intent against Plaintiffs. See also, Pls.' SJ Mot., Ex. 34 at 4–7 (documenting police follow-up to an August 2016 complaint that Plaintiffs felt threatened by the Lawrences). "While Plaintiffs undoubtedly had a constitutionally protected right to complain to [city officials] about the situation surrounding their property, the right to petition the government does not include a right to require certain government action, or convert a government entity's determination not to act into a prima facie case of First Amendment retaliation." Schubert, 775

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

was "very refreshing to [see] such professionalism." Id. at 13.

In his deposition, Trevett stated that he did not compel the Lawrences to obtain a permit to relocate the fence because he did not think a relocation required a permit. Trevett Dep. at 19. And when asked why he "didn't enforce any laws" against the Lawrences, Trevett maintained that he had no relationship with either the Lawrences or Plaintiffs. Id. at 165. Though the Court need not credit this testimony from an interested witness on summary judgment, Williams v. City of White Plains, 718 F. Supp. 2d 374, 377 (S.D.N.Y. 2010), Plaintiffs have produced no evidence to cast these statements into doubt.[7]

Plaintiffs argue that by "cho[osing] to allow the fence to be relocated, [Trevett] picked a side," Pls.' SMF Resp. ¶ 16, but the Court fails to see how Plaintiffs' proposed alternative—that Trevett should have "issued[d] a cease and desist order" preventing the Lawrences from constructing the fence—is more "neutral" in a property dispute between neighbors, Am. Compl. at 6. To the contrary, it appears reasonable, not retaliatory, for Trevett to stay out of a potential legal dispute between neighbors and advise Plaintiffs to take up their "civil matters ... in a court of law." Id. at 4; see also Holmes v. Poskanzer, No. 08–CV–14750, 2009 WL 2171326, at *2 (2d Cir. Jul. 21, 2009) ("Regardless of any retaliatory motive, the plaintiff cannot prevail if a defendant can show he or she would have taken the same action even in the absence of the allegedly improper reason.").

If Plaintiffs are correct that Trevett potentially misinterpreted or misapplied certain municipal ordinances, his conduct perhaps raises questions of negligence. But a First Amendment claim in this context requires intentional retaliation. The Court finds that Plaintiffs have failed to raise a genuine issue of material fact as to whether Trevett possessed retaliatory intent when applying the municipal codes to the Lawrences' 14 English Street home. See Schubert, 775 F. Supp. 2d at 713 ("[N]o reading of Gagliardi suggests that a disgruntled plaintiff has a viable retaliation claim merely because a government official declines to remedy every wrong identified by that plaintiff.").

*ii. The 2016 Events*

*21 However, the Court finds that Plaintiffs have raised a genuine issue of material fact as to Trevett's intent with regards to their complaints about their neighbor Lyman in 2016. On June 1, 2016, Plaintiffs complained to the Ilion Fire Department that their neighbor at 16 English Street was burning noxious construction materials in his back yard, Pls.' SJ Mot., Ex. 22, and on June 2, 2016 they complained to Trevett's boss, the mayor. Dkt. No. 16-1 at 52–59. Trevett did eventually send the neighbor a letter and order him to stop, but only on June 20, 2016, almost three weeks later. Defendants point to Trevett's actions as evidence that he harbored no retaliatory animus toward Plaintiffs, Defs.' SJ Mem. at 16, but make no effort to explain the lengthy delay before the fire chief responded to a report of illegal burning. There may, of course, be an innocent explanation for Trevett's three-week delay in responding to this complaint, but if so, Defendants failed to provide it. Instead, Defendants point to Trevett's response to two more of Plaintiffs' 2016 complaints—relayed to him again through his supervisor, the Mayor—as additional evidence that Trevett did not retaliate against Plaintiffs. 123-4 ("Pls.' SJ Resp., Ex. II") at 3–4 (describing how, in January 2016, Trevett took action on two of Plaintiffs' complaints). This evidence may be probative of a lack of retaliatory intent, but it is not dispositive. In the face of conflicting evidence like this, the Court finds that Plaintiffs have raised a genuine issue of material fact on this issue.

The Court notes as well that, by June 2016, Plaintiffs had submitted at least seven FOIL requests regarding Trevett's record and behavior as fire chief and code enforcement officer, see generally Pls.' SJ Resp., Exs. KK-1 to -20, and had submitted a letter of intent to the Village Board about their intent to sue over numerous alleged code violations, Pls.' SJ Mot., Ex. 3. This is undoubtedly First Amendment activity. See, e.g., Wallace v. Fisher, No. 9:13-CV-1208, 2015 WL 64533, at *5 (N.D.N.Y. Jan. 5, 2015) ("[F]iling a lawsuit pursuant to 42 U.S.C. § 1983 [is] in constitutionally-protected conduct"). Similarly, being subjected to noxious smoke from the nearby burning of construction materials satisfies the injury requirement of a First Amendment retaliation claim. Cf. Gagliardi, 18 F.3d at 190 (noise pollution sufficient non-speech injury to sustain First Amendment retaliation claim). Therefore, Plaintiffs have raised an issue of material fact as to all three elements of a First Amendment retaliation claim.

*iii. Qualified Immunity*

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

#### c. Municipal Defendant

Municipalities are responsible only for "their own illegal acts," Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil-rights violations perpetrated by their employees, see Monell, 436 U.S. at 691. To establish municipal liability for First Amendment retaliation, Plaintiffs must show that they were retaliated against pursuant to an identified municipal policy or custom. Monell, 436 U.S. at 694–95. A municipal policy or custom exists where the facts show: (1) a formal policy, officially promulgated by the municipality, id. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, Pembaur, 475 U.S. at 483–84; (3) an unlawful practice by subordinate officials so permanent and widespread as to practically have the force of law, City of St. Louis v. Praprotnik, 485 U.S. 112, 127–30 (1985); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, City of Canton, 489 U.S. at 388.

At the outset, the Village cannot be liable for conduct that the Court has already determined was not a constitutional violation, such as setting enforcement priorities for Village police or applying the local zoning code to the Lawrences' fence. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a Monell claim); Rutigliano v. City of New York, 326 F. App'x 5, 9 (2d Cir. 2009) (affirming summary judgment dismissal of the plaintiff's Monell claim where the court dismissed all of the plaintiff's section 1983 claims).

#### i. Failure to Enforce

*23 Plaintiffs have established a triable issue of material fact as to whether the Village in 2016 had a policy or custom of ignoring Plaintiffs' complaints in retaliation for the exercise of their First Amendment rights.[9] This is because they have provided sufficient evidence that the Ilion Mayor—a final policymaker—ignored their serious complaints at the same time that their dispute with the town blossomed into litigation.

The Second Circuit has held that a plaintiff may demonstrate municipal liability by showing that a municipal "policymaker" violated plaintiff's constitutional rights. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); see also Gronowski v. Spencer, 424 F.3d 285, 296 (2d Cir. 2005) ("Municipal liability may attach under § 1983 when a [municipal] policymaker takes action that violates an individual's constitutional rights."); Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002) ("A plaintiff can show a municipal custom, policy or practice by establishing that an official who is a final policymaker directly committed or commanded the constitutional violation...."). "Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000), cert. denied, 531 U.S. 813 (2000) (quotation marks and citations omitted); Manemeit v. The Town Of Branford, No. 04-CV-1353, 2009 WL 1743749, at *4 (D. Conn. June 18, 2009) ("[O]nly those municipal officials who have 'final policymaking authority' (a question of state law) may by their actions subject the government to § 1983 liability.") (quoting Praprotnik, 485 U.S. at 123).

The Mayor of Ilion is a final policymaking authority. The Mayor is a full voting member of the board of trustees, which has the power and duty to "make, publish, amend and repeal regulations" and "to carry into effect the provisions of [the Village charter] and of other laws." See Pls.' SJ Mot., Ex. 3, § C-15. Additionally, the mayor is especially invested with the "duty to receive complaint of" violations of law and to see that the Village rules and regulations are "faithfully executed and observed." Id. at § C-20. These provisions empower the mayor to set enforcement policies for Village departments. Because these provisions empower the mayor to set enforcement policies for Village departments, and because Defendants have provided no briefing on this issue, Plaintiffs' submission of the Village code is sufficient as this stage to show that the Mayor "is a final policymaker with respect to the particular conduct challenged in the lawsuit," namely responding to Plaintiffs' June 2016 complaints of violations of particular local laws. See Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008).

Macera v. Village Board of Ilion, Slip Copy (2019)
2019 WL 4805354

Nicholson, 344 F.3d at 166–67 (requiring the deprivation of a constitutional right for municipal liability under Monell). And as for Plaintiffs' claims regarding Village police officers, these claims are wholly conclusory, as Plaintiffs have submitted no evidence with regard to police training at all. Hence, Plaintiffs' failure-to-train claim must fail.

*iii. Unavailability of Village Codes*

Finally, Plaintiffs allege that they were denied access to the Village Codes, in violation of their First Amendment rights.[12] See Pls.' SMF at 2; see also Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 604–05 (1982) (articulating a First Amendment right of access to government proceedings and information). But Leonard confirmed that the "hard copy of the codes are always available in the Village Hall." Leonard Dep. at 39. Additionally, Plaintiffs admit that the Village supplied them with the full code in 2015, and prior to that they only sought to obtain the code by emailing and calling several officials. See Macera Dep. at 56, 58. With the code available in hard copy, the Court finds that Plaintiffs suffered no First Amendment injury.

**B. Motion to Amend**

In addition to filing a Motion for Summary Judgment, Plaintiffs also filed what purported to be a Motion to file a second amended complaint that same day. Mot. to Am. Plaintiffs appear to have filed this Motion under the mistaken impression that they needed to file a copy of their original Amended Complaint with their Motion for Summary Judgment. See Pls.' SJ Reply at 6–7. The Court has reviewed the purported Motion to Amend: the proposed second amended complaint is identical in substance to the Amended Complaint Plaintiffs filed in April 2017, save for two exhibits that were not appended but were filed separately in support of Plaintiffs' Motion for Summary Judgment. Thus, to grant this Motion would not affect the substance of this dispute. For this reason, Plaintiffs' purported Motion to Amend is denied, with the understanding that the Court has looked to Plaintiffs' Complaint and April 2017 Amended Complaint for the purposes of this Memorandum-Decision and Order.

**V. CONCLUSION**

Throughout the course of this lawsuit, Plaintiffs have made myriad serious allegations of government misconduct. The Court takes these allegations seriously, but many of them do not belong in a suit for damages brought under § 1983 when there are robust Article 78 proceedings and injunctive relief available in New York state courts.

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Summary Judgment (Dkt. No. 113) is **DENIED in its entirety**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 110) is **GRANTED** in its entirety as to Defendant Parisi and in part as to Defendants Trevett and the Village of Ilion, excepting Plaintiffs' First Amendment retaliation claim over the events from March 2016 to July 2016; and it is further

**\*26 ORDERED**, that Plaintiffs' Motion to Amend (Dkt. No. 112) is **DENIED**; and it is further

**ORDERED**, that the Clerk shall terminate Defendant Parisi from this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

All Citations

Slip Copy, 2019 WL 4805354

Footnotes

[1]   Plaintiffs apparently never received this response, but only learned about it after a 2014 FOIL request. Macera Dep.

**Macera v. Village Board of Ilion, Slip Copy (2019)**
2019 WL 4805354

11     For the same reasons as described above in the section on Trevett, Plaintiffs' claim against the Village is not moot.

12     To be frank, Plaintiffs' evidence on this point is befuddling. See, e.g., Pls.' SJ Mot., Ex. 6 (a 2017 screenshot of the Village of Ilion website displaying links to various sections of the municipal code). Without clearer evidence, this argument does not warrant more analysis.

**End of Document**                                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.