UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Marvin Gerber and Dr. Miriam Brysk

        Plaintiff,

                                      Case No.2:19-cv-13726

vs.                                    Hon. Victoria Roberts

Henry Herskovitz, Gloria Harb, Tom Saffold,
Rudy List, Chris Mark, Deir Yassin Remembered, Inc.,
Jewish Witnesses for Peace and Friends, The City of Ann Arbor,
Ann Arbor Mayor Christopher Taylor, in his official
And individual capacities, Ann Arbor Community Services
Administrator Derek Delacourt, in his official and individual
capacities, Ann Arbor City Attorney Stephen Postema, in his
official and individual capacities, and Senior Assistant
City Attorney Kristen Larcom, in her official and individual capacities.

        Defendants, Jointly and Severally.

_____/

## PROTESTER DEFENDANTS' *CORRECTED* MOTION TO DISMISS[1]

Now come Defendants Henry Herskovitz, Gloria Harb, Tom Saffold, Rudy List, Chris Mark and Jewish Witnesses for Peace and Friends (hereinafter the Protester Defendants) by and through their counsel Cynthia Heenan, John A. Shea and Hugh M. Davis, and move this Honorable Court for dismissal of the remaining claims in Plaintiffs' First Amended Complaint as to each of them for the reason that

---

[1] This Corrected version of these Defendants' Motion to Dismiss and Brief in Support are filed with leave of the Court, see Order dated March 19, 2020. [Dkt. 42.]

1

it fails to state a claim for relief against the Protester Defendants and the Plaintiffs

lack standing and thus it must be dismissed as to the Protester Defendants pursuant

to F.R.Civ.P. 12 (b)(1) and (6).[2]

This motion is filed as the Protester Defendants first responsive pleading as

permitted by F.R.Civ.P. 12 and pursuant to the January 3, 2020 and March 10, 2020

Orders (Dkt. 10 and Dkt. 33).

Defendants' counsel Hugh Davis spoke with Mr. Susselman by telephone on

March 16, 2020, to request concurrence with this motion which he denied on behalf

of the Plaintiffs.

Respectfully submitted,

  /s/Cynthia Heenan
Constitutional Litigation Associates, P.C.
**Attorney for Defendants**
220 Bagley St., Ste. 740
Detroit, MI 48226
(313) 961-2255/Fax: (313) 922-5130
3/25/2020                    Heenan@ConLitPC.Com

---

[2] By Order dated March 19, 2020 [Dkt. 41], the Court dismissed Plaintiffs' pendent state law claims, Counts XIV-XXIII. This Motion and Brief in Support concern Plaintiffs' remaining federal civil rights claims against the Protester Defendants.

## BRIEF IN SUPPORT OF PROTESTER DEFENDANTS' CORRECTED MOTION TO DISMISS

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................ **iv**

**I.  STATEMENT OF RELEVANT FACTS** ....................................**1**

**II. LEGAL STANDARD FOR DISMISSAL FOR FAILURE TO STATE A CLAIM** ...............................................................................**3**

**I. ARGUMENT** .................................................................**4**

  **A. The Protests and Signs Are 1st Amendment Protected Speech and Assembly** .......................................................................**4**

  **B. The Injunctive Remedy Plaintiffs Seek is Not Available** ................**6**

  **C. Plaintiffs Lack Standing** ...............................................**11**

  **D. Federal Civil Rights Claims against Protester Defendants** ...........**11**

   **1. Count I: 42 U.S.C. § 1981** ...........................................**12**

   **2. Count II: 42 U.S.C. § 1982** ...........................................**14**

   **3. Court III:  Conspiracy Between PDs and with City Defendants to violate § 1982** .................................................**16**

   **4. COUNT V – 42 U.S.C. § 1983 violation by PDs** .......................**18**

   **5. COUNT VI – Conspiracy Between the Protesters and With the City** .........................................................................**21**

   **6. COUNT VII – Violation of 42 U.S.C. § 1985(3)** ........................**22**

**7. COUNT VIII – Conspiracy Between PDs and With the City Defendants to Violate 42 U.S.C. § 1985(3)** .......................................**28**

**CONCLUSION AND RELIEF REQUESTED**..........................................**30**

**CERTIFICATE OF SERVICE** ...................................................................**31**

## <u>CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................................................................................................4

*Bible Believers v. Wayne Cty.*, 805 F.3d 228 (6th Cir. 2015)..............................6, 10

*Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777 (1982).................................. 20, 21

*Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003)...........................................13

*Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998 (1989).................................................................................................................21

*Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)..............7

*Hill v. Colorado*, 530 U.S. 703, 716, 120 S. Ct. 2480 (2000) ...............................10

*Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985) ........................................................16

*R.A.V. v City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)...8

*Snyder v. Phelps*, 562 U.S. 443, 459-60, 131 S. Ct. 1207 (2011) ........................5, 6

*United Brotherhood of Carpenters v. Scott*, 463 U.S. 825 (1983) ................................................................. ……………..14, 23, 25, 24, 26, 29

*Virginia v. Black*, 538 U.S. 343 123 S. Ct. 1536 (2003) ...........................................5

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3, 4

*Beckett v. Ford*, 613 F.Supp.2d 970 (N.D. Ohio, W.D. 2009) ................................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................................................................................................4

*Bible Believers v. Wayne Cty.*, 805 F.3d 228 (6th Cir. 2015)............................6, 10

*Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777 (1982)................................. 20, 21

*Brandenburg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) ........6

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S. Ct. 753 (1993)14, 24, 26, 27

*Burkhardt v. United States*, 13 F.2d 841 (6th Cir. 1926).........................................22

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ...................... 20, 21

*Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003).........................................13

*Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019)....................................................5

*Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004).........................................................7

*Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998 (1989)..................................................................................................................21

*Doe v. McKesson*, 945 F.3d 818 (5th Cir. 2019) .....................................................5

*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992).....................................................................................................10

*Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)..............7

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ....................................... 23, 25, 26, 27

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir.1987) ................................................17

*Hague v. Comm. For Indus. Org*, 307 U.S. at 515, 59 S. Ct. 954, 83 L.Ed. 1423 (1939)....................................................................................................................7

*Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979). ............................................17

*Hill v. Colorado*, 530 U.S. 703, 716, 120 S. Ct. 2480 (2000) ...............................10

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985) ......................................................16

*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002) .......................... 25, 26

*Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S. Ct. 2714 (1974) ..............10

*Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S. Ct. 1146 (1973) ............................22

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ..........................................................................................................................11

*Matal v. Tam*, 137 S. Ct. 1744 (2017) .....................................................................5

*McCullen v. Coakley*, 573 U.S. 464, 134 S.Ct. 2518 (2014)....................................8

*Meyer v. Grant*, 486 U.S. 414, 108 S. Ct. 1886 (1988) ............................................5

*Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43,  97 S. Ct. 2205, 53 L. Ed. 2d 96 (1977) ......................................................................6

*New York State Nat'l Org. for Women v. Terry*, 704 F. Supp. 1247, 886 F.2d 1339 (2d Cir. 1989)........................................................................29

*Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Ci. 1974) .....................15

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983) .................................................................8, 9

*Personnel Admin. of Massachusetts v. Feeney*, 442 U.S. at 279 (1979) ................27

*R.A.V. v City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)..8

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ..........................................................21

*Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342 N.W.2d 563 (Mich. Ct. App. 1984).......................................................... 16, 17

*Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957).........5

*Saieg v. City of Dearborn*, 641 F.3d 727 (6th Cir. 2011) ........................................10

*Scott v. Moore*, 461 F. Supp. 224 (E.D. Tex. 1978) ................................................23

*Selevan v. New York Thruway Authority*, 584 F.3d 82 (2d Cir. 2009) ....................25

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .......3

*Snyder v. Phelps*, 562 U.S. 443, 459-60, 131 S. Ct. 1207 (2011) .........................5, 6

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) .............................................17

*Spencer v. Casavilla*, 903 F.2d 171 (2d Cir. 1990) ......................................... 25, 26

*Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) ..........6

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796 (2005)...............22

*U.S. v. Greer*, 939 F.2d 1076 (5th Cir. 1991) ........................................................14

*United Brotherhood of Carpenters v. Scott*, 463 U.S. 825 (1983) ...................................................... ………………..14, 23, 25, 24, 26, 29

*United States v. Brown*, 49 F.3d 1162 (6th Cir. 1995) ..................................... 14, 15

*United States v. Guest*, 383 U.S. at 745 (1966) .....................................................24

*United States v. Kozminski*, 487 U.S. 931, 101 L. Ed. 2d 788, 108 S. Ct. 2751 (1988)...............................................................................24

*Virginia v. Black*, 538 U.S. 343 123 S. Ct. 1536 (2003) ..........................................5

*Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir. 1991) .................................................................................. …25, 29

*Wilson v. Birnberg*, 667 F3d 591 (5th Cir. 2012).....................................................4

*Women's Health Care Services v. Operation Rescue*, 773 F. Supp. 258 (D. Kan. 1991) .........................................................................29

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S. Ct. 1093, 172 L. Ed. 2d 770 (2009) ......................................................................................................................10

**Statutes**

42 U.S.C. 1981 ...............................................................................................................12

42 U.S.C. § 1982 ................................................................................................ 14, 16, 17

42 U.S.C. §1983 ....................................................................................................... 19, 21

42 U.S.C. §1985 ........................................................................................................ passim

42 U.S.C. § 1985(3). ....................................................................................... 23, 24, 25, 28

**Rules**

F.R.Civ.P. 12 (b) ..........................................................................................................2, 3

F.R.Civ.P. 8(a)(2) and 8(d)(1). ....................................................................................11

## <u>STATEMENT OF ISSUES PRESENTED</u>

**I.     Should Plaintiffs' First Amended Complaint be dismissed for lack of Article III jurisdiction due to Plaintiffs' lack of standing?**

**Protester Defendants Answer:          Yes**

**This Court Should Answer:          Yes**

**II.     Should Plaintiffs' First Amended Complaint be dismissed as to the Protester Defendants for failure to state a claim upon which relief may be granted?**

**Protester Defendants Answer:          Yes**

**This Court Should Answer:     Yes**

## I.    STATEMENT OF RELEVANT FACTS

Plaintiffs bring a plethora of causes of action against a number of people engaged in peaceful protests near a synagogue in Ann Arbor that Plaintiffs attend. Those Defendants, identified by Plaintiffs as "Protester Defendants" (on account of their protest speech), carry and otherwise display signs that convey various anti-Israel and pro-Palestinian messages beginning immediately prior to the time when the synagogue holds weekly Sabbath services. The "Protester Defendants'" protest speech occurs on public land alongside a public street and sidewalk, not on Synagogue property. Plaintiffs claim to be offended by the protest speech, and seek this Court's assistance in silencing it, notwithstanding the constitutional right guaranteed by the First Amendment to not have one's speech political speech in a traditional public forum silenced by Government action.

Plaintiffs contend that Protester Defendants' (PDs) protests and signs are not protected First Amendment speech or assembly especially because (1) the protests constitute "targeted picketing," (2) the congregants at Beth Israel Synagogue (BIS) constitute a "captive audience," (3) the protests infringe on the Plaintiffs' free exercise of religion, (4) children can see signs and (5) years of repetition of the ideas espoused by the protesters have failed to persuade the Plaintiffs, and their fellow congregants,  to their point of view.

The assertion that the speech is not protected and/or is aimed solely at the BIS congregants is belied by the content of the signs; the fact that the protests occur on both sides of Washtenaw Avenue and that the signs depicted in the exhibits face the street (Ex. 3 and 8, PageID.93-101, 375-377); and that the protesters and their signs are viewed by Plaintiffs (if they will not avert their eyes) only momentarily as they enter for their services, but not for most of the 1.5 to 2 hours the PDs allegedly remain in the public right-of-way [PageID.220-221] and there is no reference to all to seeing them again when they leave.

Plaintiffs acknowledge that the protest speech occurs in the public right-of-way on both sides of Washtenaw Ave, among the most traditional of all public fora. [Para. 26, PageID.221] Plaintiffs describe [para. 24, PageID.220] 18-20 signs in this area, including four that they characterize as "flagrantly anti-Semitic:" "Resist Jewish Power," "Jewish Power Corrupts," "End the Palestinian holocaust," and "No more holocaust movies." [para. 27, PageID.221] However, the FAC also references: "America First," "The U.S. of Israel?" "Stop Funding Israel," "Fake News: Israel is a Democracy," and "Atone for the sin of supporting genocide." Exhibits 3 and 8 to the FAC also depict signs reading: "Boycott Apartheid Israel," "Stop U.S. Aid to Israel," "Remember the USS Liberty" (an American military ship that was bombed by Israel during the Seven Day War resulting in many

2

casualties), "Israel: No Right to Exist" and an Israeli flag overprinted with a circle bisected by a slash.

Notably, the FAC does not accuse PDs of "fighting words" or "incitement" to unlawful activity (traditionally unprotected under the 1st Amendment) or of unprotected non-speech conduct like entering onto the property of the Synagogue, impeding access to the Synagogue, or interfering with the conduct of Synagogue services. Further, there are no allegations of PD behavior that unlawfully discouraged the City defendants from enforcing any ordinances. Indeed, Plaintiffs acknowledge that the City has consistently assured PDs and the BIS Congregation that the PDs' protest speech is protected under the First Amendment.

Further, most of the federal civil rights claims against the PDs are grounded in Plaintiffs' claim that the City has not enforced its sign ordinances -- claims for which Plaintiffs have no constitutionally protected interest and lack standing.

## II.    Legal Standard for Dismissal for Failure to State a Claim

A motion to dismiss should be granted if plaintiff's complaint fails to state a claim upon which relief may be granted. (F.R.Civ. P. 12(b)(6).)

The court may dismiss the case or a claim where there is an absence of "sufficient factual matter to state a facially plausible claim to relief." (*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010), emphasis added, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009)

To determine whether a pleading adequately states a plausible claim for relief, a court must first take "note of the elements a plaintiff must plead to state a claim." (*Ashcroft v. Iqbal, supra*, 556 U.S. at 675.) Second, the court, drawing "on its judicial experience and common sense," must decide in the specific context of the case whether the factual allegations, if assumed true, allege a plausible claim. (Id. at 679; *Wilson v. Birnberg*, 667 F3d 591, 595 (5th Cir. 2012).) Although under the Rule the complaints' allegations are accepted as true, courts are not bound to accept as true a legal conclusion couched as a factual allegation. (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).)

## I.   <u>ARGUMENT</u>

### A.   <u>The Protests and Signs Are 1st Amendment Protected Speech and Assembly</u>

The PDs' speech, as alleged by Plaintiffs, is protected under the First Amendment, as affirmed by a long line of well-settled Supreme Court and Sixth Circuit precedent. Notably, Plaintiffs practically admit that there is no legal precedent to the contrary, but assert a unique "convergence of all of the above factors," including especially the 16 years of repetition of "deliberately harassing and insulting conduct," that should lead this court to expand the free exercise of religion clause to swallow up the free speech and assembly clauses of the First Amendment. [end of para. 83 PageID.247]

It is black-letter constitutional law that "The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'" *Meyer v. Grant*, 486 U.S. 414, 421, 108 S. Ct. 1886, 1891 (1988) (quoting *Roth v. United States*, 354 U.S. 476, 484, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957)), and that "political speech [is] at the core of what the First Amendment is designed to protect." *Virginia v. Black*, 538 U.S. 343, 365, 123 S. Ct. 1536, 1550-51 (2003)

The PDs' statements address "matters of public concern . . . fairly considered as relating to any matter of political, social, or other concern to the community," entitling them to "special protection" under the First Amendment. *Snyder v. Phelps*, 562 U.S. 443, 459-60, 131 S. Ct. 1207 (2011). The PDs' signs, even as selectively represented by Plaintiffs, are clearly political advocacy in opposition to the policies of the Israeli government toward the Palestinian people and the support of the U.S. government for said policies. Even if, as alleged by Plaintiffs, the PDs' speech is aimed primarily at influencing the Plaintiffs (and congregants), it is still entitled, even especially entitled, to First Amendment protection. *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017); *Doe v. McKesson*, 945 F.3d 818, 840-41 (5th Cir. 2019); *Davison v. Randall*, 912 F.3d 666, 693 (4th Cir. 2019). This is particularly so if one accepts Plaintiffs' premise that Defendants' views on Israeli policy toward Palestine are in

the minority of American thought. *Bible Believers v. Wayne Cty*, 805 F.3d 228, 243-

244 (6th Cir. 2015) (*en banc*):

> The First Amendment offers sweeping protection that allows all
> manner of speech to enter the marketplace of ideas. This protection
> applies to loathsome and unpopular speech with the same force as it
> does to speech that is celebrated and widely accepted. The protection
> would be unnecessary if it only served to safeguard the majority
> views. In fact, it is the minority view, including expressive behavior
> that is deemed distasteful and highly offensive to the vast majority of
> people that most often needs protection under the First
> Amendment. *See, e.g., Nat'l Socialist Party of Am. v. Vill. of Skokie*,
> 432 U.S. 43, 43-44, 97 S. Ct. 2205, 53 L. Ed. 2d 96
> (1977) (recognizing First Amendment rights of Neo Nazis seeking to
> march with swastikas and to distribute racist and anti-Semitic
> propaganda in a predominantly Jewish community); *Brandenburg v.
> Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430
> (1969) (recognizing the First Amendment rights of Ku Klux Klan
> members to advocate for white supremacy-based political reform
> achieved through violent means); *Texas v. Johnson*, 491 U.S. 397, 405-
> 06, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (recognizing flag burning
> as a form of political expression protected by the First
> Amendment); *Snyder*, 562 U.S. 443, 454-56, 131 S. Ct. 1207, 179 L.
> Ed. 2d 172 (2011) (recognizing a religious sect's right to picket military
> funerals).

## B.    The Injunctive Remedy Plaintiffs Seek is Not Available

Plaintiffs seek a permanent injunction against the PDs "precluding them from

engaging in the picketing conduct altogether, or, alternatively, precluding them from

engaging in any aspect of their protest within 1,000 feet of the Synagogue" on

Saturday mornings and Jewish holidays, limiting protests at other times to no more

than 5 participants, and forever banning them (and them only) from placing signs or

placards in the public right-of-way in front of the synagogue and across the street from it. [PageID.249-250, *et seq*.]

Such an injunction is an unavailable remedy, first, because there is no statute or ordinance providing for it. It is settled law in this Circuit that the Government may not restrict speech along public streets, absent "appropriate regulations" passed by the Government as to such speech. In *Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004), the Sixth Circuit rejected the contention that the government could restrict "targeted picketing" of a residence absent a proper statute or ordinance. The Court reaffirmed the Supreme Court's characterization of public streets as a traditional public forum for picketing and leafletting. *Id*. at 550. As for the argument that picketing of a residence was not protected speech under *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the Court observed that *Frisby* did not go nearly that far, explaining:

> Contrary to *Byerley's* argument, Supreme Court precedent makes it clear that citizens have the constitutional right to use streets for assembly and communication. *See Hague v. Comm. For Indus. Org., 307 U.S. at 515-16, 59 S. Ct. 954, 83 L.Ed. 1423 (1939)*. Although the government may restrict that right through appropriate regulations, that right remains unfettered <u>unless and until the government passes such regulations</u>. *See id*. at 51<u>6.</u>
> [*Id*.          at          551.          (emphasis          supplied)]

Thus, even if it were true that the PDs' protests constitute "targeted picketing" of the Synagogue, there is no governmental regulation against it and, under *Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004) the courts cannot impose one of their own.

Even if this Court had authority to restrict the PDs' speech as Plaintiffs seek, their proposed restrictions would violate settled free speech principles against content and viewpoint discrimination. Speech in a public forum may be restricted on the basis of viewpoint only where it is "necessary to serve a compelling state interest and [ ] it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983) As observed in *McCullen v. Coakley*, 573 U.S. 464, 477, 134 S.Ct. 2518 (2014):

> Consistent with the traditionally open character of public streets and sidewalks, we have held that the government's ability to restrict speech in such locations is "very limited." In particular, the guiding First Amendment principle that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content" applies with full force in a traditional public forum. As a general rule, in such a forum the government may not "selectively . . . shield the public from some kinds of speech on the ground that they are more offensive than others."     [Internal citations omitted.]

In *R.A.V. v City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), the Supreme Court noted that unlawful "viewpoint discrimination" occurs when a governmental restriction penalizes, or treats more harshly, some speech but not other speech within the same class. In *R.A.V.*, the Supreme Court considered a city ordinance that penalized speech that aroused "anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." The Court struck down the ordinance as a content-based regulation that represented unlawful viewpoint discrimination, noting that all kinds of speech might arouse "anger, alarm, or resentment" on other bases, such as political affiliation, union membership, sexual orientation, etc., but that this other speech was permitted. *Id* at 391. In so ruling, the

8

Court stated, "[t]he First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." *Id.*

In this case, Plaintiffs ask the Court to impose restrictions on Defendants' speech because, they claim, it creates an environment that dissuades them from attending the Synagogue. However, under Plaintiffs' theory, other speech, including protest speech that is not offensive to them, would not be proscribed. So, protest speech in <u>favor</u> of Israel, or <u>anti</u>-Palestinian, or in <u>support</u> of the United States' policies as they relate to Israel would be permitted because such speech presumably would not offend Plaintiffs in their use of BIS.[3] Under *R.AV. et al*, this type of content regulation that discriminates as to viewpoint is impermissible.

Plaintiffs might argue that the injunction they seek is not subject to the "strict scrutiny" standard of a viewpoint-based regulation, but rather the more relaxed standard applied to "time-place-manner" restrictions. However, the longstanding rule is that even those restrictions in a traditional public forum are valid only if they are "content neutral." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S.

---

[3] While perhaps the Court may not consider this in the context of a 12(b)(6) motion, counsel's reference to pro-Israel protest speech is not merely theoretical. *See* https://www.mlive.com/news/ann-arbor/2020/01/bitter-conflict-breeds-unlikely-friendships-in-ann-arbor-synagogue-protests.html.

at 45. As explained just above, what Plaintiffs seek is anything but content-neutral.

In *Bible Believers v. Wayne Cty., supra*, 805 F.2d at 847, the Sixth Circuit explained:

> Speech restrictions in these [public] fora fall into two categories: content-based restrictions or time, place, and manner restrictions **that are content-neutral**. *United States v. Grace*, 461 U.S. 171, 177, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983); *Saieg*, 641 F.3d at 734.
>
> * * * *
>
> **"Listeners' reaction to speech is not a content-neutral basis for regulation,"** *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 134, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992)….

 (emphases added)

"Content based restrictions on constitutionally protected speech are anathema to the First Amendment and are deemed to be 'presumptively invalid.'" *Bible Believers, supra* at 248 (quoting *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S. Ct. 1093, 172 L. Ed. 2d 770 (2009)) In the FAC, Plaintiffs attempt to avoid this presumption by invoking a the "captive audience" doctrine, relying heavily upon *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S. Ct. 2714 (1974), but ignore that the public transit system at issue in *Lehman* was a nonpublic forum ("No First Amendment forum is here to be found," *Id*. at 304) and therefore the government had more inherent power to restrict speech.

*Lehman* is inapplicable here. The PDs' speech occurs in a traditional public forum, where speech "may not be curtailed simply because the speaker's message may be offensive to his audience." *Hill v. Colorado*, 530 U.S. 703, 716, 120 S. Ct. 2480 (2000) "Even in a public forum, one of the reasons we tolerate a protester's

10

right to wear a jacket expressing his opposition to government policy in vulgar language is because offended viewers can 'effectively avoid further bombardment of their sensibilities simply by averting their eyes.'" *Id*.

### C. <u>Plaintiffs Lack Standing</u>

Plaintiffs lack Article III standing to bring this suit in federal court as more fully explained in the City Defendants' Motion to Dismiss (Dkt. 32). They have alleged no actual, concrete and particular injury. They have not been prevented from participating in worship or other BIS services, nor have they alleged that their travel to BIS has been actually impaired. Further, their claimed injury cannot be redressed by the injunctive relief they seek because it would violate the First Amendment and they are not entitled to money damages because they have suffered no more than what the First Amendment requires of all persons in the United States. Thus, they have not met their burden of establishing standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

### D. <u>Federal Civil Rights Claims against Protester Defendants</u>

Despite the 95 pages and 248 paragraphs, the 23 Counts fail utterly and uniformly as a "short and plain statement of the claim showing the pleader is entitled to relief" and to put forth "simple, concise and direct" allegations contrary to F.R.Civ.P. 8(a)(2) and 8(d)(1).

11

1. **Count I: 42 U.S.C. § 1981**

   **(a) Statement Of Equal Rights**

   All person within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, **and to the full and equal benefit of all laws and proceedings for the security of persons and property** as is **enjoyed by white citizens,** and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   (c) **Protections Against Impairment**

   The rights protected by this section **are protected against impairment by nongovernmental discrimination and impairment under color of State law.** (Emphasis added by Plaintiffs in their First Amended Complaint.)

   **42 U.S.C. 1981**

   The PDs do not dispute that Jews have been held to qualify as a race for purposes of the Federal civil rights statutes, nor that § 1981 has been interpreted to apply to qualifying discrimination based on ancestry and ethnicity. [PageID.248] However, discriminatory <u>private</u> conduct is actionable under § 1981 only where there is racially motivated interference with the making or enforcing of contracts or the full and equal benefit of laws for the security of persons and property.

   Plaintiffs fail to state which part of 1981 they allege is being violated by PDs. Presumably, because they do not mention any contractual activity and they highlight the full and equal benefit language, the latter is their focus.

12

> The "security of persons and property" language limits the potential class of cases that may be brought under the equal benefit provision. A litigant must demonstrate the denial of the benefit of a law or proceeding **protecting his or her personal security or a cognizable property right**.

> *Chapman v. Higbee Co.*, 319 F.3d 825, 832-33 (6th Cir. 2003) (emphasis added)

The FAC does not identify any laws or proceedings for the security of persons or property they are allegedly being intentionally denied the benefit of based on their Jewish ethnicity. Plaintiffs say that it is "self-evident based on . . . the protesters' signs, that the protesters have targeted the members of the synagogue based on the fact that they are Jewish." [para. 88, PageID.248] Even assuming the truth of those assertions, they implicate no law or proceeding for the security of persons or property which has been denied. In particular, the FAC cites no authority for the proposition that persons engaged in protected First Amendment speech and assembly must broadcast their message equally to all segments of the public.

Insofar as Plaintiffs may be asserting that the PDs are denying them the full and equal benefit of laws by interfering with their "First Amendment right. . . to exercise their freedom of religion" [paras. 83(c) and 91] the claim fails. The FAC cites no law describing the free exercise of religion clause as a law for the security of persons and property. Moreover, while the PDs do not concede that their conduct is directed at or in fact is interfering with the Plaintiff's free exercise of religion, it is only the government that can "make no law respecting an establishment of

13

religion, or prohibiting the free exercise thereof." (U.S. Const. Am. 1.) *See, Bray v. Alexandria Women's Health Clinic*, (addressing a claim under 42 U.S.C. §1985, the Court reaffirmed that the First Amendment is a right "'that is by definition a right only against state interference,'" citing *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 833 (1983)   Plaintiffs therefore fail to state a § 1981 claim against the PDs.

### 2.  Count II:    42 U.S.C. § 1982

42 U.S.C. §1982 states:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Generally, this statute prohibits discrimination related to housing and land ownership. Plaintiffs assert that the PDs protests and signs, allegedly intended to harass and intimidate Plaintiffs as they enter the Synagogue to attend Sabbath services, violates § 1982 as well. It is true that in very limited circumstances the right to "hold" property has been construed to mean the "use" of property not owned by the person in question. *United States v. Brown*, 49 F.3d 1162, 1167 (6th Cir. 1995) (citing with approval *U.S. v. Greer*, 939 F.2d 1076 (5th Cir. 1991)). However, the acts of intimidation found in those cases to interfere with the "holding" of the synagogue property sufficient to constitute a § 1982 violation were of an entirely different magnitude, and the allegedly intimidating activity was not protected speech nor was it occurring on public property which was a traditional public forum. Rather

those cases involved criminal conduct including entering onto and physically damaging to the property used by Jews for their religious services.

In *United States v. Brown*, for example, the defendant was involved in a drive-by shooting of a synagogue in Nashville, which he and other white supremacists had planned in advance and they picked that synagogue because other skinheads had defaced it with swastikas previously. *Greer* likewise involved illegal defacement and other destruction of synagogue property that was racially motivated. *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974), involved a complete bar to the use of a private club pool by black children who were guests of white members. Each of these cases describe actions that were not themselves constitutionally protected taken to directly interfere with a person's ability or capacity to "use" property on account of that person's race.

In contrast, even if the Court were to accept as true Plaintiffs' claim that the PDs' speech targets them and only them on account of their race (which the PDs deny), the PDs' speech activity is constitutionally protected and it does not obstruct or interfere with a congregant's (including Plaintiffs') ability or capacity to "use" the Synagogue. The "intimidation" the Plaintiffs assert involves having to avert their eyes or look at some words they find offensive as they enter.

Moreover, notwithstanding Plaintiffs' legal conclusions masquerading as factual allegations, it is not reasonable to infer from the PDs conduct that they intend

to discourage or prevent the congregants from attending services or otherwise interfere with their use of the buildings. Indeed, the only reasonable inference is that they wish to share their political views with the congregants and the thousands of others traveling Washtenaw Ave. during the 1-1/2 to 2 hours they spend picketing every Saturday. Plaintiffs provide no viable argument for extending the cases cited to cover constitutionally protected speech on adjacent public property as "interference" with the right of the Plaintiff's to hold property. Thus Plaintiffs state no viable claim in violation of 42 U.S.C. § 1982.

### 3. Count III:  Conspiracy Between PDs and with City Defendants to violate § 1982

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir.1985)

In addition to a joint "plan," Plaintiffs must also prove that the conspirators had the intent to commit an unlawful or tortious act. If the actors had no knowledge of the wrongful nature of the act and no intention to cause harm when they made the agreement to take the particular course of action, the civil conspiracy claim fails. See, e.g., *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342, 354

N.W.2d 563, 569 (Mich. Ct. App. 1984) (each particular defendant who is to be charged with responsibility shall be proceeding tortiously, with intent to commit the tort or with negligence, quoting W. Prosser, *Law of Torts* § 46, at 292 (4th ed. 1971))

The claim that the PDs conspired with each other fails first because, as discussed just above, Plaintiffs have failed to state a claim that the PDs violated 42 U.S.C. § 1982. Moreover, even if they had violated § 1982, the assertion that they conspired together to do so by planning the protests fails. There is no allegation that they knew their protest activities were unlawful nor that they intended to violate any law. To the contrary, Plaintiffs admit that City officials and police officers told the PDs on multiple occasions that their protest activity, including their signs, were perfectly legal and "in absolute compliance." [Para. 38 at PageID.224 – 225]

Nor does the claim that the PDs conspired with the City Defendants to violate 42 USC § 1982 pass muster. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). *See also Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Beckett v. Ford,* 613 F.Supp.2d 970, 983 (N.D. Ohio 2009); *Hampton v. Hanrahan,* 600 F.2d 600, 620-21 (7th Cir.1979).

There is nothing alleged, circumstantial or otherwise, to suggest that the PDs formed any agreement with the City Defendants to not enforce the ordinances

against them. The mere fact that the PDs did not get arrested or ticketed or banned by the City from placing their signs or engaging in their protests does not form any basis to conclude that the PDs engaged in any conspiracy with the City Defendants to allow them to do something illegal or unlawful, nor especially anything specifically interfering with the Plaintiffs' use of the Synagogue in violation of § 1982.

Finally, the alleged conspiracy Plaintiffs assert is some agreement for the City Defendants to not enforce their sign ordinance. It is not alleged that the PDs and City Defendants conspired to interfere with the congregants' use of the buildings which is the threshold issue for their § 1982 claim.  Even if the City had forbidden the protesters to stick flag pennants in the dirt or lean signs on their chairs, they could not have stopped them from carrying signs in the right-of-way.  It is the presence of the protesters and the content of their signs which Plaintiffs allege to have interfered with their use of the property, not the physical act of placing those objects in the right-of-way.

Plaintiffs have failed to state a claim that the protesters conspired with each other or the City Defendants to violate § 1982.

## 4. COUNT V – 42 U.S.C. § 1983 violation by PDs

42 USC § 1983 provides a cause of action **against state actors** who personally deprive an individual of the "rights, privileges, or immunities secured by the Constitution." (Emphasis added.) Plaintiffs fail to articulate in this count any constitutional provision they claim has been violated. Presumable they refer to their right to free exercise of religion. Since, as discussed above, only governmental entities are prohibited by the First Amendment from interfering with their free exercise, the claim fails against the PDs, who are private individuals.

To avoid this outcome, Plaintiffs assert that PDs are cloaked with the color of law as state actors by virtue of the fact that City Defendants did not enforce its sign and street ordinances to remove the PDs signs and by informing the Congregation that the PDs First Amendment right to free speech and assembly precluded them from taking such action. This assertion by Plaintiffs is not one of "fact," but rather an unsupported legal conclusion based on an unsupported inference that the City's lack of enforcement of the sign ordinance was due to some "action" by the PDs.

The City Defendants were precluded from enforcing the ordinance because the signs expressed protected speech. But even if the PDs signs were not protected speech, mere regulation of private conduct (here the existence of the sign ordinances), even if extensive, is insufficient to support a finding of state action on the part of the private actors. [_____fn 393, p. 5-99]. To find state action, the state must participate in, order, coerce, or significantly encourage the

contested activity. [_____ f. 394, p. 5-99].[4] "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05, 102 S. Ct. 2777, 2786 (1982). There is no state action by private individuals unless the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id*. at 1004.

The sole case cited by Plaintiffs in Count V to support the claim that the PDs are state actors, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961), was decided by the Warren Court, which took an expansive view of state action in furtherance of its goal of eradicating societal racial discrimination. Although it has not been directly overruled, the Burger, Rehnquist and Roberts Courts have reversed this trend so severely that as early as 1979, one authority concluded that state action was "the clearest area of conservatism on the part of the Burger Court and the most unqualified reversal of position from that adhered to by the" Warren Court. *J. Choper, Y. Kamisar & L. Tribe, The Supreme Court: Trends and Developments 1978-1979 at 265.* (National Practice Institute 1979).

---

[4] The authorities supporting this paragraph will be provided in PDs' Reply. The treatise containing these citations was left at undersigned counsel's office when we moved to working from home prior to the Governor's order in light of Mr. Davis's heightened risk factors..

The more restrictive approach was announced in the Court's 1982 decisions in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) and *Blum v. Yaretsky, supra.* Those decisions found that the private party was not engaged in state action despite extensive government involvement. It is highly unlikely that *Burton v. Wilmington* would be decided the same way today. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, *supra* (explaining that "*Burton* was one of our early cases dealing with 'state action' under the Fourteenth Amendment, and later cases have refined the vague 'joint participation' test embodied in that case").

Plaintiffs' FAC does not even come close to asserting facts that cloak the PDs with the color of law and this claim too must fail.

## 5. COUNT VI – <u>Conspiracy Between the Protesters and With the City Defendants to Violate 42 U.S.C. § 1983</u>

PDs are not state actors as explained above and therefore do not violate 42 U.S.C. §1983 by placing out their signs and conducting their protests, even assuming arguendo that the speech is not protected and said protests actually prohibit Plaintiffs from participating in their religious services. Thus, they cannot be found to have conspired together to violate the Plaintiffs' right to free exercise of religion under § 1983.

Nor is there any support for Plaintiffs' legal conclusion that the PDs conspired with the City Defendants to violate § 1983. The City owed no duty to the Plaintiffs to enforce the sign and street ordinances. *Deshaney v. Winnebago Cty. Dep't of Soc.*

21

*Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998 (1989); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755, 125 S. Ct. 2796 (2005); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146 (1973). Even assuming arguendo that the protesters' speech was not protected, Plaintiffs' allegations are insufficient regarding any agreement or plan or act in furtherance of a plan to injure the Plaintiffs or congregants by unlawful means. Not being arrested or not having their signs confiscated are not acts at all, much less in furtherance of a conspiracy to injure by unlawful means. There are no facts alleged that City officials agreed with the PDs to forbear from enforcing the ordinances by unlawful means. Thus, *Burkhardt v. United States*, 13 F.2d 841 (6th Cir. 1926) is not applicable.

*Dennis v. Sparks*, 449 U.S. 24, 28 (1980), held that the judicial immunity granted to a co-conspirator did not absolve the private co-conspirators. However, factually it bears no resemblance to this case. There, the private actors bribed a judge to issue an injunction against a competitor, which decision was found on appeal to lack legal merit.

Plaintiffs' FAC fails to factually support their claims of conspiracy among the PDs or between the PDs and the City Defendants.

## 6. <u>COUNT VII – Violation of 42 U.S.C. § 1985(3)</u>

The elements of a section 1985(3) action are: (1) a conspiracy; (2) with intent to deprive a person, or class of persons, of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an invidious, class-based animus; (4) an act in furtherance of the conspiracy; and (5) an injury. *Scott v. Moore*, 461 F. Supp. 224, 227 (E.D. Tex. 1978), aft'd, 680 F.2d 979 (5th Cir. 1982), rev'd sub nom. *Carpenters, supra.*

The facts alleged do not support the claimed conspiracy in violation of 42 U.S.C. § 1985(3). Congress intended this statute, originally part of the Ku Klux Klan Act of 1871, to combat the attacks upon Blacks and their Union supporters that occurred in the South following the Civil War. During the mid-1950's to mid-1970's, civil rights issues took a forefront in the legal and political arena. During this period, several Reconstruction Era acts were revived by court decisions such as *Griffin v. Breckenridge*, 403 U.S. 88 (1971), which initially interpreted 42 U.S.C. § 1985(3) to make actionable a wide array of private discriminatory acts that had previously been actionable only when committed by the government. In subsequent years, for better or worse, more conservative Supreme Courts have greatly narrowed the scope of 1985(3). In *Carpenters*, *supra*, the Court held that a group of non-union workers were not protected by § 1985(3) because the statute does not reach private conspiracies to deprive a person of First Amendment rights, which is the central focus of Plaintiffs' FAC.

23

Absent state action, a 1985(3) claim of conspiracy by private parties to violate the rights protected by the First Amendment does not lie. The Supreme Court's discussion of the limited scope of "protected rights," the interference with which may give rise to a § 1985(3) claim, forecloses Plaintiffs' § 1985(3) claim here insofar as they allege interference with their right to free exercise of religion:

> In *Carpenters*, we rejected a claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3). The statute does not apply, we said, to private conspiracies that are "aimed at a right that is by definition a right only against state interference," but applies only to such conspiracies as are "aimed at interfering with rights . . . protected against private, as well as official, encroachment." 463 U.S. at 833. There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, *United States v. Kozminski*, 487 U.S. 931, 942, 101 L. Ed. 2d 788, 108 S. Ct. 2751 (1988), and, in the same Thirteenth Amendment context, the right of interstate travel, see *United States v. Guest*, 383 U.S. at 759, n. 17 (1966)).

> *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278, 113 S. Ct. 753, 764 (1993)

This leaves Plaintiffs to assert for their § 1985(3) claim interference with their right to intrastate travel. Whether the recognized right to interstate travel extends to intra-state travel has not been addressed by the Supreme Court. The cases cited by Plaintiffs do not support any such application specifically to a claim under § 1985(3).

At the conclusion of a lengthy discussion of whether there actually existed a constitutionally protected right to interstate travel (and noting that the Supreme Court had not weighed in on the issue), the Sixth Circuit held that the constitution

24

protects some intrastate travel, limited to the "right to travel locally through public spaces and roadways." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002). The allegation in that case was that Cincinnati's laws prohibiting drug law offenders from entering certain zones in the City was based entirely on state action. *Johnson* did not at all address whether interference with intrastate travel joined interstate travel as a right actionable in a 1985(3) conspiracy because there was no 1985 claim. Neither does *Selevan v. New York Thruway Authority*, 584 F.3d 82 (2d Cir. 2009) support this proposition, as it is a dormant commerce-clause case which did not contain any § 1985(3) claim.

However, in *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 226-28 (6th Cir. 1991) the Sixth Circuit affirmed the dismissal of a 1985(3) claim alleging conspiracy by abortion clinic blockers to impede the interstate travel of the clinic's patients because none of the patients were alleged to have traveled from outside the state in which the clinic was located.

In *Spencer v. Casavilla*, 903 F.2d 171, 175 (2d Cir. 1990), cited by Plaintiffs, the Second Circuit did hold that "a plaintiff may state a claim on which relief can be granted under § 1985(3) by alleging that private defendants have, with racial animus, violated his constitutional right to travel within a given state." *Id*. In so doing, the court analogized to Supreme Court decisions (such as *Griffin v. Breckenridge*, *supra*

at 105; and *Carpenters*, 463 U.S. at 832-35), which had recognized § 1985(3) claims arising out of the violation of the constitutional right to <u>interstate</u> travel.

However, no Sixth Circuit case has cited *Spencer* for the proposition cited. Indeed, the only Sixth Circuit case to mention *Spencer* is the aforementioned *Johnson v. City of Cincinnati*, and even then, only in passing ("Some circuit and district courts have recognized a constitutional right to freedom of intrastate travel") but *Johnson* did not involve § 1985 or private actors.

Even if a § 1985(3) conspiracy claim alleging violation of the right to intrastate travel is actionable, it would not be applicable to this scenario where Plaintiffs allege only that the acts in furtherance of the conspiracy decrease their willingness to travel from their home to the Synagogue in order to attend Sabbath services based on their preference to not have to avert their eyes to avoid the absolutely protected speech in the right-of-way as they enter the Synagogue parking lot. Nothing the Plaintiffs have allegedly done has prevented Plaintiffs from any travel and Plaintiffs can cite no cases to support this assertion. The cases cited by Plaintiffs in their FAC—*Spencer v. Casavilla, Griffin v. Breckenridge*, 403 U.S. 88 (1971), and *Bray v. Alexandria Women's Health Clinic*, *supra*, are readily distinguishable—each of them involved an actual violent or other physical impedance of a person's ability to travel.

In *Bray*, the Court also emphasized the importance of intent:

> Our discussion in *Carpenters* makes clear that it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not "for the purpose" of denying equal protection simply because it has an effect upon a protected right. The right must be "aimed at," 463 U.S. at 833 (emphasis added); its impairment must be a conscious objective of the enterprise. Just as the "invidiously discriminatory animus" requirement, discussed above, requires that the defendant have taken his action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Feeney*, 442 U.S. at 279, so also the "intent to deprive of a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it.

> *Bray v. Alexandria Women's Health Clinic, supra,* at 275-76.

The factual allegations in this case do not support the conclusion that PDs' actions either are "aimed at" keeping Plaintiffs from traveling to their Synagogue or actually keep them from so traveling.

The facts alleged – the location of the protest and the content of a small percentage of the signs displayed, does not support the legal conclusion that the PDs allegedly conspiratorial actions are motivated by racial animus against Jews. *Bray* contains an excellent discussion distinguishing the assertion that all of the persons aggrieved by the allegedly conspiratorial conduct belong to the same class from the conclusion that the conduct constitutes invidious discrimination of the sort contemplated in *Griffin, supra. Bray* held that opposing abortion is not class-based, invidious discrimination against women (as a class) in general because it did not focus on women by reason of their sex. *Bray*, 506 U.S. at 271-72, 274. Similarly, to

27

the extent that the protests are directed in any degree against Plaintiffs, it is not because of their Jewish ethnicity or religion, but by reason of their perceived support for Israel and particularly its policies regarding Palestinians. It is incidental to the protests that many, though by no means all, of the persons who run the Israeli government and support its policies towards Palestinians may be Jewish. Indeed, there are many Jews who do not support those policies. Thus, Plaintiffs' FAC fails to allege any element of a § 1985(3) claim.

7. **COUNT VIII – Conspiracy Between PDs and With the City Defendants to Violate 42 U.S.C. § 1985(3)**

On its face this one-paragraph Count does not allege any conspiracy among the Plaintiffs. It alleges only that by not enforcing the sign ordinances the City Defendants conspired with the PDs to do something unspecified in violation of § 1985(3). Presumably, though not stated, they refer to the PDs' alleged conspiracy to interfere with their right to travel set forth in the prior Count.  As explained above, § 1985(3) is not recognized in the Sixth Circuit as applying to intrastate travel and, even if it were, the facts alleged do not support such a conspiracy. As explained above, the Plaintiffs' right to intrastate travel has not been impeded.

In addition, the City Defendants' lack of enforcement of the sign ordinances is not the sort of state action requisite to assert a conspiracy to interfere with the Plaintiff's free exercise of religion (which Plaintiffs admit is not actionable under 1985(3) against only private actors).  [Para. 133, PageID.264]  Failing, or more

28

correctly stated, properly choosing not to enforce the sign ordinances, does not rise to the level of state action that could make the PDs' alleged conspiracy to interfere with the Plaintiffs' right to free exercise of religion actionable under § 1985(3).

*Carpenters* concluded "that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy." 463 U.S. at 830-31. This is a high bar. The Sixth Circuit held in *Volunteer supra*, that the assertion that defendants had "greatly interfered and hindered the local police authority's ability to secure equal access to medical treatment for women who choose abortion [,]" did not render the police state actors for purpose of 1985(3), even though the intent of the private actor defendants' was, at least in part, to overwhelm the ability of the police to protect the ability of patients to enter the clinic. The Sixth Circuit distinguished, "without passing on [those] courts' legal analysis," two lower court cases (both relied upon by Plaintiffs herein) finding sufficient state action to uphold claims under 1985(3) predicated upon the right to an abortion under the Fourteenth Amendment. In *New York State Nat'l Org. for Women v. Terry*, 704 F. Supp. 1247, 1260-61 (S.D.N.Y.), *aff'd as modified*, 886 F.2d 1339, 1364 (2d Cir. 1989), *cert. denied*, 495 U.S. 947, 109 L. Ed. 2d 532, 110 S. Ct. 2206 (1990) police had cooperated in the alleged conspiracy by expressly agreeing not to arrest the anti-abortion protesters for a certain period of time. In *Women's Health Care Services v. Operation Rescue*, 773 F. Supp. 258 (D. Kan.

1991) the police were alleged to have failed to adequately defend the legal rights of the plaintiffs and their patients.

No facts are alleged that the City's decision not to enforce its sign ordinances in this instance, was in any way attributable to any effort by the PDs. The fact that the City Defendants did not remove or prohibit the PDs' signs, because, as Plaintiffs acknowledge the City's agents publicly asserted on numerous occasions, that doing so would have violated the PDs' First Amendment rights, does not constitute state action for purpose of 1985(3).

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendants Herskovitz, Harb, Saffold, List, Mark and Jewish Witnesses for Peace respectfully request that this Honorable Court dismiss Plaintiffs' Complaint.

Respectfully submitted,


By:    _/s/Cynthia Heenan____
       Cynthia Heenan, P53664
       **Attorneys for Defendants Henry
       Herskovitz, Gloria Harb, Tom Saffold,
       Rudy List, Chris Mark, and Jewish
       Witnesses for Peace and Friends**
       220 Bagley St., Ste. 740
       Detroit, MI 48226
       (313) 961-2255/Fax: (313) 922-5130
       Heenan@ConLitPC.Com

Dated: 3/26/2020

30

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on 3/26/20, she electronically filed a copy of Protester Defendants' Motion to Dismiss, along with this Certificate of Service. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/Cynthia Heenan
Cynthia Heenan (P53664)
Attorney for Defendants

Dated: March 26, 2020