**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Marvin Gerber, Dr. Miriam Brysk,

    Plaintiffs,

vs.

                                          Civil Action No. 2:19-cv-13726
                                          Hon. Victoria Roberts

Henry Herskovitz, Gloria Harb, Tom Saffold,
Rudy List, Chris Mark, Deir Yassin Remembered, Inc.,
Jewish Witnesses for Peace and Friends, the City of Ann Arbor,
Ann Arbor Mayor Christopher Taylor, in his official
and individual capacities, Ann Arbor Community Services
Administrator Derek Delacourt, in his official and individual
capacities, Ann Arbor City Attorney Stephen Postema, in his
official and individual capacities, and Senior Assistant
City Attorney Kristen Larcom, in her official and
individual capacities,

    Defendants, Jointly and Severally.

_____/

## DECLARATION OF ███████████████████, M.D.

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. I am a Board Certified Psychiatrist and retired Professor of Psychiatry at the University of Michigan Medical School.

2. I have been a dues paying member of Beth Israel Synagogue for many years, and have had to see the signs that the protesters use in front of the Synagogue and across the street on Washtenaw Ave.

3. I am 81 years of age and have high blood pressure, taking medication to help control it. Seeing the outrageous signs of the protesters elicits a surge of anger and raises my blood pressure – which I can identify because of the immediate headache that occurs.

4. Because of the effect that seeing the signs has on my physical health, I have had to limit attending the service at the Synagogue on Saturday mornings to avoid seeing them. I time my

arrival so that it is after 11:00 A.M, when I know that the protesters will be gone or will be finishing packing away their signs. Because of my late arrival, I miss key parts of the Sabbath service. This is a serious limitation on my freedom of religion.

5. On a few occasions, I have arrived too early and the protesters are still there. I enter the Synagogue emotionally and physically stressed and need some time to calm down before I can concentrate on the service, regretting that I came a few minutes too early, which obliged me to see them and their provocative, fact-distorted, enraging signs.

6. At the least, I would like the protesters to be required on Saturday to take their signs away from the sidewalks surrounding the Synagogue and move them further down the street, and to remove them from across Washtenaw Ave. where I currently have to see them as I approach the Synagogue after parking in the street. That would allow me to come to the Synagogue for the key earlier parts of the Saturday service without having to risk seeing them and their signs and risking a dangerous elevation of my blood pressure.

7. If the goal of the protesters is to educate the general public with respect to their views regarding Israel and the Palestinians, then it does not matter where on Washtenaw they are protesting. They can do so away from the Synagogue and still convey their views. Their location needs to be far enough from the Synagogue so that I cannot see their signs. This way, their right to express their views will no longer impede my ability to practice my religion.

8. This current situation at Beth Israel is not comparable to a situation where - if you know there are protesters with messages you do not want to see - you can just avoid the block where they congregate by walking or driving using another route. In this case, I have no option of entering the Synagogue without seeing their insulting signs. This is not right.

9. I know the 1st Amendment protects our precious rights to both freedom of speech and freedom of religion. Although I am not a lawyer, it seems to me that the Amendment does not

prioritize one of these rights over the other one; they are co-equal rights and both deserve to be respected. Considering exclusively the free speech rights of the protesters without considering how their expression of free speech limits my right - and that of my fellow congregants - to attend the entirety of my religion's services, would place a higher priority on free speech than on freedom of religion.

10. In my view, when these two rights clash, such as here, a compromise can and should be reached so that each right can be protected and practiced without seriously infringing on the other right.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of May, 2020.



/M.D./

3