UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN GERBER, et al.,

      Plaintiffs,                         Case No. 19-13726
                                        HON. VICTORIA A. ROBERTS

v.

HENRY HERSKOVITZ, et al.,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
## [ECF No. 32] and [ECF No. 45]

### I.    INTRODUCTION

Marvin Gerber and Dr. Miriam Brysk ("Plaintiffs") allege a group of protestors infringes on their federal and state rights by regularly protesting in front of a Jewish synagogue where Plaintiffs attend religious services. Plaintiffs also allege the City of Ann Arbor ("City") and several of its employees contribute to this infringement by failing to enforce the Ann Arbor City Code ("Code").

There are two groups of Defendants: (1) the protestors; and (2) the City and several of its employees (collectively "Defendants"). Each group of Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and for failing to state a claim.

1

Plaintiffs seek monetary damages and ask the Court to enjoin these Defendants from engaging in peaceful political speech in public areas. The Constitution simply does not tolerate such restraint.

Plaintiffs lack Article III standing. For that reason, the Court **GRANTS** the pending Motions to Dismiss for lack of subject matter jurisdiction.

## II. FACTUAL BACKGROUND

The facts are taken from the First Amended Complaint.

Martin Gerber is a member of the Beth Israel Synagogue ("Synagogue"). Dr. Miriam Brysk is a Holocaust survivor and a member of the Pardes Hannah Congregation, located in an annex next door to the Synagogue.

Every Saturday since September 2003, Defendant Henry Herskovitz leads a group of protestors. They typically place 18-20 signs, posters, and placards on the grass section adjacent to the sidewalk in front of the Synagogue, as well as on the grass section across the street, facing the Synagogue. They also lean them against trees and portable chairs that the protestors bring with them. The protestors also carry signs in their hands or attach them to twine hanging from their necks. The signs display statements such as "Resist Jewish Power," "Jewish Power Corrupts," "Fake News: Israel

Is A Democracy," "Stop Funding Israel," and "End the Palestinian Holocaust." Plaintiffs say these signs are anti-Israeli, anti-Zionist, and antisemitic.

They show up every Saturday morning – the Jewish Sabbath – at approximately 9:30 AM, position their signs, and stay until approximately 11:00 or 11:30 AM. This time period coincides with the time Synagogue members arrive to conduct and participate in Sabbath service. The signs are readily visible to Synagogue members and their children.

Plaintiffs describe the signs as offensive; causing anger and extreme emotional distress significantly diminishing their enjoyment of attending Sabbath services; and, adversely affecting their willingness to attend Sabbath at this location.

Plaintiffs say this conduct violates the Code because it requires the protestors to have a permit to place the signs on the grass sections. They do not have one. Further, Plaintiffs say the protestors would not even qualify for a permit. The City Defendants disagree. They believe the Code does not prohibit the protestors' activities, nor does it require them to obtain a permit.

### III.   STANDARD OF REVIEW

Defendants bring their motions pursuant to Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6).

Fed. R. Civ. P. 12(b)(1) provides for dismissal if there is a "lack of jurisdiction over the subject matter." Where subject matter is challenged under Rule 12(b)(1), the plaintiff has the burden to prove jurisdiction to survive the motion. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Without standing, the Court lacks subject-matter jurisdiction and "cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), the statement of the claim must be plausible. Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen,* 500

F.3d 523, 527 (6th Cir. 2007); *Twombly,* 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action").

The Court is obligated to construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 502 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)).

## IV. ANALYSIS

### A. Plaintiffs Lack Article III Standing

To show Article III standing, a plaintiff must demonstrate: (1) injury in fact; (2) a causal connection between the alleged injury in fact and the defendant's alleged conduct; and (3) a substantial likelihood that the requested relief will redress the alleged injury in fact. *Lujan,* 504 U.S. at 560;

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000).

At the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 861 (6th Cir. 2020). The Supreme Court advises that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561.

The first element – injury in fact – includes two sub-elements: (1) concreteness; and (2) particularization. *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan,* 504 U.S. at 560)).

Plaintiffs allege that because of Defendants' conduct and speech, they suffer "extreme emotional distress," and that the conduct interferes with their right to practice their religion without being "harassed" under the Free Exercise Clause of the First Amendment. [ECF No. 11, PageID.219-220. ¶20-21)]. They say the protestors' conduct is not protected by the First

6

Amendment, that placement of signs and placards on the grass sections violates the Code, and the City's failure to enforce its Code against the protestors contributes to Plaintiffs' injury.

Even taking all of these allegations as true, Defendants say Plaintiffs fail to demonstrate an injury in fact. They say Plaintiffs' allegation that they were injured by having to walk past the protestors' signs as they entered Synagogue property does not rise to the level of an "actual concrete particularized injury."

Plaintiffs certainly assert a particularized injury. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548. However, the Supreme Court repeatedly makes clear that "an injury in fact must be both concrete *and* particularized." *Id.* A "concrete" injury must be "'*de facto*'; that is, it must actually exist." *Id.*

Plaintiffs fail to assert a concrete injury. They rely primarily on *Ricketson v. Experian Info. Solutions, Inc.,* 266 F.Supp.3d 1083 (W.D. Mich. Jul. 18, 2017). Ricketson sent a letter to three consumer-reporting agencies disputing a negative tradeline. *Id.* at 1086. Two of the three agencies removed the tradeline after conducting reinvestigations. *Id.* The third agency classified Ricketson's letter as "suspicious" and did not conduct a reinvestigation. *Id.* at 1087. Ultimately, Ricketson filed suit against the third

7

agency and alleged he suffered "mental stress, lost sleep, and emotional distress" as a result of the agency's alleged violation of the Fair Credit Reporting Act ("FCRA"). *Id.*

In cross-motions for summary judgment, the parties disputed whether Ricketson suffered an injury in fact. *Id.* The court held that Ricketson's claim "relates directly to the harms the FCRA was meant to address – the risk of inaccurate information in a consumer's file and the inability of consumers to correct that information and receive assurance from a [consumer-reporting agency] after reinvestigation." *Id.* at 1089. The court also found Ricketson had standing because he suffered a type of "informational injury" that courts have found sufficient to confer standing. *Id.* at 1091.

Plaintiffs' reliance on *Ricketson* is misplaced. They fail to provide any sources to support the notion that an intangible injury such as "extreme emotional distress" confers standing in the First Amendment context.

Although the Supreme Court held that intangible injuries can be concrete, *Spokeo,* 136 S.Ct. at 1549, it instructs that when determining whether an intangible harm constitutes injury in fact, "both history and the judgment of Congress play important roles," and "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English

8

or American courts." *Id.* Congress can identify intangible harms that meet the minimum Article III requirements for standing; however, even when Congress elevates intangible harms, that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement," because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* The type of "informational injury" sufficient for standing in *Ricketson* is not sufficient for purposes of the First Amendment.

The Supreme Court is emphatic about the path to standing when it comes to First Amendment litigants: "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Morrison v. Board of Educ. of Boyd County,* 521 F.3d 602, 608 (6th Cir. 2008) (quoting *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972)). "'A subjective chill, without more, does not confer standing on a party.'" *Muslin Community Ass'n of Ann Arbor v. Ashcroft,* 459 F.Supp.2d 592, 597-98 (E.D. Mich. Sept. 29, 2006) (quoting *Fort Wayne Books, Inc., v. Indiana,* 489 U.S. 46, 60 (1989)).

There is no allegation that the protestors prevent Plaintiffs from attending Sabbath services, that they block Plaintiffs' path onto the property or to the Synagogue, or that the protests and signs outside affect the services inside. Plaintiffs merely allege that the Defendants' conduct causes them

9

distress and "interferes" with their enjoyment of attending religious services. This is the "subjective chill" that is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972). This type of "chill" does not confer standing and is not actionable.

Plaintiffs fail to allege a concrete injury, and thus fail to allege an injury in fact. This is fatal to their lawsuit since they cannot satisfy an essential element of Article III standing.

The Court need not address whether Plaintiffs satisfy the last two elements of standing, nor must the Court address Defendants' arguments that Plaintiffs' fail to state a claim.

### B. CONCLUSION

Indeed, the First Amendment more than protects the expressions by Defendants of what Plaintiffs describe as "anti-Israeli, anti-Zionist, an antisemitic." Peaceful protest speech such as this – on sidewalks and streets – is entitled to the highest level of constitutional protection, even if it disturbs, is offensive, and causes emotional distress. *McCullen v. Coakley,* 573 U.S. 464, 476 (2014). The Defendants do nothing that falls outside of the protections of the First Amendment, since "a function of free speech under our system of government is to invite dispute," *Terminiello v. City of Chicago,*

337 U.S. 1, 4 (1949). In public debate we must tolerate "insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Boos v. Barry,* 485 U.S. 312, 322 (1988) (internal quotation marks and citations omitted).

Plaintiffs do not sufficiently allege Article III standing. The Court lacks subject matter jurisdiction and must dismiss this case.

Defendants' Motions to Dismiss are **GRANTED.**

**IT IS ORDERED.**

Date: August 19, 2020

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Court Judge