IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Marvin Gerber, Dr. Miriam Brysk,

      Plaintiffs,

vs.                                      Civil Action No. 2:19-cv-13726
                                       Hon. Victoria A. Roberts

Henry Herskovitz, *et al.*,

      Defendants, Jointly and Severally.

_____/

Marc M. Susselman (P29481)
Attorney at Law
43834 Brandywyne Rd.
Canton, Michigan 48187
(734) 416-5186
marcsusselman@gmail.com
Attorney for Plaintiffs

Ziporah Reich (3979639)
The Lawfare Project
633 Third Ave., 21st Floor
New York, N.Y. 10017
(212) 339-6995
Ziporah@thelawfareproject.org
Co-Counsel for Plaintiffs

Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the City of Ann Arbor,
Christopher Taylor, Derek Delacourt,
Stephen Postema, and Kristen Larcom
301 E. Huron St., P.O. Box 8647
Ann Arbor, Michigan 48107-8647
(7340 794-6170
twilhelm@a2gov.org

Cynthia Heenan (P53664)
Hugh M. Davis (P12555)
Constitutional Litigation Associates, PC
Attorneys for Defendants Henry Herskovitz,
Gloria Harb, Tom Saffold, Rudy List and
Chris Mark
220 Bagley St., Ste. 740
Detroit, MI 48226
(313) 961-2255/Fax: (313) 922-5130
Heenan@CoLitPC.Com
Davis@ConLitPC.Com

John A. Shea (P37634)
Attorney for Defendants
Herskovitz, Harb, Saffold, List and
Mark
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

_____/

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING PLANITFFS' LAWSUIT

Plaintiffs, by and through their attorneys, are filing this motion for reconsideration pursuant to LR 7.1(h), requesting that the Court reconsider its Order (Dkt. # 66) granting the Defendants' motions to dismiss based on Fed. R. Civ. P. 12(b)(1) and dismissing Plaintiffs' lawsuit for lack of standing.  In support of the motion, Plaintiffs state as follows:

1.     LR 7.1(h) states, in relevant part:

> Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issue ruled upon by the Court, either expressly or by reasonable implication.  The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

2.     The Court's decision contains several palpable defects, including errors of fact and law, in the following respects:

a.     The Court mischaracterized the equitable relief which Plaintiffs are seeking. At *2, the Court states:  "Plaintiffs ... ask the Court to enjoin these Defendants from engaging in peaceful political speech in public areas.  The Constitution simply does not tolerate such restraint."  By using the plural, "public areas," the statement suggests that Plaintiffs were seeking to bar the Defendants from engaging in their anti-Israeli and anti-Semitic speech in every possible public area. This is not true, as Plaintiffs made abundantly clear in every prayer for relief which followed every count of the First Amended Complaint ("FAC") and which Plaintiffs repeated in their briefs.  Plaintiffs were only seeking reasonable time, place and manner restrictions on the Defendants use of their anti-Israeli and anti-Semitic speech in proximity to their house of worship.

b.     The Court's analysis of standing relating to the Plaintiffs' extreme emotional distress, which was expressly asserted in the FAC and therefore, for purposes of a 12(b)(1) motion, was required to be assumed as true, disregarded Supreme Court decisions which have held that under 42 U.S.C. §1983 – which Plaintiff alleged as the basis for several of their counts -  the

scope of injuries which qualify for standing include any injury which would qualify as an injury under tort common law. Emotional distress constitutes an injury conferring standing under tort law in virtually every state jurisdiction of the United States, including Michigan.

c.      The Court ignored the holding in *Wells v. Rhodes,* 928 F. Supp. 2d 920 (S.D. Ohio 2013), which Plaintiffs cited several times in their briefs, in which the Court held that, where the defendant had burned a cross on the laws of an African-American family, and where none of the plaintiffs had suffered any physical injury, and their property had not been damaged, that their emotional distress at seeing the burning cross, in and of itself, was sufficient to give them standing to sue under 42 U.S.C, §1982, a statute which Plaintiffs also cited in support of their lawsuit.

d.      The Court's decision also ignored an entire class of cases in which courts have held that a plaintiff's emotional distress alone, in the face of insulting and degrading speech, both in private places and in public places, without any physical contact whatsoever, gives the plaintiff standing to sue.  That class of cases is the sexual harassment cases, in which courts have held that the defendant's speech alone, in the form of sexual jokes, sexual banter, and sexual innuendo, has created a hostile environment, causing the plaintiff emotional distress, which was sufficient to allow the plaintiff to sue in federal court. Here, Plaintiffs alleged in the FAC and argued in their briefs that the Defendants, by their virulently anti-Semitic speech, created a hostile environment for the Plaintiffs as they walked to their house of worship to pray, violating their rights under 42 U.S.C. §1982.  Yet nowhere in its decision did the Court address this argument.

e.      In numerous federal decisions the courts have held a plaintiff has standing based on an allegation that the defendant violated the Constitution or a federal statute. In the FAC and Plaintiffs' briefs, they alleged that the protesters have violated 42 U.S.C. §§ 1981, 1982 and 1985(3), and cited numerous decisions to support all three claims. In addition, Plaintiffs alleged that the City had violated the Religious Freedom Restoration Act, 42 U.S.C. §20000bb, *et seq.*,

and the Religious Land Use and Institutionalized Any Persons Act of 2000, 42 U.S.C. §2000cc, *et seq*. Any one of these claims of constitutional/statutory violations should have sufficed to confer the Plaintiffs with standing. Again, the Court discussed none of them.

f.       The cases which the Court cited to support its decision relating to 1st Amendment "chilling" were inapposite. The "chilling" cases involved plaintiffs who were claiming that a particular government action or policy threatened the plaintiff with an adverse reaction to the plaintiff's prospective speech, thereby inhibiting the plaintiff from engaging in the speech, i.e., "chilling" the plaintiff's exercise of speech. Here, the Plaintiffs were not claiming that either the protesters' or the City's conduct was "chilling" their exercise of their own free speech. Moreover, in the "chilling" cases, none of the plaintiffs who were denied standing had claimed that the alleged "chilling" of their free speech had caused them emotional distress.

g.       In addition to failing to address the numerous arguments, and the cases supporting them, which Plaintiffs pled in the FAC and argued in their briefs regarding Plaintiffs' right to standing, while the Court claimed it was restricting itself to addressing only the Defendants' motions based on 12(b)(1), the Court in fact proceeded to issue a 12(b)(6) ruling without analyzing the merits of any of Plaintiffs' claims, without even discussing the claims themselves, or the cases cited supporting them.

3.       Correction of these errors will result in a different disposition of the case and a reversal of the Court's dismissal of Plaintiffs' lawsuit. Plaintiffs accordingly request that the Court reverse its decision granting the Defendants' 12(b)(1) motions to dismiss based on standing and reinstate Plaintiffs' lawsuit. This motion is supported by the accompanying brief.

Respectfully submitted,

By:    /s Ziporah Reich_____          /s Marc M. Susselman_____
       Co-counsel for Plaintiffs          Attorney for Plaintiffs

Dated:  August 26, 2020

**<u>BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING PLANITFFS' LAWSUIT</u>**

**<u>TABLE OF CONTENTS</u>**

**QUESTIONS PRESENTED** ................................................................... ii

**CONTROLLING AUTHORITY** .......................................................... iv

**INDEX OF AUTHORITIES** ................................................................ v

**STATEMENT OF FACTS** ................................................................... 1

**ARGUMENT** ................................................................... 1

**I.** **THE COURT SKEWED THE FACTS PLED IN THE FIRST AMENDED COMPLAINT AGAINST PLAINTIFFS.** ................................................ 1

**II.** **THE COURT'S CLAIM THAT PLAINTIFFS' EMOTIONAL DISTRESS CAUSED BY THE INSULTING SIGNS IN FRONT OF THE SYNAGOGUE IS NOT SUFFICIENT TO CONFER STANDING IS CONTRARY TO PRECEDENT.** ............................................................ 3

**III.** **THE COURT'S REASONING DOES NOT APPLY TO FOUR OF THE COUNTS.** ................................................................... 18

**IV.** **THE CASES DEALING WITH "CHILLING" ARE NOT RELEVANT.** 19

**V.** **THE COURT IMPROPERLY RULED ON THE MERITS.** ................... 21

**CONCLUSION AND RELIEF** .......................................................... 22

## QUESTIONS PRESENTED

I.    Whether the Court violated the standard of review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1) by skewing the facts regarding the equitable relief Plaintiffs were seeking against the Plaintiffs.

    **Plaintiffs answer "Yes."**

II.   Whether the Court's ruling that Plaintiffs' extreme emotional distress caused by the signs used by the protesters in front of their synagogue does not suffice to confer standing to sue is contrary to federal case precedent.

    **Plaintiffs answer "Yes."**

III.  Whether the Court failed to recognize that its ruling that emotional distress alone cannot suffice to confer standing in the context of a case involving the defendants' 1st Amendment rights is contrary to federal case law relating to sexual harassment hostile environment cases and defamation cases.

    **Plaintiffs answer "Yes."**

IV.   Whether the Court's ruling that Plaintiffs do not have standing even where Plaintiffs alleged that Defendants violated two Amendments of the Constitution and seven federal statutes is contrary to federal precedent, including a decision issued by this Court.

    **Plaintiffs answer "Yes."**

V.    Whether the rationale for Court's ruling that the Plaintiffs do not have standing does not apply to four of the legal claims which Plaintiffs pled against the City of Ann Arbor and therefore those counts, at least, should be reinstated.

    **Plaintiffs answer "Yes."**

VI.   Whether the cases relating to "chilling" which the Court cited in support of its decision are not relevant to the standing issue in this lawsuit.

    **Plaintiffs answer "Yes."**

VII.  Whether the Court, despite its assertion that it was limiting its analysis to the question of standing under Fed. R. Civ. P. 12(b)(1), and not addressing the Defendants' motions to dismiss pursuant to Fed. R. Civ. P:. 12 (b)(6), in fact went beyond permissible review under Rule 12(b)(1) and improperly addressed the merits of Plaintiffs' legal claims without analyzing any of the arguments Plaintiffs made in support of those claims, and improperly granted the Defendants motions to dismiss pursuant Rule 12(b)(6), and thereby abused its discretion.

    **Plaintiffs answer "Yes."**

**VIII.    Whether the Court's errors require that it reverse its decision dismissing Plaintiffs' lawsuit on the basis of standing and reinstate the lawsuit in its entirety.**

       **Plaintiffs answer "Yes."**

## CONTROLLING AUTHORITY

*Beauharnais v. Illinois,* 343 U.S. 250 (1954)

*Bloch v. Ribar,* 56 F.3d 673 (6th Cir. 1998)

*Carey v. Piphus,* 435 U.S. 247 (1978)

*Coalition for the Environment v. Volpe,* 504 F.2d 156 (8th Cir. 1974)

*Coulter-Owens v. Rodale, Inc.,* Case No. 14-12688 (E.D. Mich. 2015)

*Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998)

*Frisby v. Schultz,* 487 U.S. 474 (1988)

*Griffin v. Breckenridge,* 403 U.S. 88 (1971)

*Johnson v. City of Cincinnati,* 310 F.3d 484 (6th Cir. 2002)

*Madsen v. Women's Health Center, Inc.,* 512 U.S. 753 (1994)

*Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir. 1974)

*Selevan v. New York Thruway Authority,* 584 F.3d 82 (2d Cir. 2009)

*Shaare Tefila Congregation v. Cobb,* 481 U.S. 615 (1987)

*Smith v. Wade,* 461 U.S. 30 (1983)

*Sullivan v. Little Hunting Park,* 396 U.S. 229 (1969)

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533 (1983)

*U.S. v. Brown,* 49 F.3d 1162 (6th Cir. 1995)

*Wells v. Rhodes,* 928 F. Supp.2d 920 (S.D. Ohio 2013)

*Wheeler v. Commissioner of Highways,* 822 F.2d 586 (6th Cir. 1987)

## INDEX OF AUTHORITIES

**CASES**                                                                     Pages

   **Federal**

*ACLU v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986)......................................   16

*Albeita v. Transamerica Mailings, Inc.*, 159 F.3d 246 (6th Cir. 1998)......................   13,14

*Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897 (W.D. Mich. 1983) ..............   15

*Aspero v. Shearson American Exp., Inc.*, 768 F.2s 106 (6th Cir. 1985)....................   15

*Barbour v. Merrill*, 48 F.3d 1270 (D.C. Cir. 1995)....................................................   10

*Beauharnais v. Illinois*, 343 U.S. 250 (1954) ............................................................   21,22

*Bloch v. Ribar*, 56 F.3d 673 (6th Cir. 1998) ..............................................................   5

*Camaj v. Makower Abbate Guerra Wegner Vollmer PLLC,*
   Case No. 19-cv-10179 (E.D. Mich., Nov. 14, 2019) .................................   18

*Carey v. Piphus*, 435 U.S. 247 (1978)........................................................................   6,8

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) ..........................................   17

*Carrier Corp. v. Outokumpu Oyaj*, 673 F.3d 430 (6th Cir. 2013) ............................   2

*Cerros v,. Steel Technologies, Inc.*, 288 F.3d 1040 (7th Cir. 2020).........................   14

*Chicago Observer, Inc. v. City of Chicago*, 929 F.d2d 325 (7th Cir. 1991)..............   19

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)....................   4,21

*Clark v. International Union, United Mine Workers of America,*
   722 F. Supp. 250 (W.D. Va. 1989) .................................................................   3

*Coalition for the Environment v. Volpe*, 504 F.2d 156 (8th Cir. 1974)....................   15

*Corley v. Louisiana*, Civil Action No. 06-882-SCR (M.D. Louisiana 2011)...........   6

*Coulter-Owens v. Rodale, Inc.*, Case No. 14-12688 (E.D. Mich. 2015) ..................   18

*Davenport v. Rodriguez*, 147 F. Supp.2d 630 (S.D. Tex. 2001)..............................   15

*DeMeo v. Goodall*, 640 F. Supp. 1115 (D.N.H. 1986) ...........................................   15

*Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000) ............ 16

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ........................ 13

*Equal Employment Opportunity Commission v. Ford Motor Credit, Co.*,
531 F. Supp. 2d 930 (M.D. Tenn. 2008) ................................................ 6

*Fair House. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ............................... 10

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988) ........................................ 17

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) ................................. 19

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989) ..................................... 20

*Frisby v. Schultz*, 487 U.S. 474 (1988) ................................................ 10,12,21

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ........................................... 3

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .............................................. 16

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ...................................... 13

*Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640 (1981) .................. 3

*Hutto v. Davis*, 454 U.S. 370 (1982) ..................................................... 22

*Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005) ............................. 19

*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002).............................. 16

*Kim v. Nash Finch Co.*, 123 F.3d 1046 (8th Cir. 1997) ................................... 10

*Laird v. Tatum*, 408 U.S. 1 (1972) ....................................................... 20

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994)............................... 3

*Match-E-Be-Nash-She-Wish Band Indians v. Patchak*, 567 U.S. 209 (2012).......... 17

*Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) ............................. 5

*McQuirk v. Donnelley*, 189 F.3d 793 (9th Cir. 1999) ..................................... 15

*Memphis Community Schools v. Stachura*, 477 U.S. 299 (1986) ........................... 7

*Michael v. Shiley, Inc.*, 46 F.3d 1316 (3d Cir. 1995) ..................................... 5

*Moore v. Kuka Welding Systems & Robot Corp,*, 171 F.3d 1073 (6th cir. 1999)...... 14

*Morrison v. Board*, 521 F.3d 602 (6th Cir. 2008)..................................................... 19

*Muslim Community Ass'n of Ann Arbor v. Ashcroft*,
   459 F. Supp.2d 592 (E.D. Mich. 2006).......................................... 20

*New York Times, Inc. v. Sullivan*, 376 U.S. 254 (1964) ........................................... 14

*Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325 (4th Cir. 2003)..................... 13,14

*Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974)..................... 11

*Pleasant Grove City v,. Summum*, 555 U.S. 460 (2009) ........................................ 4

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992)................................................................ 18

*Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906 (8th Cir. 2003).................... 14

*Reynaga v. Roseburg Forrest Prods.*, 847 F.3d 678 (9th Cir. 2017) ....................... 14

*Ricketson v. Experian Info. Solutions.*, 266 F. Supp.3d 1083 (W.D. Mich. 2017) ... 3

*RK Ventures, Inc, v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002)....................... 15

*Rodgers v. Western Southern Life Ins. Co.*,12 F.3d 668 (7th Cir. 1993).................. 14

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997)........................................ 14

*Selevan v. New York Thruway Authority*, 584 F.3d 82 (2d Cir. 2009)..................... 16

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) ................................... 11

*Smith v. Frye*, 488 F.3d 263 (4th Cir. 2007)........................................................ 9

*Smith v. Wade*, 461 U.S. 30 (1983) ..................................................................... 8,9,10

*Spencer v. Casavilla*, 903 F.2d 171 (2d Cir. 1990)............................................... 16

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)................................................... 3,4

*Tellez v. Pacific Gas and Elec. Co., Inc.*, 817 F.2d 536 (9th Cir. 1987) ................ 15

*Terminello v. City of Chicago,*,337 U.S.1 (1949) ................................................. 22

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983).............. 22

*Traxel v. Granville*, 530 U.S. 57 (2000) ............................................................... 17

*United States v. Grace*, 461 U.S. 171 (1983)....................................................... 2

*United States v. SCRAP,* 412 U.S. 669 (1973)..................................................... 15

*U.S. v. Brown,* 49 F.3d 1162 (6th Cir. 1995) ....................................................... 11

*U.S. v. Greer,* 939 F.2d 1076 (5th Cir. 1991), *aff'd en banc,* 968 F.2d 433 (5th Cir. 1992),
   *cert. denied,* __ U.S. __ , 113 S.Ct. 1390 (1993)............................................. 11

*Valentin v. Murphy,* 95 F. Supp. 2d 99, 103 (D. Conn. 2000) .................................. 5

*Virginia v. Black,* 538 U.S. 343 (2003) ............................................................... 11

*Vittitow v. City of Upper Arlington,* 43 F.3d 1100 (6th Cir. 1995) ........................... 19

*Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) ........................................ 3

*Warth v. Seldin,* 422 U.S. 490 (1975)................................................................. 16

*Wells v. Rhodes,* 928 F. Supp. 2d 920 (S.D. Ohio 2013)...................................... 10,12

*Wheeler v. Commissioner of Highways,* 822 F.2d 586 (6th Cir. 1987)..................... 19

*Wisconsin v. Yoder,* 406 U.S. 205 (1972)............................................................ 21

### State

#### Michigan

*Haverbush v. Powelson,,* 217 Mich. App. 228 (Mich. Ct. App. 1996)...................... 9

*Wargelin v. Mercy Health Corp.,* 140 Mich. Ap. 75 (Mich. Ct. App. 1986) ........... 9

#### Other

*Berman v. Allan,* 80 N.J. 421 (N.J. 1979 ........................................................... 9

*Buckley v. Trenton,* 111 N.J. 355 (N.J. 1988)....................................................... 9

*Christensen v. Superior Court,* 54 Cal.3d 868 (Cal.1991) ...................................... 9

*Ferrara v. Galluchio,* 5 N.Y.2d 16 (N.Y. 1958) ................................................... 9

*Cutler v. Dorn,* 196 N.J. 2008).......................................................................... 14

*Hughes v. Pair,* 46 Cal. 4th (Cal. 2009) .............................................................. 9

*Nader v. General Motors Corp.,* 25 N.Y.2d 560 (N.Y. 1970)................................. 9

## UNITED STATES CONSTITUTION

U.S. Const. amend. I ....................................................................... *passim*

U.S. Const. amend. XIV ....................................................................... *passim*

## STATUTES

### Federal

42 U.S.C. §1981 ....................................................................... *passim*

42 U.S.C. §1982 ....................................................................... *passim*

42 U.S.C. §1983 ....................................................................... *passim*

42 U.S.C. §1985(3) ....................................................................... *passim*

42 U.S.C. §1986 ....................................................................... *passim*

Indian Gaming Regulatory Act, 25 U.S.C. §§2701-2721 ...................................... 17

Religious Freedom Restoration Act (RFRA), 42 U.S.C. §2000bb. *et seq* ............. 17,19

Religious Land Use And Institutionalized Person Act of 2000 (RLUIPA) ..............
    42 U.S.C.2000cc, *et seq.* ....................................................................... 17,19

### Michigan

M.C.L. §750.411h ....................................................................... 17

### Other

Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq* ............................................. 17

## COURT RULES

Fed. P. Civil P. 12(b)(1) ....................................................................... *passim*

Fed. R. Civil P. 12(b)(6) ....................................................................... 21,

## STATEMENT OF FACTS

Plaintiffs incorporate herein the Statement of Facts set forth in Plaintiffs' Response Opposing The City Defendants' Motion To Dismiss. (Dkt. #50)

## ARGUMENT

## I. THE COURT SKEWED THE FACTS PLED IN THE FIRST AMENDED COMPLAINT AGAINST PLAINTIFFS.

The Court skewed the facts against Plaintiffs by misrepresenting the relief they were seeking, stating on page *2 that, "Plaintiffs seek monetary damages and ask the Court to enjoin Defendants from engaging in peaceful political speech **in public areas**." (Emphasis added.) This is not an accurate statement of the equitable relief Plaintiffs were requesting. In the Introduction of the First Amended Complaint ("FAC"), Plaintiffs stated: "This lawsuit seeks injunctive relief which either precludes the protesters from continuing their harassing conduct altogether, **or which places reasonable distance, temporal, and numerical limitations on their conduct**." (Emphasis added.) In the Wherefore clause at the end of every count, Plaintiffs stated:

> **WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and enter a preliminary injunction against the Protester Defendants precluding them from engaging in the picketing conduct altogether, **or, alternatively, precluding them from engaging in any aspect of their protest within 1,000 feet of the Synagogue's property line, precluding them from engaging in such conduct between the hours of 9:00 A.M. and 12:00 P.M. on any Saturday, and on any Jewish holiday while services are being conducted in the Synagogue, limiting the number of protesters to not exceed five protesters at any given time; and precluding them from placing any signs or placards on the grass section adjacent to the sidewalk in front of the Synagogue, or on the grass section across from the Synagogue on Washtenaw Ave; that the Court convert the preliminary injunction into a permanent injunction at the conclusion of the lawsuit**[.] (Emphasis added.)

Thus Plaintiffs were requesting, as an alternative to a blanket prohibition of the protesters' speech, that the Court enter an injunction placing reasonable time, place and manner restrictions on their speech at a particular location, in proximity to the Synagogue, in accordance with standard restrictions deemed acceptable in numerous federal decisions, not to prohibit their speech in

1

"public places," i.e., in every public place in Ann Arbor, Michigan and the United States. Plaintiffs made this explicitly clear in the Preliminary Statement of their Response Opposing the Protester Defendants' Motion To Dismiss (Dkt. #54 ), stating. at p. 1:

> The Protesters and the *Amicus* claim the Plaintiffs are seeking to "shut down" their right of free speech and prohibit them from conveying their anti-Israel, anti-Zionist message. **This is false. Plaintiffs maintain the Protesters have a protected right under the 1ˢᵗ Amendment to engage in their 1ˢᵗ Amendment activity. Plaintiffs are not seeking to "shut down" their protest. Plaintiffs maintain the Protesters are not entitled to engage in their protest wherever and whenever they want. There are some contexts in which they are not permitted to engage in their protest, and in front of a Jewish house of worship is one of them.** (Emphasis added.)

By mischaracterizing the scope of the injunctive relief Plaintiffs were seeking, the Court made Plaintiffs' position appear highly outrageous and therefore not deserving of standing. And by distorting the relief which Plaintiffs were seeking, the Court failed to comply with the standard of review which applies in a 12(b)(1) motion, in which the reviewing court is required to accept the material allegations of the complaint as true and make all reasonable inferences in favor of the nonmoving party. *Carrier Corp. v. Outokumpu Oyaj,* 673 F.3d 430, 440 (6ᵗʰ Cir. 2013). The scope of the injunctive relief which Plaintiffs were requesting was clearly a material allegation, which the Court improperly mischaracterized. Here, Plaintiffs' request for reasonable time, place and manner restrictions on the protesters' verbal harassment was far from unusual. Federal courts have frequently held that the freedom of speech is not unbounded and may be subject to reasonable time, place and manner restrictions. The Supreme Court, for example, has "regularly rejected the assertion that people who wish 'to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *United States v. Grace,* 461 U.S. 171, 177-78 (1983) (Citations omitted.) "Our cases make clear ... that even in a public forum the government may impose reasonable restrictions of the time, place or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech,

that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). *See also Madsen v. Women's Health Center, Inc.,* 512 U.S. 753 (1994); *Heffron v. Int'l Soc. for Krishna Consciousness,* 452 U.S. 640 (1981); *Grayned v. City of Rockford,* 408 U.S. 104 (1972); *Clark v. International Union, United Mine Workers of America,* 722 F. Supp. 250, 251 (W.D. Va. 1989).

## II. THE COURT'S CLAIM THAT PLAINTIFFS' EMOTIONAL DISTRESS CAUSED BY THE INSULTING SIGNS IN FRONT OF THE SYNAGOGUE IS NOT SUFFICIENT TO CONFER STANDING IS CONTRARY TO PRECEDENT.

At *7 of the Court's decision, the Court, citing *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), states: "[T]he Supreme Court repeatedly makes clear that "an injury in fact must be both concrete and particularized." ... A "concrete" injury must be "'*de facto*; that is, it must actually exist. ... Plaintiffs fail to assert a concrete injury."[1] The Court proceeds to hold that the Plaintiffs' allegation of extreme emotional distress does not suffice to confer standing. Is the Court saying the Plaintiffs' assertion that the protesters' signs cause them extreme emotional distress is not "*de facto,*" i.e., that it does not "actually exist," that they are lying?[2] Aside from being highly insulting and unworthy of a federal court, such an assertion violates the Court's standard of review in a 12(b)(1) motion. The Court is required to regard every material factual allegation as true. (*See* ¶s 20, 21. 73 of the FAC.) Saying that the Plaintiffs' assertion of suffering extreme emotional distress is not making a *de facto* assertion is contrary to the parameters of the standard of review.

At *8, the Court proceeds to state that Plaintiffs "fail to provide any sources to support the

---

[1] The Court's assertion at *7 that Plaintiffs relied primarily on *Ricketson v. Experian Info. Solutions.,* 266 F. Supp.3d 1083 (W.D. Mich. 2017), is not accurate. Plaintiffs cited four cases in addition to *Ricketson* in support of their assertion that they had suffered a concrete injury, including a decision by this Court which held that alleging a violation of a law sufficed in and of itself to qualify for standing. *See* p. 18, *infra.*

[2] The protesters' signs include such messages as "Jewish Power Corrupts"; "Resist Jewish Power"; "No More Holocaust Movies"; "End The Palestinian holocaust."

notion that an intangible injury such as 'extreme emotional distress' confers standing in the First Amendment context."  The notion that "extreme emotional distress" constitutes "an intangible injury" which cannot be the basis for standing in the context of the First Amendment is erroneous as a matter of law.  To begin with, the decision on which the Court relies for its conclusion that "extreme emotional distress" constitutes an "intangible injury," in fact does not support that conclusion.  In *Spokeo*, the plaintiff, Robins, claimed that Spokeo, a people search engine, had provided erroneous information about him to a patron of the Spokeo service.  He alleged that the following information which Spokeo provided was erroneous: "that he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree."  *Id.* at 1546. Nowhere did Robins allege that the provision of this false information caused him emotional distress.  He was arguing that simply providing erroneous information to an unknown customer was itself an injury.  Discussing the requirement that in order to qualify for standing, an injury must be "concrete," the Court stated, *id.* at 1548-49:

> A "concrete" injury must be "*de facto*"; that is, it must actually exist. ... When we have used the adjective "concrete," we have meant to convey the usual meaning of the term – "real," and not "abstract." ... Concreteness, therefore, is quite different from particularization. "Concrete" is not, however, necessarily synonymous with "tangible."  Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete. See, *e.g., Pleasant Grove City v,. Summum,* 555 U.S. 460 ... (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993) (**free exercise**).  (Emphasis added; some citations omitted.)

The Court was stating that all tangible injuries are automatically concrete; but being tangible is not a necessary condition for concreteness. An intangible injury, such as **interference with the free exercise of religion** can also be a concrete injury conferring standing. The Court's denial of standing was erroneous on two bases. First, "extreme emotional distress" is a tangible, not an intangible injury. The fact it cannot be seen does not mean it is not tangible. It is certainly tangible to the individual experiencing it. Second, Plaintiffs in fact did claim in the FAC that the

4

City's allowance of the protesters' use of their harassing signs in violation of the ordinance interfered with the free exercise of their religion. This alone was sufficient to confer standing.

Regarding the injury which Robins was claiming he incurred, the Court noted, *id.* at 1559: "[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." (Footnote omitted.) The Court was stating that Robins' injury was intangible – disseminating erroneous information is an intangible event. Whether the inaccurate information cause a harm sufficient to confer standing depends on the nature of the inaccuracy. The fact that Spokeo got some information about Robins wrong did not necessarily cause him any harm, and without harm, there was no injury and no standing. The Court remanded the case to the lower court to evaluate whether the erroneous information Robins was suing over had caused him any harm.

Unlike Robins' purported intangible injury, Plaintiffs' pled extreme emotional distress constitutes a tangible, concrete injury which affords them standing. The federal courts have recognized on numerous occasions that a plaintiff's allegation of emotional distress constitutes a tangible and concrete injury which is sufficient in and of itself to confer standing. The Court's position is contrary to 6th Circuit precedent. *See Bloch v. Ribar*, 56 F.3d 673, 679 (6th Cir. 1998) ("Based on the above authorities, we conclude that the Blochs' allegation of injury based on embarrassment, humiliation, and emotional distress is sufficient to be actionable under §1983."); *Mattox v. City of Forest Park,* 183 F.3d 515, 521 (6th Cir. 1999) (Citing *Bloch,* "We recognize that in some cases 'injury based on embarrassment, humiliation and emotional distress' is sufficient to be actionable under §1983.") Numerous other federal courts have expressly stated that emotional distress constitutes a tangible injury. *See. e.g., Michael v. Shiley, Inc.,* 46 F.3d 1316, 1333 (3d Cir. 1995) ("Michael has suffered a tangible injury on account of the risks, pain, and

emotional trauma associated with explantation of the Shiley valve."; *Valentin v. Murphy,* 95 F. Supp. 2d 99, 103 (D. Conn. 2000) ("The only tangible injury of which Valentin now complains is his emotional distress at having been incarcerated in segregation."); *Corley v. Louisiana,* Civil Action No. 06-882-SCR (M.D. Louisiana 2011) ("Compensatory damages for emotional distress and other tangible injuries are not presumed from the mere violation of constitutional or statutory rights." *Id.* at *5) (Copy attached as Exhibit 1); *Equal Employment Opportunity Commission v. Ford Motor Credit, Co.,* 531 F. Supp. 2d 930, 943 (M.D. Tenn. 2008) ("The fact that the plaintiff had to take a medical leave of absence shortly following the disclosure supports his allegation of emotional distress. This evidence more than satisfies the plaintiff's burden on summary judgment to demonstrate a 'tangible injury.'")

The Court's Order also fails to give due regard to the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247 (1978), in which the Court held that the plaintiff's 14th Amendment due process rights had been violated when he was suspended, without notice or a hearing, for 20 days from his high school for allegedly smoking marijuana, a charge the plaintiff denied. Another student was also suspended, on a different charge, which that student also denied. The students sued, claiming violation of their procedural due process rights. While the trial court concluded that the plaintiffs' constitutional rights had been violated, it refused to award any damages, because the plaintiffs had not offered any evidence regarding their injuries caused by the constitutional violation. On appeal, the 7th Circuit Court of Appeals reversed and remanded the case to the trial court to determine the damages the plaintiffs were entitled to solely for the violation of their constitutional rights. The Supreme Court granted *cert.* and reversed. The Court held that a plaintiff who has suffered a violation of his/her procedural due process rights, without offering evidence of any injury - emotional distress, for example - was only entitled to recover nominal damages solely for the violation of the constitutional right. The Court stated, *id.* at 263- 67:

[I]t is not reasonable to assume that every departure from procedural due process, no matter what the circumstances or how minor, inherently is as likely to cause distress as the publication of defamation *per se* is to cause injury to reputation and distress. Where the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities. Indeed, in contrast to the immediately distressing effect of defamation *per se*, a person may not even know that procedures *were* deficient until he enlists the aid of counsel to challenge a perceived substantive deprivation.

Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under §1983. this ambiguity in causation, which is absent in the case of defamation *per se*, provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.

Finally, we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. **Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.** In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under §1083, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

\* \* \*

Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, ... we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners. (Emphasis added; italics in the original, citations omitted.)

Thus the Court held that an allegation the plaintiff's constitutional right had been violated was sufficient to confer standing, regardless whether the plaintiff had suffered any injury, whether emotional distress or otherwise. However, since emotional distress constitutes a personal injury, where the plaintiff alleges the constitutional violation also caused an emotional distress injury, the emotional distress injury fortifies the entitlement to standing. In *Memphis Community Schools v. Stachura,* 477 U.S. 299 (1986), the Court made clear that the reasoning in *Carey* was

not limited to allegations of procedural due process violations only, but applied to allegations of any constitutional violation, stating, *id.* at 309: "[*Carey*]does not establish a two-tiered system of constitutional rights, with substantive rights afforded greater protection than 'mere' procedural safeguards. ... [W]e emphasized that, whatever the constitutional bases for §1983 liability, such damages must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation." (Italics in the original.)  Here, Plaintiffs have alleged that the City's failure to enforce its sign ordinance, thereby allowing the protesters to continue with their harassing picketing unabated, violated the Plaintiffs 1st Amendment right to freely exercise their religion, which, in combination with the insults of the signs themselves, has caused them extreme emotional distress. Under *Carey*, this violation of the Plaintiffs' constitutional rights, in conjunction with the emotional distress personal injury the violation engendered, sufficed to give Plaintiffs standing to sue.

That emotional distress suffices to confer standing in a §1983 lawsuit is further buttressed by the Supreme Court's decision in *Smith v. Wade,* 461 U.S. 30 (1983), in which the Court was confronted with the question whether punitive damages were available in an action alleging a violation of §1983.  The Court held that they were, stating, *id.* at 34:

> Section 1983 is derived from §1 of the Civil Rights Acts of 1871, 17 Stat. 13.  It was intended to create "a species of tort liability" in favor of persons deprived ot federally secured rights.  ... We noted in *Carey* that there was little in the section's legislative history concerning the damages recoverable for this tort liability ... .  In the absence of more specific guidance, we looked first to the common law of torts (both modern and as of 1871), with such modification or adaptation as might be necessary to carry out the purpose and policy of the statute. ...We have doe the same in other contexts arising under §1983, especially the recurring problem of common-law immunities.  (Citations and footnote omitted.)

The Court proceeded to hold that since under the common law of torts, punitive damages were available to redress tort liability, it was likewise available to redress a claim that a defendant violated §1983.  The Court's holding that the common law of torts provides the guiding principles for analyzing the various issues which may arise in litigation involving §1983 supports the

conclusion that, to the extent an allegation that tortious conduct caused a plaintiff emotional dis-

tress stated a cause of action under tort law, then it would also suffice to confer standing to sue

for an alleged violation of §1983.  In *Smith v. Frye*, 488 F.3d 263 (4th Cir. 2007), for example, the

Court applied the holding in *Smith* to support its conclusion that the plaintiff's allegation that the

defendant's conduct in terminating his mother's employment violated her 1st Amendment rights,

thereby causing him emotional distress which sufficed to give him standing to sue was invalid

under the application of the common law of torts.  The Court stated, *id.* at 273-74:

> We ... find the district court's reference to tort-law principles entirely appropriate
> in this instance. ... We agree with the district court that "[a]llowing an adult son to
> collect for emotional damages and humiliation resulting from his mother's dis-
> charge from her employment Casts the net of possible liability too broadly. ... and
> therefore, that such emotional distress is insufficient as an Article III injury in fact.
> (Citations omitted.)

The Court's reasoning makes clear that had the plaintiff been alleging he, not his mother,

had been the victim of the violation of his own constitutional rights, causing him to suffer emo-

tional distress, his own emotional distress would have sufficed to confer standing. Under *Smith*,

therefore, the scope of injuries which can be the basis for a tort claim under state law defines the

scope of injuries which can suffice to confer standing in a lawsuit alleging a §1983 violation. Vir-

tually every state jurisdiction recognizes the torts of intentional infliction of emotional distress, as

well as the negligent infliction of emotional distress.[3] Under *Smith*, these cases support the propo-

sition, contrary to this Court's ruling, that an allegation a defendant's violation of 42 U.S.C.

---

[3] This is clearly true in Michigan.  *See Haverbush v. Powelson,*, 217 Mich. App. 228 (Mich. Ct. App. 1996) (intentional infliction of emotional distress); *Wargelin v. Mercy Health Corp.,* 140 Mich. Ap. 75 (Mich. Ct. App. 1986) (negligent infliction of emotional distress).  It is likewise true in most other jurisdictions. For example in New Jersey: *see Buckley v. Trenton,* 111 N.J. 355 (N.J. 1988) (intentional infliction of emotional distress); *Berman v. Allan,* 80 N.J. 421 (N.J. 1979 (negligent infliction of emotional distress).  New York: *see Nader v. General Motors Corp.,* 25 N.Y.2d 560 (N.Y. 1970) (intentional infliction of emotional distress); *Ferrara v. Galluchio,* 5 N.Y.2d 16 (N.Y. 1958) (negligent infliction of emotional distress).  California: *see Hughes v. Pair,* 46 Cal. 4th (Cal. 2009) (intentional infliction of emotional distress); *Christensen v. Superior Court,* 54 Cal.3d 868 (Cal.1991) (negligent infliction of emotional distress).

§1983 has caused the plaintiff to suffer emotional distress is sufficient to confer standing.[4]

The Court's statement at *8 that Plaintiffs failed "to provide any sources to support the notion that an intangible injury such as 'extreme emotional distress' confers standing in the First Amendment context" disregarded two cases which Plaintiffs cited in which the plaintiff's emotional distress was deemed sufficient to warrant standing in a freedom of speech context. Plaintiffs cited *Frisby v. Schultz,* 487 U.S. 474 (1988), several times in support of their argument that the protesters' conduct, like that in *Frisby,* constituted targeted picketing in a residential area. In *Frisby,* where protesters were picketing the home of a physician who performed abortions, the Court held their conduct was subject to the reasonable time, place and manner restrictions contained in a city ordinance. The protesters' speech in *Frisby* was clearly political and was being conducted in a public area. In support of its decision, the Court stated, *id. at* 486:

> The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt:
>
> "to those inside .... the home becomes something less than a home when and while the picketing ... continue[s]. .... **[The] tensions and pressures may be psychological, not physical**, but they are not, for that reason, less inimical to family privacy and truly domestic tranquility. ...
> (Emphasis added; citations omitted.)

The Court likewise ignored Plaintiffs' citation in both of their Responses to the Defendants' motions to dismiss of *Wells v. Rhodes,* 928 F. Supp. 2d 920 (S.D. Ohio 2013), in which two Caucasian teenagers burned a cross on the front lawn of an African-American family, doused it with gasoline and set it afire. The cross had the following messages written on it in permanent marker: "KKK will make you pay" and "Nigger." The six African-Americans who were present in the home sued the defendants for violating 42 U.S.C. §1982 and §1985(3), which federal

---

[4] Courts have held that the rationale of *Smith v. Wade* also applies to actions brought under §1981 (*see Kim v. Nash Finch Co.,* 123 F.3d 1046, 1063 (8th Cir. 1997); §1982 (*see Fair House. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); and §1985(3) (*see Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C. Cir. 1995).

courts have held makes it a federal offense to discriminate against individuals based on their race

with respect to their ownership or use of real estate. As Plaintiffs pointed out in their Response to

the protesters' motion to dismiss, the Supreme Court held in *Shaare Tefila Congregation v. Cobb,*

481 U.S. 615 (1987), that Jews qualify as a race under the federal civil rights laws, which in-

cludes 42 U.S.C. §§1981, 1982 and 1985(3). Plaintiffs also sued the protesters under §§1982 and

1985(3), claiming that the protesters use of Antisemitic speech in front of their house of worship

violated both federal statutes, because they were being targeted based on their Jewish race, in the

course of their using the real estate of the Synagogue as guests and in which they had an owner-

ship interest by virtue of their paying membership dues.[5] In *Virginia v. Black,* 538 U.S. 343

(2003), the Supreme Court held that, in the absence of a threat to cause bodily harm or death,

burning a cross constitutes symbolic hate speech protected by the 1st Amendment and that burn-

ing a cross is not *prima facie* evidence of an intent to intimidate. Notwithstanding that burning a

cross constitutes symbolic hate speech protected under the 1st Amendment in the absence of evi-

dence of an intent to intimidate, the Court in *Wells* held that it still constituted a violation of 42

U.S.C. §§1982 and 1985(3). With regard to the plaintiffs' injuries which gave them standing to

sue, the Court stated, *id.* at 924:

> Although the facts of the underlying event are largely undisputed, the parties dis-
> pute what, if any, injury Plaintiffs suffered as a result of Defendants' actions. The
> record evidence suggests that [the Plaintiffs] did not suffer direct physical injury
> and did not seek medical treatment as a result of the cross burning. ... Fortunately,
> there was no damage to Plaintiffs['] rental home as a result of the cross burning.
> ...**Plaintiffs, however, have also testified regarding the distress they have suf-
> fered as a result of the incident. For example, during their deposition testi-
> mony, Plaintiffs averred to experiencing fear and anxiety as a result of the
> cross burning.** ... Certain Plaintiffs, and most prominently Shanay Gibson, re-
> ported trouble sleeping. ... (Emphasis added; footnote omitted.)

---

[5] *See U.S. v. Brown,* 49 F.3d 1162 (6th Cir. 1995); *U.S. v. Greer,* 939 F.2d 1076 (5th Cir. 1991),
*aff'd en banc,* 968 F.2d 433 (5th Cir. 1992), *cert. denied,* __ U.S. __ , 113 S.Ct. 1390 (1993);
*Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir. 1974).

Thus the facts in *Wells* paralleled those in Plaintiffs' lawsuit: In both cases the plaintiffs claimed that hate speech violated their rights under the same federal statutes, which applied to both based on their race.  In both cases, the only injury which the plaintiffs experienced was a form of emotional distress.[6]  The only difference is that in one case the plaintiffs were African-American, while the Plaintiffs in the instant case are Jewish.  Given the Court's ruling in the instant case that the emotional distress of the Jewish Plaintiffs does not suffice to confer them with standing to sue, does the Court maintain that *Wells* was wrongly decided by the Southern District of Ohio, that the Court in *Wells* should have dismissed the lawsuit because the emotional distress of the plaintiffs was not sufficient to give them standing?  If the Court does not believe that *Wells* was wrongly decided, on what basis?  Does the Court claim that the emotional distress of Jewish citizens is somehow inferior to that of African-Americans, less entitled to concern or empathy, less deserving of a federal court's recognition?  Clearly, such a distinction would violate the Equal Protection Clause of the 14th Amendment.[7]

In addition to ignoring Plaintiffs' citation of *Frisby* and *Wells*, the Court's position that emotional distress alone is not sufficient to qualify for standing in the context of a 1st Amendment

---

[6] As the Court noted, there was no damage to the Plaintiffs' rental property.  This was so even if the burning cross singed the lawn, because the Plaintiffs were renting the house and therefore had no property interest in the lawn.  Consequently, the Court cannot distinguish *Wells* by claiming that, unlike the protesters in front of the Synagogue, the defendants were trespassing on the Plaintiffs' property, because they weren't.  With regard to the Synagogue protesters, moreover, as Plaintiffs pointed out in both briefs opposing the motions to dismiss, the protesters have been using a large Israeli flag with a red circle bisected by a red slash over the Star of David, the traditional symbol of Judaism and the Jewish people.  The red circle with the red slash is the international symbol for "Prohibited."  Using such a symbol superimposed over the Star of David in front of a synagogue is just as offensive to Jews as burning a cross in front of an African-American church, or displaying a large placard showing a burning cross, would be to the church's congregants.

[7] The fact that some of the Plaintiffs in *Wells* indicated that they had trouble sleeping is not a sufficient distinction, since inability to sleep does not constitute an injury, and even those Plaintiffs who did not have trouble sleeping were granted standing based on their emotional distress alone.  It also deserves noting that not only did the Court in *Wells* not dismiss the lawsuit, it granted the plaintiffs summary judgment.  *Wells* has not been reversed.

defense fails to take into account two major classes of cases in which the courts have held emotional distress alone **does suffice** to qualify for standing in the context of the 1st Amendment. The first category of cases are sexual harassment lawsuits which allege that the defendant's verbal conduct alone has created a hostile working environment.  Courts have granted plaintiffs standing to sue in such cases even when the only alleged injury has been the plaintiff's emotional distress, without any allegation that the defendant had any physical contact with the plaintiff, and the defendant has not made any *quid pro quo* demand on the plaintiff for sexual favors.  *See, e.g., Albeita v. Transamerica Mailings, Inc.,* 159 F.3d 246 (6th Cir. 1998) (repeated, ongoing and pervasive sexual remarks by female employee's supervisor created a hostile work environment in violation of Title VII); *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325 (4th Cir. 2003) (plaintiff stated a valid claim of hostile work environment sexual harassment under Title VII, consisting in the constant sexual banter and lewd comments by the plaintiff's co-workers); *cf. Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993) (in addition to persistent sexual innuendos and jokes, company company president would toss coins on the floor and ask female employees to pick them up).

The 1st Amendment does not have a hierarchy of degrees of acceptability of constitutional speech. With the exception of child pornography, all speech is entitled to 1st Amendment protection, regardless of how its social value may be regarded.  Indeed, as the protester Defendants pointed out in their Reply Brief in support of their motion to dismiss (Dkt. #57) by citing *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188 (9th Cir. 1989), even the most scatologically obscene adult pornography is deserving of the same degree of 1st Amendment protection as the most elegant oratory of a politician.  Therefore, on this Court's view of standing, the constant sexual comments by the plaintiff's supervisor in *Albeita*  and the sexual banter and lewd jokes made by the plaintiff's co-workers in *Ocheltree* should have been protected against government intrusion via Title VII, and, in the absence of any unwanted physical contact, the plaintiffs' emo-

tional distress should not have sufficed to grant standing – yet granted standing they were. Under the Court's view of the scope of 1st Amendment protection, the application of Title VII in cases such as *Abeita* and *Ocheltree* should have been held to be an unconstitutional invasion of their 1st Amendment free speech rights. But it has not. [8] Therefore, the Plaintiffs' emotional distress in the face of the Antisemitic signs used by the protesters should suffice to accord them standing as well. Indeed, in their Response to the protesters' motion to dismiss, Plaintiffs argued that the protesters' offensive use of free speech in front of Beth Israel Synagogue created a hostile environment for themselves and their fellow congregants. (*See* Dkt. #54, note 18.) While Title VII does not apply outside the employment context, certainly 42 U.S.C. §§1981, 1982 and 1985(3) do.

The second category of cases which the Court has ignored are defamation cases in which the defamed party has suffered emotional distress attributable to the defamatory statements. Defamation by definition involves speech, and only speech, protected by the 1st Amendment. For this reason, in *New York Times, Inc. v. Sullivan,* 376 U.S. 254 (1964), the Supreme Court established parameters which a plaintiff claiming defamation must meet in order not to violate the 1st

---

[8] The hostile work environment cases based exclusively on speech causing emotional distress sufficient to violate Title VII have not been limited to sexual harassment. They have also been based on offensive speech targeting race (*see, e.g., Moore v. Kuka Welding Systems & Robot Corp.,* 171 F.3d 1073 (6th cir. 1999) (African-American employee subjected to repeated racial slurs); *Schwapp v. Town of Avon,* 118 F.3d 106 (2d Cir. 1997) (same); *Rodgers v. Western Southern Life Ins. Co.,* 12 F.3d 668 (7th Cir. 1993) (same); *Reedy v. Quebecor Printing Eagle, Inc.,* 333 F.3d 906 (8th Cir. 2003) (same)); national origin (*see Cerros v,. Steel Technologies, Inc.,* 288 F.3d 1040 (7th Cir. 2020) (Hispanic employee subjected to repeated, perpetual ethnic and racial slurs created hostile work environment); *Reynaga v. Roseburg Forrest Prods.,* 847 F.3d 678 (9th Cir. 2017) (Mexican-American employees subjected to ethnic and racial slurs)); and ethnicity/religion (*see Cutler v. Dorn,* 196 N.J. 2008) (Jewish police officer's co-workers created hostile work environment by constantly uttering Antisemitic comments). Under the Court's standing analysis, emotional distress, without any physical injury or medical manifestations, caused by racist speech alone should have been insufficient to grant standing to the plaintiffs in all of these cases. Moreover, on the Court's analysis, government intervention via a federal statute which required that the speakers be disciplined and/or required to pay damages should have been held unconstitutional as violating the speakers' 1st Amendment free speech rights. But no court has held that this is the case, invalidating the Court's dismissal of Plaintiffs' lawsuit on the basis that emotional distress caused by speech is insufficient to confer standing.

Amendment.  There are numerous federal decisions in which the only harm allegedly caused by the defaming defendant's speech is that it caused the plaintiff emotional distress. If the Court's holding in the instant case were correct, that emotional distress caused by speech is not sufficient to confer standing, then none of the plaintiffs in these cases had standing.  And yet they did.  *See, e.g., Aspero v. Shearson American Exp., Inc.,* 768 F.2s 106 (6th Cir. 1985); *RK Ventures, Inc, v. City of Seattle,* 307 F.3d 1045 (9th Cir. 2002); *McQuirk v. Donnelley,* 189 F.3d 793 (9th Cir. 1999); *Tellez v. Pacific Gas and Elec. Co., Inc.,* 817 F.2d 536 (9th Cir. 1987); *Apostle v. Booth Newspapers, Inc.,* 572 F. Supp. 897 (W.D. Mich. 1983); *DeMeo v. Goodall,* 640 F. Supp. 1115 (D.N.H. 1986); *Davenport v. Rodriguez,* 147 F. Supp.2d 630 (S.D. Tex. 2001).

In addition to downgrading emotional distress as a legitimate basis for conferring standing in the context of a 1st Amendment defense, the Court also disregarded other bases for affording the Plaintiffs standing.  First, the Court ignored Plaintiffs' assertions in ¶s 20-21 of the FAC that the protesters' insulting and offensive speech significantly reduced their enjoyment in exercising their 1st Amendment right of freedom of religion. Plaintiffs alleged the protesters' conduct was aided and abetted by the City's failure to enforce its ordinance provisions prohibiting the protesters' conduct over a period of 858 consecutive weeks (52 x 16.5), demonstrating a deliberate indifference to their religious freedom and rendering the protesters as state actors for purposes of §1983. Reducing citizens' enjoyment of a statutory or constitutional right has been recognized as a basis for affording standing, as in *Coalition for the Environment v. Volpe,* 504 F.2d 156 (8th Cir. 1974) – cited in Plaintiffs' Responses to the Defendants' motions to dismiss – wherein the plaintiffs claimed standing based on the anticipated destruction of their "open space ... which is needed for its healthful, aesthetic, and psychological qualities." *Id.* at 163.  *See also United States v. SCRAP,* 412 U.S. 669, 670 (1973) (plaintiff organization had standing to challenge railroad rate increase where its members "suffered economic, recreational and aesthetic harm directly as a re-

sult of adverse environmental impact of the railroad freight structure"); *Desert Citizens Against Pollution v. Bisson,* 231 F.3d 1172, 1176 (9th Cir. 2000) ("The recreational or aesthetic enjoyment of federal lands is a legally protected interest whose impairment constitutes an actual, particularized harm sufficient to create an injury in fact for purposes of standing.") Nowhere in its decision did the Court address the Plaintiffs' assertion that the reduction in their enjoyment of religious worship constituted an injury qualifying for standing.

The Court also failed to take into account that Mr. Gerber avoids traveling to Beth Israel Synagogue in order not to have to see the protesters' signs. (FAC, ¶20) As Plaintiffs pointed out in their Response to the protesters' motion to dismiss, concerted action which interferes with an individual's intrastate travel based on the individual's race constitutes a violation of 42 U.S.C. §1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88 (1971); *Johnson v. City of Cincinnati,* 310 F.3d 484 (6th Cir. 2002); *Spencer v. Casavilla,* 903 F.2d 171 (2d Cir. 1990); *Selevan v. New York Thruway Authority,* 584 F.3d 82 (2d Cir. 2009). In *ACLU v. City of St. Charles,* 794 F.2d 265 (7th Cir. 1986), the Court held that the additional time required for a family to take a detour to avoid seeing a lighted crucifix in a public park during the Christmas season constituted an injury which conferred standing. The Court failed to consider Mr. Gerber's avoiding Beth Israel Synagogue by going to a different house of worship as a basis for conferring him with standing to sue.[9]

Finally, in *Warth v. Seldin,* 422 U.S. 490, 500 (1975), the Court stated that, "The injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of

---

[9] In a Joint Letter (Dkt. #64) submitted by Plaintiffs requesting leave to amend their FAC to add an allegation clarifying that Mr. Gerber was attending Sabbath services at a different synagogue, which required that he travel a different route, the Court denied Plaintiffs leave to file a Third Amended Complaint, stating in its Order (Dkt. #65), "Plaintiffs' request is **DENIED**. The Court now has under consideration several motions which could be dispositive of **certain claims**, and declines to allow amendment **at this juncture**." (Emphasis added.) As it now turns out, the Court has dismissed **all claims**, not just **"certain claims"** and the juncture to allow an amendment of the FAC to clarify issues relating to standing has evaporated.

which creates standing." The Supreme Court and lower federal courts have held that an allegation that a defendant has violated a federal or state statute is sufficient to confer standing. *See, e.g. Match-E-Be-Nash-She-Wish Band Indians v. Patchak*, 567 U.S. 209 (2012) (allegation that permitting Native American tribe to build a casino on property in proximity to plaintiff's property violated the Indian Gaming Regulatory Act, 25 U.S.C. §§2701-2721 sufficient to confer standing); *Traxel v. Granville,* 530 U.S. 57 (2000) (children's mother had standing to challenge right of parents of deceased husband to have visitation rights, where Washington statute allowing grandparents to have visitation rights violated mother's constitutional right to rear her children); *FMC Corp. v. Boesky,* 852 F.2d 981 (7th Cir. 1988) (plaintiff corporation's allegation that defendant had violated Illinois statutes sufficient to confer standing); *Carlsen v. GameStop, Inc.,* 833 F.3d 903 (8th Cir. 2016) (plaintiff's allegation that defendant violated Minnesota's Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq.*, sufficient to confer standing).

In their FAC, Plaintiffs alleged that the protester Defendants and the City Defendants had violated the following constitutional Amendments and federal statutes: 1st Amendment; 14th Amendment; 42 U.S.C. §1981; 42 U.S.C. §1982; 42 U.S.C. §1983; 42 U.S.C. §1985(3); 42 U.S.C. §1986; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb, *et. seq.*; and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc, *et seq.*[10] Plaintiffs' allegations that the Defendants had violated any one of these constitutional Amendments or federal statutes was sufficient to afford them standing, yet in its decision the Court addressed none of them, restricting itself to analyzing only whether the Plaintiffs' had standing based exclusively on their emotional distress, thereby ignoring numerous federal precedents granting standing on a far broader basis. Indeed, Plaintiffs cited, and attached as an exhibit,

---

[10] In their Response to the Protesters' motion to dismiss, footnote 11, Plaintiffs also argued that the protesters' repetitive picketing in front of the same location for 16 ½ years is a form of stalking, violating Michigan's anti-stalking statute, M.C.L. §750.411h.

this Court's own decision in *Coulter-Owens v. Rodale, Inc.*, Case No. 14-12688 (E.D. Mich. 2015) (attached hereto as Exhibit 2), in which this Court rejected the defendant's claim that the plaintiff did not have standing, by stating, *id.* at *5: "Coulter-Owens **only needs to allege** a violation of [Michigan's Video Rental Privacy Act] in order to have Article III standing. She does this; she has Article III standing." (Emphasis added.) Therefore, by rejecting Plaintiffs' assertion that they have standing on the same basis, the Court has repudiated its own prior decision.[11]

Under Supreme Court precedents; under 6th Circuit precedents; under the precedents of other federal circuit courts; and under the precedent of this very Court, Plaintiffs have standing to sue. The Court's decision to the contrary is clearly erroneous, must be vacated, and Plaintiffs' lawsuit must accordingly be reinstated.

## III.   THE COURT'S REASONING DOES NOT APPLY TO FOUR OF THE COUNTS.

Even given the Court's ruling that the Plaintiffs do not have standing based on their emotional distress caused by the protesters' signs, this ruling has no bearing on the four counts pled against the City which have nothing to do with free speech. (1) In Count X, Plaintiffs claim the City Defendants violated their substantive due process rights by failing to enforce its sign ordinance, which unambiguously prohibited the protesters from placing their signs on the public right-of-way in front of the Synagogue. The protesters were allowed to violate the City's ordinance for 858 consecutive weeks, without the City once ordering them to remove their signs. Plaintiffs maintained that since the sign ordinance was content and viewpoint neutral, the City could have enforced it without violating the protesters 1st Amendment rights. *See R.A.V. v. St.*

---

[11] *See also Camaj v. Makower Abbate Guerra Wegner Vollmer PLLC,* Case No. 19-cv-10179 (E.D. Mich., Nov. 14, 2019), rejecting defendant's claim that the plaintiff lacked standing ("Camaj alleges *both* that Makower violated the [Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.*] in the ways noted above *and* that he suffered real emotional and physical consequences. Camaj has alleged sufficient injuries." *Id.* at 9-10.) (Italics in the original) (Copy attached as Exhibit 3.)

*Paul,* 505 U.S. 377 (1992); *Jobe v. City of Catlettsburg,* 409 F.3d 261 (6th Cir. 2005); *Vittitow v. City of Upper Arlington,* 43 F.3d 1100 (6th Cir. 1995); *Wheeler v. Commissioner of Highways,* 822 F.2d 586 (6th Cir. 1987); *Chicago Observer, Inc. v. City of Chicago,* 929 F.d2d 325 (7th Cir. 1991); *Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998). The failure to enforce the sign ordinance for 858 consecutive weeks demonstrates deliberate indifference to the Plaintiffs' rights and a violation of substantive due process. The Court's decision denying standing based on the protesters' 1st Amendment rights has no bearing on this claim. (2) In Count XI, Plaintiffs alleged that City Defendants' interference with their attorney's efforts to obtain information from a City employee about the enforcement of the sign ordinance violated their 1st Amendment right of access to the courts, encompassed in the right to petition the government for redress of grievances. Even if the Court were correct that Plaintiffs do not have standing to sue the protesters based on the latter's 1st Amendment rights, this has no bearing on whether the City interfered with their own 1st Amendment right of access to the courts. (3) In Count XII, Plaintiffs alleged that the City's failure to enforce its sign ordinance violated the Plaintiffs' rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb, *et. seq.*; Again, the protesters' 1st Amendment rights have no bearing on this claim, and Plaintiffs accordingly have standing to pursue it. (4) In Count XIII, Plaintiffs allege that the City's failure to enforce its sign ordinance for 858 consecutive weeks violated the Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc, *et seq.* The protesters' 1st Amendment rights likewise have no bearing on this claim and Plaintiffs have standing to pursue it. The Court should, accordingly, reinstate these claims.

## IV.   THE CASES DEALING WITH "CHILLING" ARE NOT RELEVANT.

On *9, in support of its decision the Court cites several 1st Amendment cases in which the courts have held that a plaintiff alleging that his/her 1st Amendment rights were "chilled" by a governmental policy or statute did not have standing to sue. For example, in *Morrison v. Board,*

521 F.3d 602 (6th Cir. 2008), a high school student who believed that homosexuality is a sin, claimed that the school's policy "prohibiting students from making stigmatizing or insulting comments regarding another student's sexual orientation" (*id.* at 605) violated his 1st Amendment rights because it "chilled" his willingness to express criticism of homosexuality. The Court held, *id. at* 608, that the plaintiff did not have standing because his "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (quoting *Laird v. Tatum,* 408 U.S. 1 (1972)). This decision has no relevance to Plaintiffs' claim that they have standing to sue the protesters for their use of offensive speech in front of their house of worship – Plaintiffs are not claiming that the protesters' or the City's conduct, is "chilling" their willingness to express any of their views regarding anything. In fact, Plaintiffs have been vocal about their opposition to the protesters' conduct, and any harm to their free exercise rights are not speculative, but actually occurring in the form of their emotional distress. Moreover, the plaintiff in *Morrison* did not claim that the chilling effect on his free speech caused him emotional distress. Both *Muslim Community Ass'n of Ann Arbor v. Ashcroft,* 459 F. Supp.2d 592 (E.D. Mich. 2006), and *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46 (1989), are inapposite for the same reason. In both cases the court held that the plaintiff's claim that a federal statute (*Muslim Community Ass'n*) and a state statute (*Fort Wayne Books)* "chilled" their willingness to express themselves and therefore violated their **free speech** rights under the 1st Amendment did not state a sufficiently concrete injury to confer standing. In neither case did the plaintiffs claim that the "chilling" effect caused them emotional distress. Moreover, here Plaintiffs are not claiming that their free speech rights are being "chilled."[12]

---

[12] If the Court is claiming that the free speech "chilling" cases can be analogized to the Plaintiffs' claim that the protesters' conduct is "chilling" their 1st Amendment right to freely exercise their religion, the Court has failed to cite any case which has applied the "chilling" free speech cases to a claim by a plaintiff that their 1st Amendment free exercise rights have been chilled and was de-
(Footnote continued.)

## V.    THE COURT IMPROPERLY RULED ON THE MERITS.

In its Conclusion, the Court states: "[T]he First Amendment more than protects the ex-pressions by Defendants of what Plaintiffs describe as "anti-Israeili, anti-Zionist, an[d] an-tisemitic."  Peaceful protest speech such as this – on sidewalks and streets – is entitled to the highest level of constitutional protection, even if it disturbs, is offensive, and causes emotional distress."  By so stating, the Court effectively ruled against Plaintiffs on the merits and granted the Defendants' motion to dismiss pursuant to Rule 12(b)(6), contrary to the Court's statement that it was restricting its decision to the question of jurisdiction and standing under 12(b)(1). The Court went well beyond the parameters of the standard of review for a 12(b)(1) motion.

Moreover, the Court essentially granted the Defendants' 12(b)(6) motion without address-ing **any** of the numerous arguments Plaintiffs offered arguing the protesters' conduct in front of a Jewish house of worship was not absolutely protected by the 1st Amendment. The Court ignored Plaintiffs' argument that the protests constituted targeted picketing in a residential area, which the Supreme Court has held can be subject to restrictions. *See Frisby, supra.* The Court ignored Plaintiffs' argument they and their fellow congregants constituted a captive audience. The Court ignored Plaintiffs' argument that the protesters' conduct was subject to reasonable time, place and manner restrictions, sustained by numerous Supreme Court and lower federal court decisions, cited in Plaintiffs' briefs. And the Court ignored Plaintiffs' repeated citation of the Supreme Court's decision in *Beauharnais v. Illinois,* 343 U.S. 250 (1954), in which the Court held that an Illinois statute which prohibited the publication of speech or documents whose "publication or

---

nied standing on that basis.  Indeed, there are numerous cases in which the courts have granted standing to plaintiffs who have contended that a governmental policy has in effect "chilled" their free exercise rights. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205 (1972) (Wisconsin's compulsory school attendance statute violated the religious free exercise rights of Amish, who insisted on home schooling for religious reasons.); *Church of the Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993) (Florida ordinance interfered with animal sacrifice rituals of Santeria religion).

exhibition exposes the citizens of any race, color, creed or religion to contempt, derision, or oblo-quy" was constitutional. Under *Beauharnais*, the protesters' speech which subjected Plaintiffs and the other Jewish congregants to "contempt, derision, [and] obloquy" based on their race and religion, is not protected by the 1st Amendment. The Court accordingly had the authority to enter a preliminary injunction placing reasonable time, place and manner restrictions on their conduct without violating their right to free speech under the 1st Amendment. As Plaintiffs indicated in their briefs, *Beauharnais* has never been overturned and has been cited with approval in subse-quent Supreme Court decisions. Having been decided after *Terminello v. City of Chicago,*,337 U.S.1 (1949), cited by the Court, *Beauharnais* takes precedence over *Terminello. Beauharnais* therefore stands as precedent, by which this Court is bound. "Needless to say, only this Court may overrule one of its precedents. Until that occurs, [our prior decision] is the law, and the deci-sion below cannot be reconciled with it." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983). "[U]nless we wish anarchy to prevail within the federal judicial system, **a precedent of this Court must be followed by the lower federal courts no matter how mis-guided the judges of those courts may think it to be**." *Hutto v. Davis,* 454 U.S. 370, 375 (1982) (emphasis added). Therefore, until *Beaharnais* has been expressly overturned by the Supreme Court, all of the Circuit Courts and District Courts, including this Court, are bound by it.

By asserting the Court's decision was addressing only the issue of standing under 12(b)(1), but proceeding to make a ruling on the merits and granting a 12(b)(6) motion without addressing Plaintiffs' arguments opposing the 12(b)(6) motions, the Court abused its discretion.

## CONCLUSION AND RELIEF

Based on the above arguments, the Court's decision that Plaintiffs do not have standing to sue is clearly erroneous. Plaintiffs request that the Court reverse and vacate its decision holding that Plaintiffs do not have standing to sue and reinstate Plaintiffs' lawsuit.

Respectfully submitted,

By:   /s  Ziporah Reich_____          /s  Marc M. Susselman_____
      Co-counsel for Plaintiffs                   Attorney for Plaintiffs

Dated: August 26, 2020