UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Marvin Gerber and Dr. Miriam Brysk

Case No. 2:19-cv-13726

                Plaintiff,         Hon. Victoria Roberts

v.

Henry Herskovitz, Gloria Harb, Tom Saffold, Rudy List, Chris Mark, Deir Yassin Remembered, Inc., Jewish Witnesses for Peace and Friends, The City of Ann Arbor, Ann Arbor Mayor Christopher Taylor, in his official and individual capacities, Ann Arbor Community Services Administrator Derek Delacourt, in his official and individual capacities, Ann Arbor City Attorney Stephen Postema, in his official and individual capacities, and Senior Assistant City Attorney Kristen Larcom, in her official and individual capacities, jointly and severally.

                Defendants.

_____/

## DEFENDANTS' HERSKOVITZ, HARB, SAFFOLD, LIST AND MARK'S FEE PETITION PURSUANT TO 42 U.S.C. §1988 AND MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. §1927

NOW COME Defendants Herskovitz, Harb, Saffold, List and Mark, (hereinafter "Protester Defendants" or "PD") by and through their counsel Cynthia Heenan, Hugh M. Davis, Scott Makela and John Shea and move this Court to award fees and costs pursuant to 42 U.S.C. §1988 and for sanctions pursuant to 28 U.S.C. §1927 showing as follows, as more fully set forth in the accompanying Brief:

1

1. Plaintiffs' Complaint was dismissed in its entirety as to both the Protester Defendants and the City of Ann Arbor Defendants pursuant to F.R.Civ.P. 12(b)(6) – failure to state a claim.

2. The entire complaint, particularly as to the Protester Defendants, was frivolous, unreasonable, groundless, without merit or foundation and not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

3. This was true from the onset and well known to Plaintiffs' counsel, entitling these prevailing Defendants to attorney fees and costs pursuant to 42 U.S.C. §1988.

4. Plaintiffs' counsel engaged in additional conduct which multiplied the proceedings vexatiously and unreasonably up until this Court's dismissal and are appropriately subject to sanctions pursuant to 28 U.S.C. §1927.

5. Prior to filing, undersigned counsel requested concurrence from counsel for the Plaintiffs which was denied by Mr. Susselman.

WHEREFORE Protester Defendants' respectfully request this Honorable Court award fees and costs pursuant to 42 U.S.C. §1988 in the full amount incurred, as set forth in the accompanying Brief, plus fees and costs incurred in litigating this

motion.  Further, they request an award of sanctions against the Plaintiffs' counsel

pursuant to 28 U.S.C. §1927 in an amount that the Court deems fair and just.

Respectfully Submitted,


 /s/Cynthia Heenan
Cynthia Heenan (P53664)
Hugh M. Davis, Jr. (P12555)
Constitutional Litigation Associates, P.C.
2930 East Jefferson Ave.
Detroit, MI 48207
(313) 961-2255/fax: (313) 922-5130
Heenan@ConLitPC.Com
Davis@ConLitPC.Com
Info@ConLitPC.Com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Marvin Gerber and Dr. Miriam Brysk

                          Plaintiffs,

v.

Henry Herskovitz, Gloria Harb, Tom Saffold, Rudy List, Chris Mark, Deir Yassin Remembered, Inc., Jewish Witnesses for Peace and Friends, The City of Ann Arbor, Ann Arbor Mayor Christopher Taylor, in his official and individual capacities, Ann Arbor Community Services Administrator Derek Delacourt, in his official and individual capacities, Ann Arbor City Attorney Stephen Postema, in his official and individual capacities, and Senior Assistant City Attorney Kristen Larcom, in her official and individual capacities, jointly and severally.

                          Defendants.

Case No. 2:19-cv-13726
Hon. Victoria Roberts

_____/

**<u>BRIEF IN SUPPORT OF DEFENDANTS' HERSKOVITZ, HARB, SAFFOLD, LIST AND MARK'S FEE PETITION PURSUANT TO 42 U.S.C. §1988 AND FOR SANCTIONS PURSUANT TO 28 U.S.C. §1927</u>**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INDEX OF EXHIBITS ....................................................................v

I. SUMMARY OF PROCEEDINGS.....................................................1

II. LEGAL STANDARDS ...............................................................10

    A. Attorney fees under 42 U.S.C. § 1988 ....................................10

    B. Sanctions under 28 U.S.C. § 1927 ........................................14

III. ARGUMENT AND CONCLUSION .............................................15

CERTIFICATE OF SERVICE .........................................................20

## TABLE OF AUTHORITIES

**Cases**

*Bagi v. City of Parma*, 795 F. App'x 338 (6th Cir. 2019)..........................................13

*Boos v. Barry*, 485 U.S. 312 (1988)...........................................................................4

*Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976) ...................................12

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L. Ed. 2d

    648 (1978) ................................................................................................ 11, 13

*Fox v. Vice*, 563 U.S. 826 (2011)...............................................................................13

*Hashem-Younes v. Danou Enters.*, No. 06-CV-15469, 2008 U.S. Dist. LEXIS

    21936 (E.D. Mich. Mar. 20, 2008) ......................................................................12

*Hepperle v. Panama Machinery & Supply Co.*, 532 F. Supp. 1085 (N.D.Fla. 1982)

    .............................................................................................................................12

*Hepperle v. Panama Machinery & Supply Co.*, 710 F.2d 838 (11th Cir. 1983).....12

*Hescott v. City of Saginaw*, 757 F.3d 518 (6th Cir. 2014)......................................11

*Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980).............11

*In re Ruben*, 825 F.2d 977 (6th Cir. 1987) ..............................................................14

*Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1985) .............................. 14, 15

*Life Science Church v. Vocke*, 531 F. Supp. 790 (E.D.Wis. 1982) ........................12

*McCullen v. Coakley*, 573 U.S. 464 (2014)...............................................................4

*Parrott v. Corley*, 266 F. App'x 412 (6th Cir. 2008) ..............................................14

*Prate v. Freedman*, 583 F.2d 42 (2d Cir. 1978) ......................................................12

*Price v. Hawaii,* 789 F. Supp 330 (D. Ha. 1992)......................................................12

*Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997)....................................15

*Smith v. Smythe-Cramer Co.*, 754 F.2d 180 (6th Cir. 1985) ............................ 11, 12

*Tarter v. Raybuck*, 742 F.2d 977 (6th Cir. 1984)......................................................13

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949)....................................................4

*United States v. Mississippi*, 921 F.2d 604 (5th Cir. 1991) .............................. 10, 14

*Werch v. City of Berlin*, 673 F.2d 192 (7th Cir. 1982) ............................................12

*Whiten v. Ryder Truck Lines, Inc.*, 520 F. Supp. 1174 (M.D.La. 1981).................12

## **Statutes**

28 U.S.C. § 1927 ................................................................................... 14, 19

48 U.S.C. §1981 ....................................................................................1, 16

48 U.S.C.§1982 .....................................................................................1, 16

U.S.C. § 1983 ................................................................................... passim

48 U.S.C. §1985(3) ...............................................................................1, 16

42 U.S.C. § 1988 ............................................................................. 1, 11, 19

## **Rules**

F.R.Civ.P 12(b)(6) .................................................................................7, 8

F.R.Civ.P. 8 (a)(2)......................................................................................1

## **INDEX OF EXHIBITS**

Exhibit 1 – CLA's Time Report

Exhibit 2 – CLA's Expense Time Report

Exhibit 3 – John Shea's Time Report

Exhibit 4 – Biography of Cynthia Heenan

Exhibit 5 – Biography of Hugh Davis

Exhibit 6 – Affidavit of Cynthia Heenan

Exhibit 7 -   Affidavit of Hugh Davis

Exhibit 8 – Biography of John Shea

### BRIEF IN SUPPORT OF DEFENDANTS' HERSKOVITZ, HARB, SAFFOLD, LIST AND MARK'S FEE PETITION PURSUANT TO 42 U.S.C. §1988 AND FOR SANCTIONS PURSUANT TO 28 U.S.C. §1927

## I.  SUMMARY OF PROCEEDINGS

On December 19, 2019, Plaintiff Marvin Gerber, through counsel Marc Susselman, filed his Complaint to initiate this action. The Complaint alleged twenty separate causes of action: eight against the Protester Defendants, eight against the City Defendants, and four conspiracy claims against both sets of Defendants. The Complaint spanned 85 pages, and was supplemented with 8 exhibits containing another 62 pages. The Complaint was replete with citations to background documents, legal authority, and lengthy quotations from each.

On January 3, 2020, the Court held a telephonic status conference, during which it admonished Plaintiff's counsel for the length of the Complaint and its noncompliance with the court rules' instruction that complaints contain "a short and plain statement of the claim * * * ." F.R.Civ.P. 8 (a)(2). Notwithstanding that admonishment, on January 10, 2020, counsel Susselman filed a First Amended Complaint that ran even longer than his initial Complaint.[1]

Plaintiffs First Amended Complaint (FAC) alleged violations of federal civil rights statutes, 48 U.S.C.§1981, §1982, §1983, §1985(3) and conspiracies among

---

[1] Counsel added a party-plaintiff, Miriam Brysk, and three new counts, all against the City Defendants. However, even so, the First Amended Complaint was longer than the initial Complaint through the first twenty counts.

the Protester Defendants themselves and with the City of Ann Arbor Defendants, arising from peaceful protests near a synagogue in Ann Arbor that Plaintiffs attend. The Protester Defendants carry and otherwise display signs that convey various anti-Israel and pro-Palestinian messages, beginning immediately prior to the time when the synagogue holds weekly Sabbath services. The "Protester Defendants'" protest speech occurs on public land alongside a public street and sidewalk, not on Synagogue property. Plaintiffs claim to be offended by the protest speech, and sought this Court's assistance in silencing it, notwithstanding the constitutional right guaranteed by the First Amendment to not have one's speech political speech in a traditional public forum silenced by Government action.

Plaintiffs contend that Protester Defendants' (PDs) protests and signs are not protected First Amendment speech or assembly especially because (1) the protests constitute "targeted picketing," (2) the congregants at Beth Israel Synagogue (BIS) constitute a "captive audience," (3) the protests infringe on the Plaintiffs' free exercise of religion, (4) children can see signs and (5) years of repetition of the ideas espoused by the protesters have failed to persuade the Plaintiffs, and their fellow congregants,  to their point of view.

The assertion that the speech is not protected and/or is aimed solely at the synagogue congregants is belied by the content of the signs; the fact that the protests occur on both sides of Washtenaw Avenue and that the signs depicted in the exhibits

face the street (Ex. 3 and 8, PageID.93-101, 375-377); and that the protesters and their signs are viewed by Plaintiffs (if they will not avert their eyes) only momentarily as they enter for their services, but not for most of the 1.5 to 2 hours the PDs allegedly remain in the public right-of-way [PageID.220-221] and there is no reference to all to seeing them again when they leave.

Plaintiffs acknowledge that the protest speech occurs in the public right-of-way on both sides of Washtenaw Ave, among the most traditional of all public fora. [Para. 26, PageID.221] Plaintiffs describe [para. 24, PageID.220] 18-20 signs which have been displayed in this area, including four that they characterize as "flagrantly anti-Semitic:" "Resist Jewish Power," "Jewish Power Corrupts," "End the Palestinian holocaust," and "No more holocaust movies." [para. 27, PageID.221] However, the FAC also references: "America First," "The U.S. of Israel?" "Stop Funding Israel," "Fake News: Israel is a Democracy," and "Atone for the sin of supporting genocide." Exhibits 3 and 8 to the FAC also depict signs reading: "Boycott Apartheid Israel," "Stop U.S. Aid to Israel," "Remember the USS Liberty" (an American military ship that was bombed by Israel during the Seven Day War resulting in many casualties), "Israel: No Right to Exist" and an Israeli flag overprinted with a circle bisected by a slash.

Notably, the FAC does not accuse PDs of "fighting words" or "incitement" to unlawful activity (traditionally unprotected under the 1st Amendment) or of

3

unprotected non-speech such as entering onto the property of the Synagogue, impeding access to the Synagogue, or interfering with the conduct of services. Further, there are no allegations of PD behavior that unlawfully discouraged the City Defendants from enforcing any ordinances. Indeed, Plaintiffs acknowledge that the City has consistently assured PDs and the BIS Congregation that the PDs' protest speech is protected under the First Amendment.

All Defendants moved for dismissal of the First Amended Complaint. On August 19, 2020, the Court entered its Order granting the Protester Defendants' and the City Defendants' motions. [ECF No. 66, PageID.1896.] All claims, were dismissed for failure to sufficiently allege Article III standing [ECF No. 66 PageID.1900-1906.][2] The Court also concluded that the Protester Defendants' conduct was fully protected by the First Amendment:

> Indeed, the First Amendment more than protects the expressions by Defendants of what Plaintiffs describe as "anti-Israeli, anti-Zionist, an antisemitic." Peaceful protest speech such as this – on sidewalks and streets – is entitled to the highest level of constitutional protection, even if it disturbs, is offensive, and causes emotional distress. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). The Defendants do nothing that falls outside of the protections of the First Amendment, since "a function of free speech under our system of government is to invite dispute," *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). In public debate we must tolerate "insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by

---

[2] Specifically, the Court found Plaintiffs' claimed injury from passing by the signs was not sufficiently concrete. The Court could also have concluded that Plaintiff lacked standing to enforce the sign ordinance or because the injunctive relief they sought was unbailable. (See ECF No. 45, PageID.1119, Page.ID1122-27.)

the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988)
(internal quotation marks and citations omitted).    [ECF No. 66
PageID.1905-1906.]

Plaintiffs filed their Motion for Reconsideration of that Order on August 26.
[ECF No. 67, PageID.1907.] The Court denied reconsideration on September 3,
2020. [ECF No. 69, PageID.1981.] Plaintiffs have filed a Claim of Appeal to the
Sixth Circuit.  [ECF No. 71, PageID.1984.]   The Court extended the deadline for
this Fee Petition to October 31, 2020 (a Saturday) (Text-Only Order Granting ECF
No. 72 on October 2, 2020).

Beyond the Complaints, Plaintiffs' counsel engaged in additional conduct
which multiplied the proceedings vexatiously and unreasonably up until this Court's
dismissal of Plaintiffs' action, as follows:

- On February 3, 2020, Plaintiff sought the default of Defendant Jewish
  Witnesses for Peace and Friends, an unincorporated and unregistered name
  which the individual protester Defendants called themselves. [ECF No. 14,
  PageID.389.] Protester Defendants' did not file Appearances for the non-
  entity. In their First Amended Complaint, Plaintiffs slightly changed their
  description of JWP&F in an effort to allege its existence as a separate
  entity. Counsel overlooked that change in its review of the 95 page First
  Amended Complaint, necessitating defense counsel to file a motion to have
  the default set aside [ECF No. 19, PageID.432].

5

- On February 4, 2020, Plaintiff also sought entry of a default judgment against JWP&F [ECF No. 16, PageID.393], necessitating that defense counsel respond in objection [ECF No. 20, PageID.451.] The Court denied Plaintiffs' motion and set aside the default on March 19, 2020. [ECF No. 40, PageID.1095.]

- On February 19, 2020, Plaintiffs' counsel filed a Motion for Partial Summary Disposition against Defendant City of Ann Arbor, before either the Protester Defendants or City Defendants had filed responsive pleadings to the First Amended Complaint. [ECF No. 23, PageID.653.] On February 29, the Court ordered Plaintiffs' motion stricken, ruling that it was not properly based on a "claim or defense" and "premature," and further ordering that no further summary judgment motion be filed until after the close of discovery except on leave of the Court. [ECF No. 29, PageID.880.]

- On March 19, 2020, after granting Defendants' motion to set aside default and denying Plaintiffs' motion for default judgment, the Court entered its Order Concerning the Filing of Motions. [ECF No. 44, PageID.1106.] This Order prohibited the parties from filing further motions without the Court's consent, and required a party who wished to file a motion to meet and confer first with the other parties, and, if no agreement was reached on the

relief sought, file a joint letter describing the dispute, following which the Court would rule whether the motion could be filed.

- On March 19, 2020, the Court approved the Protester Defendants' filing of a motion to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6), in excess of the Court's normal page limit. [ECF No. 42, PageID.1103.]. The Protester Defendants filed that motion on March 26, 2020. [ECF No. 45, PageID.1108.][3]

- Briefing on the Defendants' 12(b)(6) motions did not conclude until June 10 for the Plaintiffs, June 22 for the City Defendants, and July 1 for the Protester Defendants. Nonetheless, on June 13, 2020, while briefing still was pending, Plaintiffs' counsel asked Defendants' to concur in in their request to file a motion for preliminary injunction. Defense counsel were required to confer with each other and with Plaintiffs' counsel, and then to prepare objections to Plaintiffs' request, at the same time as they were still briefing their dispositive motion.

- Failing to obtain concurrence, on June 16, 2020, Plaintiffs' counsel filed the required "Joint Letter" in support of its request for leave to file the

---

[3] The City Defendants previously had filed a similar motion, on March 10. [ECF No. 32, PageID.898.]

motion for preliminary injunction [ECF No. 55, PageID.1843], which the Court denied on July 2. [ECF No. 58, PageID.1872.]

- On June 15, 2020, again while Defendants were still briefing the 12(b)(6) motions, Plaintiffs' counsel asked Defendants' to <u>concur in in their request to file a motion for partial summary judgment</u>. Defense counsel again were required to confer with each other and with Plaintiffs' counsel, and again to prepare objections to Plaintiffs' request.

- On July 2, 2020, Plaintiffs' counsel asked Defendants to <u>concur in Plaintiffs' request to file a *sur-reply* brief</u> regarding the 12(b)(6) motions. Defendants' again were required to confer with each other and opposing counsel, and to prepare objections to Plaintiffs' request.

- Failing to obtain concurrence on Plaintiffs' desire to file a motion for <u>partial summary judgment</u>, on July 3, 2020, Plaintiffs' counsel filed with the Court the required "Joint Letter" in support of its request for leave to file that motion [ECF No. 60, PageID.1877].

- Failing to obtain concurrence on Plaintiffs' desire to file a *sur-reply* brief, on July 7, 2020, Plaintiffs' counsel filed with the Court the required "Joint Letter" in support of its request for leave to file the *sur-reply* brief [ECF No. 62, PageID.1885].

- On July 9, 2020, the Court denied Plaintiffs' request for leave to file the *sur-reply* brief, and "decline[d] to consider" Plaintiffs' request for leave to file a motion for partial summary judgment. [ECF No. 63, PageID.1889.]

- That <u>very same day, on July 9, 2020, Plaintiffs' counsel asked Defendants to concur in Plaintiffs' request to file a Second Amended Complaint</u>. Defendants' again were required to confer with each other and opposing counsel, and to prepare objections to Plaintiffs' request.

- Failing to obtain concurrence on Plaintiffs' desire to file a Second Amended Complaint, and while a decision on Defendants' dispositive motions was pending, on July 13, 2020 Plaintiffs' counsel filed with the Court the required "Joint Letter" in support of its request for leave to file a Second Amended Complaint [ECF No. 64, PageID.1890].

- On July 22, 2020, the Court denied Plaintiffs' request for leave to file a motion authorizing a Second Amended Complaint. [ECF No. 63, PageID.1895.]

Counsel for the protester Defendants have incurred expenses in the total amount of $63.80 and fees $125,467.50 as follows and set forth in the attached Exhibits 1-3, for a total of $125,531.30.

| Attorney | No. of Hours | Hourly Rate | Total Fee |
|---|---|---|---|

| Shea | 95.50 | $425.00 | $40,587.50 |
| Heenan | 120.90 | $400.00 | $48,360.00 |
| Mackela | 85.20 | $350.00 | $29,820.00 |
| Davis | 13.40 | $500.00 | $6,700.00 |
| TOTALS | 315 | | $125,467.50 |

Attorneys Davis and Heenan have specialized in civil rights litigation pursuant to 42 U.S.C. §1983, particularly police misconduct but also First Amendment and other constitutional issues, throughout their respective 40- and 25-year careers.  Their last fee award rates were $375 and $200 respectively in 2008. See Exhibits 4-7, Biographies and Affidavits.

Scott Mackela has worked with Davis and Heenan for 10 years, primarily researching and writing motions, responses and appellate briefs in civil rights cases.

John Shea has specialized in criminal defense for over 30 years, which experience has included representation of persons whose alleged "offenses" involved speech protected under the 1st Amendment, and is widely recognized and well regarded.  See Exhibit 7.  Moving counsel will provide affidavits and/or testimony in support of the reasonableness of their rates and the hours charged.

## II.   LEGAL STANDARDS

## A.  Attorney fees under 42 U.S.C. § 1988

An award of attorney's fees may be granted at the district court's discretion to a prevailing party, other than the United States, in a § 1983 case. 42 U.S.C. § 1988(b). The Supreme Court ruled in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978) that a prevailing Defendant is entitled to attorneys' fees under § 1988 when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." *Id.*, 434 U.S. at 422, 98 S. Ct. at 700. A finding of bad faith is not a prerequisite to an award of attorneys' fees to a defendant, but "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorneys' fees incurred by the defense." *Id.*

"Under § 1988, a civil-rights defendant may recover attorneys' fees only if the defendant is a 'prevailing party' *and* proves that the plaintiff's action was 'frivolous, unreasonable, or without foundation.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 529 (6th Cir. 2014) (quoting *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (emphasis in original).

> Application of these standards requires inquiry into the plaintiffs' basis for bringing suit. Awards to prevailing defendants will depend on the factual circumstances of each case. While a showing of bad faith is not required for an award of attorneys fees to a prevailing defendant, such a showing would justify an award of fees. Additionally, courts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate.

11

*Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

A fee award to a prevailing defendant may also be justified "where plaintiffs misuse the courts to challenge consent decrees or matters resolved in previous cases or bring claims that are clearly barred by unambiguous case law." *Id*. (citing *Werch v. City of Berlin*, 673 F.2d 192 (7th Cir. 1982); *Prate v. Freedman*, 583 F.2d 42 (2d Cir. 1978); *Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976); *Hepperle v. Panama Machinery & Supply Co.*, 532 F. Supp. 1085 (N.D.Fla. 1982) *appeal dismissed*, 710 F.2d 838 (11th Cir. 1983); *Life Science Church v. Vocke*, 531 F. Supp. 790 (E.D.Wis. 1982); *Whiten v. Ryder Truck Lines, Inc.*, 520 F. Supp. 1174 (M.D.La. 1981)). "[T]he lack of evidence of unconstitutional acts presented by the plaintiff," provides a strong basis for awarding attorney fees to a defendant. *Smith*, 754 F.2d at 184.

Similarly, where a plaintiff brings § 1983 claims against defendants who are not acting under color of law, those claims are frivolous and those defendants are entitled to attorney fees. *Hashem-Younes v. Danou Enters.*, No. 06-CV-15469, 2008 U.S. Dist. LEXIS 21936, at *8 (E.D. Mich. Mar. 20, 2008) ("Plaintiff's § 1983 was frivolous, unreasonable, and without foundation. From the outset, Plaintiff and her attorney knew or should have known that the § 1983 claim was without merit because Defendants were not acting under the 'color of law.'" (citing *Price v. Hawaii,* 789 F. Supp 330, 333 (D. Ha. 1992), which awarded defendants attorney

12

fees "because the plaintiff's § 1983 claim was without merit as no one was acting under the color of law."))

A fee award does not require the prevailing defendant to show that each and every claim brought by the plaintiff is frivolous, unreasonable, or without foundation. Rather, prevailing defendants may recover attorney fees where only some of the plaintiffs' claims are frivolous. *Fox v. Vice*, 563 U.S. 826, 829 (2011). Where a plaintiff asserted both frivolous and non-frivolous claims, "a court may grant reasonable fees to the defendant . . . , but only for costs that the defendant would not have incurred but for the frivolous claims. A trial court has wide discretion in applying this standard." *Id*.

"In reviewing a district court's award of § 1988 fees to defendants [and analyzing whether the plaintiff's claim was frivolous or unfounded], we have previously considered whether the area of law underlying a plaintiff's claim is well-settled." *Bagi v. City of Parma*, 795 F. App'x 338, 342-43 (6th Cir. 2019) (citing *Tarter v. Raybuck*, 742 F.2d 977, 988 (6th Cir. 1984), which overturned an assessment of fees against a § 1983 plaintiff where the nature of the plaintiff's Fourth Amendment rights were not well-settled).

In applying *Christiansburg*, the Fifth Circuit has cited three factors as important in determining frivolity: "(1) whether plaintiff established a prima facie case; (2) whether the defendant offered to settle, and (3) whether the district court

13

dismissed the case or held a full-blown trial." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991). Were the Court to apply the same factors here, all three would strongly favor awarding fees to Protester Defendants.[4]

### B. Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

The Sixth Circuit has construed § 1927 as providing for sanctions when an attorney "knew or should have known that a claim pursued was frivolous, or that his litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1985)*; see also Parrott v. Corley*, 266 F. App'x 412, 414 (6th Cir. 2008) (following *Jones*). Sanctions under § 1927 are also appropriate where there has been "'some conduct on the part of the subject attorney that trial judges . . . could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Parrott*, 266 F. App'x at 414 (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

---

[4] PDs never offered to settle and the 6th circuit cancelled its mandatory civil mediation based on the parties' representations that the case could not be settled.

Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). Sanctions are therefore appropriate "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder*, 109 F.3d at 298 (quoting *Jones*, 789 F.2d at 1230). However, the conduct must exceed "simple inadvertence or negligence that frustrates the trial judge." *Id.* (internal quotation marks removed). Relevant to the case at bar, "[a]n attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise unreasonable and vexatious." *Jones*, 789 F.2d at 1230 (internal quotation marks omitted).

## III.  ARGUMENT AND CONCLUSION

Plaintiffs not only failed to state a claim, the entire action, particularly as to the Protester Defendants, was not only without merit, but frivolous, unreasonable, groundless, lacking in foundation and not warranted by existing law or by any nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Plaintiffs asserted they were injured by having avert their eyes on the way into a synagogue, to avoid primarily silent speech, which they did not agree with, in an adjoining traditional public forum.  Relying on Supreme Court and Sixth Circuit precedent, the Court correctly held that allegations amounting to a subjective "chill" on free exercise of religion, without any actual interference, do not constitute a concrete injury in fact required for Article III standing.  Plaintiffs relied primarily on a decision from the Western District of Michigan which this Court easily distinguished.  Notably, there was nothing uncertain or unknowable about the alleged injury when the Complaint was filed, unlike for example, a car accident where the severity and permanence might not yet be known when the suit is filed.

Further, the injunctive relief sought by Plaintiffs was not available as set forth in Plaintiff's Corrected Motion to Dismiss [ECF No. 45, PageID.1122-1127.]

This Court also held that the PDs' conduct was more than fully protected by the First Amendment.  This is unquestionably correct for all the reasons set forth in PD's Corrected Motion to Dismiss [ECF No. 45, PageID.1108] and Reply [ECF No. 57, PageID.1859] and Addendum [ECF No. 61, PageID.1881].  Yet Plaintiffs' entire case was premised on the baseless assertion that the PDs' conduct was not protected. Plaintiffs never cited a single case holding that First Amendment protected activity could violate 48 U.S.C. §1981, §1982, §1983 or §1985.  It is obvious that Plaintiffs' counsel was fully familiar with First Amendment jurisprudence.  Even in their

16

Complaints, their attorney cited hundreds of cases, including practically every major Supreme Court opinion related to the First Amendment and violations of civil rights. In most if not all instances, however, the cases cited did not stand for the propositions they purported to cite them for. And in several instances, they relied on older cases for principals which had been rescinded by later precedent and decisions.

This was not a case of first impression, nor a novel legal theory based on any reasonable extrapolation of existing precedent. The law underlying Plaintiffs' claims was well settled. There had been no recent substantive First Amendment decision by the Supreme Court, the Sixth Circuit or even the Eastern District of Michigan remotely suggesting that Plaintiffs' novel legal theories had any credence. What Plaintiffs sought was nothing short of a full-scale re-writing of the U.S. Constitution to prioritize and elevate the free exercise of religion clause over the freedom of speech, assembly and petition clause. And furthermore to extend the First Amendment's protection against government interference with free exercise of religion to prohibit interference by private individuals.

The §1983 allegations were especially meritless since the Protester Defendants are not state actors under any conceivable stretch of the definition of state actor. The conspiracy allegations were similarly unsupported as the "conspiracy" amounted to PDs not getting arrested for allegedly violating a sign ordinance. There were no factual allegations whatsoever of a plan, agreement or

acts in furtherance of some conspiracy between the City and the PDs.  There was no conceivable legal basis for asserting that simply not being arrested constitutes a conspiracy with the police.

Although Defendants are not required to establish bad faith to be eligible for attorney fees as prevailing parties, there is certainly evidence to suggest it.  The Court may take further evidence to ascertain the motives of Plaintiffs and their counsel.  Given the utter lack of merit, it is reasonable to infer that Plaintiffs filed and personally served the complaint, just days before Christmas, to intimidate and deter the PDs for engaging in their protected activity.  Plaintiffs and their counsel could have rightly surmised that the PDs, all senior citizens, would not be able to afford to retain counsel to defend them, much less expert §1983 litigators who would be able to keep up with the relentless stream of voluminous filings by Plaintiffs' counsel.

On information and belief, Mr. Susselman first appealed to the congregation's leaders and decision makers to make the entire congregation a party to this action. They declined.  He then requested and obtained permission to appeal to the membership for individual Plaintiffs and found just one initially.  PDs suspect that Plaintiffs' counsel offered *pro bono* representation.

This case was entirely without merit from the beginning and maybe brought in bad faith.  Thus, PDs are entitled to fees and costs as prevailing Defendants.   All

of the work done by PDs' counsel was reasonable and necessary to successfully defend them.  They are entitled to a full award of fees and costs pursuant to 42 U.S.C. §1988

Additionally, as set forth in detail above, in addition to the voluminous, repetitive complaints, Plaintiffs' counsel filed a steady stream of groundless or pointless motions, while PDs counsel were working on their substantive motion to dismiss.  Plaintiff could not reasonably have expected the Court to enter a default judgment against Jewish Witness for Peace or issue an injunction, nor grant it Partial Summary Judgement, before deciding Defendants' Motion to Dismiss.  Those filings were not in legitimate furtherance of any viable legal objectives, but rather intended to burden, harass and delay PD's counsel.  As such, sanctions pursuant to 28 U.S.C. §1927 are also appropriate and should be awarded in an amount the Court deems fair and just.  PDs suggest that $5,000 for each such filing (and attempted filing requiring PDs to engage in a joint letter) would be appropriate.

Respectfully Submitted,

 _/s/Cynthia Heenan_
Cynthia Heenan (P53664)
Hugh M. Davis, Jr. (P12555)
Constitutional Litigation Associates, P.C.
2930 East Jefferson Ave.
Detroit, MI 48207
(313) 961-2255/fax: (313) 922-5130

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Marvin Gerber and Dr. Miriam Brysk

Case No. 2:19-cv-13726

Plaintiff,          Hon. Victoria Roberts

v.

Henry Herskovitz, et al.

Defendants.

_____/

## CERTIFICATE OF SERVICE

Jillian R. Rosati, being duly sworn, deposes and says that on 11/1/20, she served a copy of ***Defendants' Fee Petition pursuant to 42 U.S.C.  §1988*** via email to:

- **Hugh M. Davis , Jr**
  Info@ConLitPC.com,Heenan@ConLitPC.Com,Davis@Conlitpc.com
- **Cynthia Heenan**
  Info@ConLitPC.com,Heenan@ConLitPC.Com
- **Daniel S. Korobkin**
  dkorobkin@aclumich.org,daniel.korobkin@gmail.com,lgore@aclumich.org
- **Stephen K. Postema**
  spostema@a2gov.org,sbrink@a2gov.org,cfrost@a2gov.org,dbagozzi@a2gov.org,sharris@a2gov.org,jallen@a2gov.org
- **Ziporah Reich**
  ziporah@thelawfareproject.org
- **John A. Shea**
  jashea@earthlink.net
- **Marc M. Susselman**
  marcsusselman@gmail.com
- **Timothy S. Wilhelm**
  twilhelm@a2gov.org,JAllen@a2gov.org,SBrink@a2gov.org

***Certificate of Service*** will be served on party listed above at the time of this filing by the Court's ECF filing system.

 /s/Jillian R. Rosati
Jillian R. Rosati

20