## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Marvin Gerber, Dr. Miriam Brysk,

     Plaintiffs,

vs.

Henry Herskovitz, *et al.*,

     Defendants, Jointly and Severally.

Civil Action No. 2:19-cv-13726
Hon. Victoria A. Roberts

_____/

Marc M. Susselman (P29481)
Attorney at Law
43834 Brandywyne Rd.
Canton, Michigan 48187
(734) 416-5186
marcsusselman@gmail.com
Attorney for Plaintiffs

Ziporah Reich (3979639)
The Lawfare Project
633 Third Ave., 21st Floor
New York, N.Y. 10017
(212) 339-6995
Ziporah@thelawfareproject.org
Co-Counsel for Plaintiffs

Timothy S. Wilhelm (P67675)
OFFICE OF THE CITY ATTORNEY
Attorneys for the City of Ann Arbor,
Christopher Taylor, Derek Delacourt,
Stephen Postema, and Kristen Larcom
301 E. Huron St., P.O. Box 8647
Ann Arbor, Michigan 48107-8647
(7340 794-6170
twilhelm@a2gov.org

Cynthia Heenan (P53664)
Hugh M. Davis (P12555)
Constitutional Litigation Associates, PC
Attorneys for Defendants Henry Herskovitz,
Gloria Harb, Tom Saffold, Rudy List and
Chris Mark
220 Bagley St., Ste. 740
Detroit, MI 48226
(313) 961-2255/Fax: (313) 922-5130
Heenan@CoLitPC.Com
Davis@ConLitPC.Com

John A. Shea (P37634)
Attorney for Defendants
Herskovitz, Harb, Saffold, List and
Mark
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

_____/

## PLAINTIFFS' RESPONSE TO THE PROTESTER DEFENDANTS' FEE PETITION AND MOTION FOR SANCTIONS

Plaintiffs, by and through their attorneys, in response to the Protester Defendants' Fee Petition and Motion For Sanctions, state as follows:

1.      Denied, for the reason that it is untrue.  The Court dismissed the First Amended Complaint on the basis of the Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(1), holding that it did not have jurisdiction because the Plaintiffs did not have standing to sue.  The Court expressly stated this in its Order dismissing the lawsuit (ECF #66) at *10: "Plaintiffs fail to allege a concrete injury, and thus fail to allege an injury in fact. This is fatal to their lawsuit since they cannot satisfy an essential element of Article III standing."  The Court repeated this in the decision's Conclusion, stating at *11: "Plaintiffs do not sufficiently allege Article III standing. The Court lacks subject matter jurisdiction and must dismiss this case."  Any statements which the Court included in the decision relating to the protesters' free speech rights under the 1st Amendment were not relevant to the basis for Court's dismissal of the lawsuit, which was exclusively based on its conclusion that the Plaintiffs lacked standing.  Those statements were therefore *dicta*, and cannot form the basis for an award of attorney fees, since the Protester Defendants' did not prevail on the basis of their contention that their protests were protected by the 1st Amendment.  Moreover, to the extent the Court addressed the 1st Amendment issue without finding that the Plaintiffs had standing, the Court violated Supreme Court precedent by addressing the merits of the lawsuit before determining that the Plaintiffs had standing. *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83,

1

89, 94 (1998); *H.L. v. Matheson,* 450 U.S. 398, 430 (1981); *Warth v. Seldin,* 422 U.S. 490, 498, 517-18 (1975).

2.     Denied for the reason that the assertion is untrue.

3.     Denied for the reason that the assertion is untrue.

4.     Denied for the reason that the assertion is untrue.

5.     Admitted.

This Response is supported by the accompanying brief.

**WHEREFORE,** the Protester Defendants' fee petition and motion for sanctions should be denied in their entirety.

Respectfully submitted,

By:   /s  Ziporah Reich            /s  Marc M. Susselman
      Co-counsel for Plaintiffs        Attorney for Plaintiffs

Dated: December 16, 2020

## BRIEF IN SUPPORT OF RESPONSE TO FEE PETIION AND MOTION FOR SANCTIONS

## TABLE OF CONTENTS

QUESTIONS PRESENTED ...................................................................... ii

CONTROLLING AUTHORITY .......................................................... iii

INDEX OF AUTHORITIES ................................................................ iv

COUNTER- STATEMENT OF FACTS AND PROCEEDINGS ....    1

ARGUMENT          ...........................................................................    5

I.    THE COURT MAY NOT AWARD ANY ATTORNEY FEES
OR COSTS PURSUANT TO 42 U.S.C. §1988 ..........................    5

    A.    Since The Court Held That The Plaintiffs Did Not Have
Standing, The Court Did Not Have Subject Matter
Jurisdiction Over The Lawsuit And Therefore Does Not
Have Jurisdiction To Address The Merits Or Award Any
Attorney Fees Or Costs Pursuant To 42 U.S.C. §1988(b).    5

    B.    Even If The Court Could Award Attorney's Fees Pursuant
To 42 U.S.C. §1988, The Attorney Fees Would Have To Be
Limited To The Time Expended Exclusively On The
Question Of Standing. ........................................................    9

        1.    Plaintiffs' contention that they had standing to sue
was not "frivolous, unreasonable, or without
foundation." ...........................................................    14

        2.    The attorneys for the Protester Defendants barely
addressed the standing issue in their motion to
dismiss ....................................................................    18

        3.    The time records submitted by the Protesters do
not document how much time was devoted to
addressing the issue of standing ..............................    19

**II.    THE MOTION FOR SANCTIONS SHOULD BE DENIED.**           20

**CONCLUSION AND RELIEF** ...........................................................           23

## <u>QUESTIONS PRESENTED</u>

I.    Whether the Protester Defendants' Fee Petition pursuant to 42 U.S.C. §1988 should be denied in its entire ty.

      Plaintiffs answer "Yes."

II.   Whether the Protester Defendants' Motion for Sanctions pursuant to 28 U.S.C. §1927 should be denied in its entirety.

      Plaintiffs answer "Yes."

## <u>CONTROLLING AUTHORITY</u>

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,*
434 U.S. 412 (1978)

*Fox v. Vice,* 563 U.S. 826 (2011)

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)

*H.L. v. Matheson,* 450 U.S. 398 (1981)

*Hughes v. Rowe,* 449 U.S. 5 (1980)

*Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir. 1986)

*Riverside v. Rivera,* 477 U.S. 561 (1986)

*Salkil v. Mount Sterling Tp. Police Dept.,* 458 F.3d 520 (6th Cir. 2006)

*Smith v. Jefferson County Bd. Of Sch. Comm'rs,* 788 F.3d 580 (6th Cir. 2015)

*Smith v. Smythe-Cramer Co.,* 754 F.2d 180 (6th Cir. 1985)

*Steel Co. v. Citizens for Better Environment,* 553 U.S. 83 (1998)

*Tartar v. Raybuck,* 742 F.2d 977 (6th Cir. 1984)

*Ward v. Alternative Health Delivery Systems,* 261 F.3d 624 (6th Cir. 2001)

# INDEX OF AUTHORITIES

## CASES                                                    Pages

*ACLU v. Santillanes,* 546 F.3d 1313 (10th Cir. 2008) ............................   4

*Bender v. Williamsport Area School Dist.,* 475 U.S. 534 (1986) ...........   6

*Branson v. Nott,* 62 F.3d 287 (9th Cir. 1995)...........................................   8

*Braunstein v. Arizona Dept. of Transp.,* 683 F.3d 1177 (9th Cir. 2012) .   6

*Butcher v. Michigan Supreme Court,* Case No. 07-14940 (E.D. Mich. 2008)   23

*Chapman v. Barcus,* 372 F. App'x 899 (10th Cir. 2010)........................   8

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,*
    434 U.S. 412 (1978)........................................................................   10,11,14

*Coulter-Owens v. Rodale, Inc.*, Case No. 14-12688 (E.D. Mich. 2015)   16

*Elwood v. Drescher,* 456 F.3d 943 (9th Cir. 2006).................................   8

*Fox v. Vice,* 563 U.S. 826 (2011) .............................................................   13

*Granzeier v. Middleton,* 173 F.3d 568 (6th Cir. 1999) ...........................   12

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ............................................   12

*H.L. v. Matheson,* 450 U.S. 398 (1981) ..................................................   4

*Hughes v. Rowe,* 449 U.S. 5 (1980) ........................................................   11,14

*In re Reuben,* 825 F.2d 977 (6th Cir. 1987) ............................................   21

*Iraira v. Aguirre,* Case No. 01-72394 (E.D. Mich. 2006)......................   18

*Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir. 1986)....................   17

*Midwest Media Prop. v. Ohio,* 512 F.3d 338, 340 (6th Cir. 2008) ..........   4

*Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190 (10th Cir. 2000) .. 18

*Palmer v. Allen,* Case No. 14-cv-12247  (E.D. Mich. 2017) .................. 23

*Pharmacy Records v. Simmons,* Case NO. 05-72126 (E.D. Mich. 2006) 19

*Pitt News v. Fisher,* 215 F.3d 354  (3d Cir. 2000) ................................. 4

*Platinum Sports, Ltd. v. Snyder,* Case No. 11-14635 (E.D. Mich. 2013) 18

*Riverside v. Rivera,* 477 U.S. 561 (1986)................................................. 9

*Salkil v. Mount Sterling Tp. Police Dept.,* 458 F.3d 520 (6th Cir. 2006) 21

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987).................... 16

*Smith v. Jefferson County Bd. Of Sch. Comm'rs,*
788 F.3d 580 (6th Cir. 2015)............................................................ 13

*Smith v. Smythe-Cramer Co.,* 754 F.2d 180 (6th Cir. 1985).................... 17

*Steel Co. v. Citizens for Better Environment,* 553 U.S. 83 (1998).......... 4,5

*Tartar v. Raybuck,* 742 F.2d 977 (6th Cir. 1984)..................................... 17

*U.S. v. State of Mississippi,* 921 F.2d 604 (5th Cir. 1991)....................... 18

*Ward v. Alternative Health Delivery Systems,* 261 F.3d 624 (6th Cir. 2001) 6

*Warth v. Seldin,* 422 U.S. 490 (1975) ...................................................... 5

*Webber v. Michela,* 633 F.2d 518 (8th Cir. 1980) ................................... 8

*Wells v. Rhodes*, 928 F. Supp. 2d 920 (S.D. Ohio 2013) ........................ 15

*W.G. v. Senatore,* 18 F.3d 60 (2d Cir. 1994)............................................ 7

## CONSTITUTION

U.S. Constitution amend. I ..................................................... *passim*

## **STATUTES**

27 U.S.C. §1927 ............................................................ *passim*

42 U.S.C. §1981 ............................................................ 15

42 U.S.C. §1982 ............................................................ 15,16

42 U.S.C. §1983 ............................................................ 15

42 U.S.C. §1985(3) ........................................................ 15,16

42 U.S.C. §1988 ............................................................ *passim*

## **COURT RULES**

Fed. R. Civil P. 8(a)(2) ................................................ 2

Fed. R. Civil P. 12(b)(1) .............................................. *passim*

Fed. R. Civ. P. 12(b)(6) ............................................... *passim*

## COUNTER-STATEMENT OF FACTS AND PROCEEDINGS

This lawsuit was commenced on December 19, 2019. A First Amended Complaint ("FAC"; ECF #11) was filed on January 10, 2020. Plaintiffs alleged that a number of protesters ("Protesters") had been picketing in front of their synagogue every Saturday morning as the congregants entered the synagogue for services, and throughout the services, for 17 years and that seeing the numerous signs that they used, some of which they maintained were Antisemitic, caused them extreme emotional distress. They maintained that the protesters' conduct specifically in front of the synagogue violated several federal statutes and should be subject to reasonable time, place and manner restrictions. They also named the City of Ann Arbor as a Defendant, maintaining that the City's failure to enforce certain provisions of the City Code violated their 1st Amendment right of freedom of worship and also a number of federal statutes. The Plaintiffs requested injunctive relief, damages and attorney fees.

On March 17, 2020, the Protesters filed a corrected motion to dismiss based on Fed. R. Civ. P. 12(b)(1), claiming the Plaintiffs did not have standing, and 12(b)(6), claiming they had failed to state a cognizable claim. (ECF #45) Plaintiffs filed their response opposing the motion to dismiss on June 10, 2020. (ECF #54) On August 19, 2020, the Court issued its Order granting the Protesters' motion to dismiss based on Fed. R. Civ. P. 12(b)(1), holding that the Plaintiffs' alleged extreme emotional distress did not constitute a concrete injury sufficient to confer

standing to sue. (ECF #66) Plaintiffs filed a motion for reconsideration on August 26, 2020 (ECF #67), which the Court denied by Order dated September 3, 2020 (ECF #69).[1] On November 1, the Protesters filed a Fee Petition Pursuant to 42 U.S.C. §1988 And Motion For Sanctions Pursuant To 28 U.S.C.§1927. (ECF #73)

In their Summary of Proceedings, the Protesters include numerous misstatements of fact and assertions irrelevant to whether they are entitled to attorney fees. Regarding the length of Plaintiffs' Complaint and FAC, the lawsuit was addressing a number of complicated constitutional issues which required the factual averments and legal counts they included. The fact that it was long did not per se violate Fed. R. Civ. P. 8(a)(2), since its length was intended to avoid a motion to dismiss and was therefore justified. Plaintiffs have seen far longer complaints filed in the District Court which were not dismissed for purportedly violating Rule 8(a)(2).[2] The only issue which the Court addressed in its Order dismissing the FAC was whether the Plaintiffs had standing. Whether the Court was correct in that conclusion will be determined by the disposition of the appeal by the Sixth Circuit.

As the Plaintiffs have repeatedly stated in the course of this lawsuit, they

---

[1] Plaintiffs have filed an appeal from the Court's Order dismissing the lawsuit which is currently pending in the Sixth Circuit Court of Appeals.

[2] Indeed, during the telephonic conference call referred to, Ms. Heenan interjected that she herself had filed extremely lengthy complaints and indicated that she was not objecting to the length of the Complaint, but was simply requesting additional time to prepare a response, either by filing an Answer or a motion. The Protesters did not file a motion to strike the Complaint, despite the Court's comment regarding its length.

were not seeking to prohibit the protesters from expressing their views everywhere in Ann Arbor, contrary to the assertion on p. 2 that they "sought this Court's assistance in silencing" the protesters' speech. They were only seeking reasonable time, place and manner restrictions on their speech in proximity to their synagogue, much of which was Antisemitic, and which they had been engaging in every Saturday morning for 17 (now going on 18) years. The Supreme Court and lower federal courts have granted such limitations on speech in numerous cases, which Plaintiffs cited in their briefs and see no reason to repeat those citations here. Moreover, the fact that they were engaging in their protest in a public right-of-way did not insulate their protests from the Plaintiffs' lawsuit, when the Plaintiffs maintained that their use of the public right-of-way for this purpose violated unambiguous provisions in the Ann Arbor City Code which the City was refusing to enforce, and which was the basis for the legal claims made against the City, and which rendered the Protesters' conduct state action under 42 U.S.C. §1983.

The discussion on pp. 2-5 regarding whether the Protesters' conduct was protected by the 1st Amendment is entirely irrelevant to whether they are entitled to attorney fees for disputing Plaintiffs' contention that it was not absolutely protected in proximity to a Jewish house of worship. The Court strictly speaking did not rule on the 1st Amendment issue. All of the Court's assertions in its Order granting the motion to dismiss based on the Protesters' 12(b)(1) motion relating to the 1st Amendment issue are therefore *dicta*. The Court expressly stated, "Plaintiffs fail to

allege a concrete injury, and thus fail to allege an injury in fact. This is fatal to their lawsuit since they cannot satisfy an essential element of Article III standing." (ECF #66, at *10) The Court repeated this in its Conclusion, stating at *11: "Plaintiffs do not sufficiently allege Article III standing.  The Court lacks subject matter jurisdiction and must dismiss this case."  By including statements which addressed the merits of the 1st Amendment issue, the Court violated several Supreme Court and lower court decisions which have expressly held that a federal court is precluded from addressing the merits unless it has found that the plaintiffs have standing.  *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 89, 94 (1998); *H.L. v. Matheson,* 450 U.S. 398, 430 (1981); *Warth v. Seldin,* 422 U.S. 490, 498, 517-18 (1975); *Midwest Media Prop. v. Ohio,* 512 F.3d 338, 340 (6th Cir. 2008); *Pitt News v. Fisher,* 215 F.3d 354, 360 (3d Cir. 2000); *ACLU v. Santillanes,* 546 F.3d 1313, 1319 (10th Cir. 2008). Since the Court concluded that the Plaintiffs did not have standing, then it improperly addressed the merits regarding the 1st Amendment application, an issue which Plaintiffs have raised in their appeal before the Sixth Circuit.

Therefore, to the extent the Protesters may be entitled to any attorney fees at all, they are only entitled to recover attorney fees for the time that they expended on addressing the issue of standing, which was the sole and exclusive basis for the Court's decision to dismiss the lawsuit.  They are not entitled to recover attorney fees for time expended on addressing the 1st Amendment issue, or any other issue,

since they were not the basis for the Court's ruling, and the Court only improperly addressed them in *dicta*.

## ARGUMENT

**I.    THE COURT MAY NOT AWARD ANY ATTORNEY FEES OR COSTS PURSUANT TO 42 U.S.C. §1988.**

42 U.S.C. §1988(b) state in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title… the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs … .

**A.    Since The Court Held That The Plaintiffs Did Not Have Standing, The Court Did Not Have Subject Matter Jurisdiction Over The Lawsuit And Therefore Does Not Have Jurisdiction To Address The Merits Or Award Any Attorney Fees Or Costs Pursuant To 42 U.S.C. §1988(b).**

The Court held that the Plaintiffs did not have standing to sue. This was the only ruling which the Court made in its Order dismissing the lawsuit. The Court made no ruling regarding the Protester Defendants' ("Protesters") motion to dismiss the lawsuit for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Any statements in the Court's decision purporting to address the merits of the lawsuit and the 1st Amendment issues are therefore *dicta* and the Protesters may not be awarded attorney fees for any time they expended in support of the Court's *dicta* – a party cannot be deemed a prevailing party regarding issues which are only supported by *dicta* in the Court's dispositive ruling.

5

If a court rules that the plaintiff(s) do not have standing to sue, then the court does not have subject matter jurisdiction and is precluded from reaching the merits of the lawsuit.  As the Supreme Court stated in *Steel Co. v. Citizens for Better Environment,* 553 U.S. 83 (1998), *id.* At 109-110:

> Having found that none of the relief sought by respondent would likely remedy its alleged injury in fact, we must conclude that respondent lacks standing to maintain this suit, and that we and the lower courts lack jurisdiction to entertain it.

The Supreme Court similarly stated in *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 549 (1986):

> Before considering each of the standing theories, it is appropriate to restate certain basic principles that limit the power of every federal court. Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. … For that reason, every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. … "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." …
>
> * * *
>
> We therefore hold that because the Court of Appeals was without jurisdiction to hear the appeal, it was without authority to decide the merits. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded with instructions to dismiss the appeal for want of jurisdiction. (Citations omitted.)

*See also Ward v. Alternative Health Delivery Systems,* 261 F.3d 624, 626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of

standing is said to deprive a court of jurisdiction. … Because plaintiff's claims failed for lack of such statutory standing, we find that plaintiff's claims were properly dismissed for lack of subject matter jurisdiction."); *Braunstein v. Arizona Dept. of Transp.,* 683 F.3d 1177, 1184 (9th Cir. 2012) ("Although general allegations of injury can suffice at the pleading stage, the plaintiff must set forth 'specific facts' to survive a motion for summary judgment based on a lack of standing. … 'A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." Citations omitted.)

Where a plaintiff lacks standing, a district court has no subject matter over the lawsuit and is precluded from addressing the merits of the lawsuit in any respect. Consequently, under such circumstances a district court is likewise precluded from awarding attorney fees to any of the defendants because, being precluded from addressing the merits, there can be no prevailing party. The fact that the Court here, although holding the plaintiffs did not have standing, went beyond its authority and proceeded to address the merits of the lawsuit, and in particular the merits of the Protesters' 1st Amendment defense, does not alter the legal fact that the Court had no jurisdiction to do so. Therefore the Protesters were not prevailing parties with respect to any of these issues, including the 1st Amendment issues, which is a prerequisite to be awarded attorney fees under 42 U.S.C. §1988. They are accordingly not entitled to recover any attorney fees for any time that they expended on

7

these issues, and the Court is legally precluded from awarding any attorney fees for such expenditure of time. As the Second Circuit Court of Appeals stated in *W.G. v. Senatore,* 18 F.3d 60 (2d Cir. 1994), *id.* at 64:

> [F]ee shifting provisions cannot themselves confer subject matter jurisdiction. Rather, such provision must be read in conjunction with substantive statutes to establish proper jurisdiction over fee applications. For example, in the civil rights context, 42 U.S.C. §1988 empowers a court to award reasonable attorney's fees to the prevailing party in a proceeding brought to enforce one of the substantive sections of the civil rights laws. Where the is n subject matter jurisdiction to proceed with the substantive claim, as a matter of law "[t]hat lack of jurisdiction bar[s] an award of attorneys fees under section 1988." *Keene Corp. v. Cass,* 908 F.2d 293, 298 (8th Cir. 1990) (reversing district court's award of attorney's feed under §1988 after affirming district court's conclusion that it lacked subject matter jurisdiction under §1983)[.]  (Some citations omitted.)

*See Elwood v. Drescher,* 456 F.3d 943, 948 (9th Cir. 2006) ("Where a claim is dismissed for lack of subject matter jurisdiction, the defendant is not a prevailing party within the meaning of §1988, and the district court accordingly lacks jurisdiction to award attorneys' fees.").[3]

---

[3] *See also Webber v. Michela,* 633 F.2d 518, 519 (8th Cir. 1980) ("Because we decide the case on jurisdictional grounds and reach no decision on the merits, we believe that the award of attorneys' fees and costs has become inappropriate and, therefore, vacate that award."); *Branson v. Nott,* 62 F.3d 287, 292-93 (9th Cir. 1995) ("Branson contends that the district court erred in sanctioning him because his complaint was not frivolous. We agree that it was error to impose sanctions under 42 U.S.C. §1988, but for a different reason; because the district court lacked subject matter jurisdiction over Branson's purported civil rights claim in the first instance, it also lacked the power to award attorney's fees under the civil rights attorney fee statute.") (Footnote omitted); *Chapman v. Barcus,* 372 F. App'x 899, 902-03 (10th Cir. 2010) ("In instances of *Younger* abstention, … a dismissal 'makes no comment
(Footnote continued.)

There are no decisions holding the opposite of the above – that a court which does not have subject jurisdiction can nonetheless award attorney fees under 42. U.S.C. §1988. While there has been no decision by the Sixth Circuit addressing this issue, the weight of authority is that under such circumstances the court may not award attorney fees, because there is no prevailing party. This makes sense, because holding that a plaintiff does not have standing is not a decision on the merits, and attorney fees under 42 U.S.C. §1988 may only be awarded to a party that prevails on the merits. Consequently, all of the statements on pp. 16-18 of their petition to the effect that Plaintiffs failed to state a claim, that the protesters' conduct was absolutely protected by the 1st Amendment and not subject to any injunctive relief, that Plaintiffs' attorney acted in bad faith, etc., etc. – none of which is accurate or legally correct – are irrelevant to the issue of whether they are entitled to recover attorney fees pursuant to 42 U.S.C. §1988, since they failed to prevail on any of these issues. Therefore, the Protesters' fee petition pursuant to 42 U.S.C. §1988 must be denied in its entirety, including their petition for costs.

**B.     Even If The Court Could Award Attorney's Fees Pursuant To 42 U.S.C. §1988, The Attorney Fees Would Have To Be Limited To The Time Expended Exclusively On The Question Of Standing.**

In *Riverside v. Rivera,* 477 U.S. 561 (1986), the Court observed that one of

---

on the merits of the case, and does not materially alter the legal relationship between the parties.' … The individual defendants are not prevailing parties at this point, and are therefore not entitled to attorneys' fees.) (Citations omitted.)

9

the main purposes behind allowing attorneys who prevail in pursuing civil rights lawsuits on behalf of plaintiffs is to serve as an incentive to encourage attorneys to represent individuals who have a colorable argument their civil/constitutional rights have been violated, and in so doing, attorneys act as private attorneys general vindicating the rights not only of their clients, but of the public. Quoting from the Congressional Record, the Court stated, *id.* at 575, "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." 122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney).

While recognizing that a prevailing defendant may likewise, under certain circumstances, be entitled to recover attorney fees under 42 U.S.C. §1988, those circumstances should be narrowly construed so as not to punish a losing plaintiff simply by virtue of having lost under a sincere and genuine belief that his/her civil rights had been violated. Such an application of the fee shifting statute would be counter-productive to one of its main objectives - to foster challenges to civil rights violations by not inhibiting plaintiffs from taking the risk of litigation out of concern that, if they lose, they will have to reimburse the defendant's attorney fees. In keeping with this rationale, in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412 (1978), the Court stated, *id.* at 421-22:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even

10

though not brought in subjective bad faith.

In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. **Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.**

… Hence, **a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so**. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense. (Emphasis added; italics in the original; footnote omitted.)

The Court elaborated on its ruling in *Christiansburg* in *Hughes v. Rowe,* 449

U.S. 5 (1980), holding that the standard applied in Christiansburg to fee shifting

under Title VII applied to fee shifting under §1988 as well, stating, *id.* at 15-16:

Although arguably a different standard might be applied in a civil rights action under 42 U.S.C. §1983, we can perceive no reason for applying a less stringent standard. The plaintiff's action must be meritless in the sense that it is groundless or without foundation. **The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.** …

. . .

**Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christiansburg*.** (Emphasis

added.)

The Supreme Court provided further guidance regarding how the fee shifting formula should be applied in cases in which a plaintiff is only partially successful and is the prevailing party with respect to fewer than all of the claims the plaintiff has pled, stating in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), *id.* 434-36:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants – often an institution and its officers, as in this case – counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> * * *
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, **the most critical factor is the degree of success obtained**.
>
> Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services.  Although the plaintiff often may succeed in identifying some unlawful practices of conditions, the range of possible success is vast. **That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of time was reasonable in relation to the success achieved.**  (Emphasis added; citation and footnote omitted.)

These considerations - that any attorney fee award should reflect the degree of success that the prevailing party has obtained, and that the award should be reduced in proportion to the party's failure to achieve 100% success - have been reiterated in several decisions by the Sixth Circuit. *See, e.g., Granzeier v. Middleton,* 173 F.3d 568 (6th Cir. 1999); *Smith v. Jefferson County Bd. Of Sch. Comm'rs,* 788 F.3d 580 (6th Cir. 2015). In *Fox v. Vice,* 563 U.S. 826 (2011), the Court held that the proportionality considerations which apply to evaluating the appropriate attorney fee award which should be approved for a prevailing plaintiff should likewise apply to a prevailing defendant, stating, *id.* at 834:

> Analogous principles indicate that a defendant may deserve fees even if not all the plaintiff's claims were frivolous. In this context, §1988 serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary. … That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous claims. But the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed.

Applying the above principles, the Protesters strictly speaking are not entitled to recover any attorney fees, even for the time their attorneys devoted to addressing the single issue which the Court ruled on, namely whether the Plaintiffs had standing. As demonstrated in Argument I(A), since the Court ruled only regarding the Protesters' Rule 12(b)(1) motion on the issue of whether the Plaintiffs had standing to sue, and by holding that they did not, the Court lacks jurisdiction to

award any attorney fees related to the issues which the Protesters raised in their Rule 12(b)(6) motion and brief. This leaves only the question whether, for the sake of argument, the Protesters are entitled to recover attorney fees for any legal work done related to the single issue the Court did rule on – the issue of whether the Plaintiffs had standing.

Plaintiffs maintain that they are not entitled to recover any attorney fees on the standing issue for the following reasons: (1) Plaintiffs' contention that they had standing was not a position which was "frivolous, unreasonable, or without foundation," as required under *Chrisiansburg, supra,* and the fact that the Court held they did not have standing does not entail that the claim was frivolous. (2) The attorneys for the Protesters barely touched on the issue of standing in their brief in support of their motion to dismiss (ECF #45). (3) The Protesters' attorneys have failed to include in the time records which they have attached to their fee petition the amount of time which they expended on the standing issue.  Plaintiffs will address each of these considerations below.

## 1.    Plaintiffs' contention that they had standing to sue was not "frivolous, unreasonable, or without foundation."

The Court held that Plaintiffs did not have standing to sue because their assertion they suffered extreme emotional distress from seeing the Protesters' signs in front of their synagogue as they attended religious services every Saturday morning, for 17 years did not constitute a concrete injury.  As indicated in *Christians-*

14

*burg* and *Hughes, supra,* the fact that the Court rejected the Plaintiffs' position does not automatically entail that the position was "frivolous, unreasonable, or without foundation." In making this ruling, the Court disregarded the five affidavits in the record by the Plaintiffs and three former members of the synagogue documenting the emotional distress, anxiety and fear for their safety which they experienced when approaching the synagogue and seeing the protesters' signs, many of which they attested they believed were Antisemitic. (ECF #22, Exhibits 4, 5, 6, 7 and 11.)

The Court also discounted - without justification, Plaintiffs submit – Plaintiffs' citation of case law which held that (1) a depreciation in environmental enjoyment can suffice to confer standing; (2) emotional distress caused by verbal sexual harassment alone in the workplace can suffice to confer standing; (3) emotional distress caused by verbal racial or ethnic harassment alone in the workplace can suffice to confer standing; (4) emotional distress caused by an alleged defamatory statement can suffice to confer standing; (5) an alleged violation of a constitutional right protected by the 1st Amendment can suffice to confer standing in the face of a Rule 12(b)(1) motion – even without the necessity of proving that the alleged violation actually occurred, which would be necessary to withstand a Rule 12(b)(6) motion; (6) an alleged violation of 42 U.S.C. §§ 1981, or 1982, or 1983, or 1985(3) can suffice to confer standing in the face of a Rule 12(b)(1) motion – even without the necessity of proving that the alleged violations actually occurred, which would be necessary to withstand a Rule 12(b)(6) motion – and that Plaintiffs had alleged

that the Protesters had violated **all four** of these federal Civil Rights statutes.

The Court ignored Plaintiffs' multiple citation of *Wells v. Rhodes*, 928 F. Supp. 2d 920 (S.D. Ohio 2013), in which the Court held that the emotional distress of an African-American family caused by seeing a burning cross in front of their rented home – without any indication either they or their property was physically damaged – sufficed to confer standing on the African-American family to sue, alleging violations of 42 U.S.C. §§ 1982 and 1985(3), yet the emotional distress of Jewish congregants, seeing signs every Saturday morning for 17 years which insulted both their race and ethnicity (*see Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987)), did not suffice to confer standing to allege violations of the very same federal statutes, raising questions whether the Court believed the emotional distress of African-Americans was somehow legally more significant and grievous than the emotional distress suffered by Jews – a belief which would clearly violate the Equal Protection Clause, particularly if held by a federal judge – unless, alternatively, the Court believed the decision by the district court in *Wells* was erroneous, and that the emotional distress of the African-American family, upon seeing a burning cross in front of their rented home on a single occasion, was not sufficient to confer standing.[4] The rationale for the Court's disregard of the holding in *Wells* is

---

[4] The Court likewise failed to address Plaintiffs' citation of one of its own decisions, *Coulter-Owens v. Rodale, Inc.*, Case No. 14-12688 (E.D. Mich. 2015) (J. Roberts), (ECF #50, Exhibit 4), in which the Court rejected the defendant's claim
(Footnote continued.)

indeterminable, since the Court did not mention the case, either in its decision dismissing the lawsuit or in its Order denying Plaintiffs' motion for reconsideration.

In light of the above multiple legal authorities which Plaintiffs relied on as a basis for their position that they had standing to sue, it can hardly be maintained that the position was "frivolous, unreasonable, or without foundation." The fact that the Court disagreed and rejected this position does not render the position "frivolous, unreasonable, or without foundation" and may not constitute a basis for granting the Protesters attorney fees or costs pursuant to 42 U.S.C. §1988. *See Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir. 1986) (reversing an award of attorney fees to defendant, stating, *id.* at 1233, "[The evidence] fall[s] short of a finding that Jones's termination claim was frivolous, unreasonable or groundless, and indeed, the existing record is inadequate to support such a finding."); *Smith v. Smythe-Cramer Co.,* 754 F.2d 180 (6th Cir. 1985) (reversing an award of attorney fees to the defendants, stating, *id.* at 185, "We conclude that the district court abused its discretion by awarding attorneys fees to defendants. … Plaintiffs have presented an adequate basis for their suit to avoid the conclusion that it is frivolous, unreasonable, or without foundation."); *Tartar v. Raybuck,* 742 F.2d 977 (6th Cir. 1984) (reversing an award of attorney fees to the defendants, stating, *id.* at 988, "That the

_____

the plaintiff did not have standing, by stating, *id.* at *5: "Coulter-Owens only needs to allege a violation of [Michigan's Video Rental Privacy Act] in order to have Article III standing. She does this; she has Article III standing." The Court ignored that Plaintiffs had alleged the Protesters had violated four civil rights statutes.

district court or this court ultimately declined to adopt the positions urged by plaintiffs on these questions is not tantamount to concluding defendants are entitled to an attorneys fees award under section 1988."); *U.S. v. State of Mississippi,* 921 F.2d 604 (5th Cir. 1991) (affirming a denial of attorney fees to defendant, stating, *id.* at 609, "We review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful."); *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190 (10th Cir. 2000) (affirming a district court's denial of awarding attorney fees to the defendant, stating, *id.* at 1203, the standard "is difficult to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff.").[5]

2. **The attorneys for the Protester Defendants barely addressed the standing issue in their motion to dismiss.**

The only discussion of the issue of standing by the Protesters' attorneys appears in their Corrected Motion To Dismiss, at p. 11. (ECF #45) It consists of a single paragraph, 10 lines long, and contains only one case citation. It could not have

---

[5] *See also Platinum Sports, Ltd. v. Snyder,* Case No. 11-14635 (E.D. Mich. 2013) (J. Corbett O'Meara) ("In these cases, although the court found Plaintiff's arguments to be without merit, it cannot conclude that Plaintiff engaged in 'egregious misconduct' by filing actions the are 'frivolous, unreasonable, or without foundation.' ... ('A district court cannot engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Id.* at *3) (copy attached as Exhibit 1); *Iraira v. Aguirre,* Case No. 01-72394 (E.D. Mich. 2006) (J. Roberts) (Plaintiffs' claims ... were colorable on their face, even though the evidence ultimately did not bear on the claims. Therefore, the Court finds that an award of fees and costs to [the defendants] is not warranted." *Id.* at *16.) (copy attached as Exhibit 2).

required more than 3-4 hours to research and write. If they were entitled to recover any attorney fees whatsoever pursuant to 42 U.S.C. §1988, it would be limited to the meager expenditure of time required to research and write this single paragraph.

### 3. The time records submitted by the Protesters do not document how much time was devoted to addressing the issue of standing.

A defendant is only entitled to recover fees for that time which the defendant's attorney documents s/he spent on the precise issue over which the defendant prevailed. Here, even assuming that the Court's lack of jurisdiction does not preclude the Protesters from recovering attorney fees altogether, but allows a recovery of attorney fees related to their attorneys' advocacy related to the standing issue, in order to recover any attorney fees for time expended on this issue, the attorneys must provide documentation of their time expended on this issue, and only on this issue. As this Court stated in *Pharmacy Records v. Simmons,* Case NO. 05-72126 (E.D. Mich. 2006) (J. Roberts) (copy attached as Exhibit 3), *id.* at 4-5:

> Plaintiffs object that Defendants used "block billing" because the detail for two entries state that the time was spent on both drafting an Answer with affirmative defenses and drafting the Motion, but does not distinguish between the two.
>
> Defendants respond that the Motion and the Answer are "interconnected." Defendants fail to explain why they did not itemize time for the Motion only. The Court's Order only allows costs and fees incurred with the Motion, not any related matter. While Defendants' Reply includes a timeline of the work done concerning the Motion, it does not attempt to distinguish the time spent on the Motion from time spent on the Answer. As Plaintiffs noted earlier, because much of the research on the issues in this case was done for a previous motion in another case, there is no reasonable way for the Court to determine how many

hours are attributable to the Motion only. Accordingly, $1,360.00 will be subtracted.

The time records submitted by the Protesters' attorneys relate predominantly to pleadings, motions and briefs unrelated to the standing issue, and therefore do not identify the amount of time they devoted to the standing issue. With regard to their motion to dismiss (ECF #38)[6] and the corrected motion to dismiss (ECF #45), the preponderance of the arguments relate to their R 12(b)(6) motion to dismiss for failure to state a claim and their argument that the protesters' conduct was protected by the 1st Amendment.  Per Argument I(A), they are not entitled to recover any attorney fees for time devoted to these issues. Nowhere in their time records, however, do they identify the amount of time they spent exclusively on research and writing devoted to the standing issue. They are therefore precluded from recovering attorney fees for any legal work devoted to the standing issue. The Protesters' fee petition pursuant to 42 U.S.C. §1988 should accordingly be denied in its entirety.

## II.    THE MOTION FOR SANCTIONS SHOULD BE DENIED.

28 U.S.C. §1927 states:

---

[6] The Protesters are not entitled to recover any attorney fees for the work their attorneys expended on writing the initial motion to dismiss, since the Court struck it because it exceeded the page limit. (ECF #42) The Harb/Davis time records (Ex. 1) include time devoted to researching and writing the initial motion to dismiss which they are not entitled to be compensated for. (*See* Ex. 1, 03/05/20 through 03/18/20.) The same is true regarding Mr. Shea's time records. (*See* Ex.3, 03/07/20 through 03/17/20.) Moreover, the time records of Constitutional Litigation Associates do not disambiguate what legal work was performed by Davis versus Heenan.

> Any attorney or other person admitted to conduct cases in any court of
> the United States or any Territory thereof who so multiplies the pro-
> ceedings in any case unreasonably and vexatiously may be required by
> the court to satisfy personally the excess costs, expenses, and attor-
> neys' fees reasonably incurred because of such conduct.

In *Salkil v. Mount Sterling Tp. Police Dept.,* 458 F.3d 520, 532 (6th Cir.

2006), the Court explicated the grounds which can justify sanctions under §1927:

> [A] district court may impose sanctions under §1927 when it deter-
> mines that "'an attorney reasonably should know that a claim pursued
> is frivolous.'" … Simple inadvertence or negligence, however, will not
> support sanctions under §1927. … "'There must be some conduct on
> the part of the subject attorney that trial judges, applying collective
> wisdom of their experience on the bench could agree falls short of the
> obligations owed by a member of the bar to the court.'" … Moreover,
> "'an award of attorneys' fees against a losing plaintiff in a civil rights
> action is an extreme sanction, and must be limited to truly egregious
> cases of misconduct.'" …
>
> In this case, the district court imposed attorneys' fees under §1927 for
> the same reason it imposed Rule 11 sanctions: Salkil lacked standing
> to bring any First Amendment claim. As explained in previous section,
> Skagg's failure to recognize that Salkil lacked standing was not unrea-
> sonable. Accordingly, it most certainly did not constitute egregious
> misconduct.  (Citations omitted.)

*See also In re Reuben,* 825 F.2d 977, 990 (6th Cir. 1987) ("A district judge should

not await the aggregation of what he considers multiple acts of misconduct and then

levy an aggregated sanction without at least warning the attorneys at the time of

each act or reserving decision upon timely requests by opposing counsel.")

The Protesters contend that sanctions are appropriate based on three catego-

ries of alleged misconduct: (1) filing a motion for entry of a default judgment

against Jewish Witnesses for Peace and Friends ("Witnesses") (ECF #16); (2) filing

a motion for partial summary judgment against the City of Ann Arbor (ECF #23) which the Court struck (ECF #29); and (3), for filing a series of joint letters requesting leave to file a motion for a preliminary injunction (ECF #55); requesting leave to file a motion for partial summary judgment against the City (ECF #60); and requesting leave to file a Second Amended Complaint (ECF #64).

None of these actions, either individually or cumulatively, warrant the imposition of sanctions under §1927. Regarding (1), the Court denied the motion for a default judgment on the basis that courts prefer to render decisions on the merits, not by default. This was a discretionary decision by the Court and did not entail that Plaintiffs' motion was erroneous, frivolous or unreasonable. Witnesses had been properly served with the FAC and had failed to file an appearance. Plaintiffs were entitled to seek a default judgment, particularly when its defense was that it did not constitute a legal entity under Michigan law, a frivolous defense when Michigan law clearly held that Witnesses was a voluntary unincorporated association. Regarding (2), the motion for partial summary judgement against the City did not multiply any proceedings for the Protesters' attorneys, since the motion was not directed at them. None of the Defendants were required to respond to the motion, because the Court struck the motion before any response was called for. Moreover, the motion related to a question of law only – the interpretation of the City's Code provisions relating to signs, and did not require any discovery. Finally, regarding (3), all of the joint letters requesting leave to file the motions in question were pre-

pared and filed in accordance with the Court's requirements under the Court's own Order (ECF #44). Plaintiffs' attorneys may not be sanctioned for following the very procedure which the Court required, particularly when leave was denied and the motions were not filed. Moreover, the proposed motions all related to matters which under the Federal Rules, were permitted to be filed at any time, even if a motion to dismiss were pending. None of the actions for which the Protesters seek sanctions are therefore sanctionable under §1927. The motion for sanctions pursuant to 28 U.S.C. §1927 should accordingly be denied.[7]

## **CONCLUSION AND RELIEF**

Based on the above arguments, the Court should deny the Protester Defendants' Fee Petition and Motion For Sanctions in their entirety.

---

[7] *See, e.g., Butcher v. Michigan Supreme Court,* Case No. 07-14940 (E.D. Mich. 2008) (J. Roberts) (copy attached as Exhibit 4), in which the attorney plaintiff had filed a lawsuit against the Michigan Supreme Court, the Michigan Attorney Grievance Commission, and the Michigan Attorney Discipline Board, contesting attorney discipline which the defendants had imposed on him. The Court held that the lawsuit was barred by the Rooker-Feldman doctrine and by the State's 11th Amendment sovereign immunity, which arguably rendered the Complaint and all of the attorney plaintiff's filings as vexatiously and unreasonably multiplying proceedings, yet the Court held that §1927 sanctions were not called for. What the attorney plaintiff did in *Butcher* was far more egregious than anything which Plaintiffs' attorneys are accused of having done in the instant lawsuit. *See also Palmer v. Allen,* Case No. 14-cv-12247 (E.D. Mich. 2017) (J. Drain) (copy attached as Exhibit 5) ("Defendants correctly note that Plaintiff's counsel has failed to comply with Local Rules, Court orders, and case deadlines on multiple occasions. However, Defendants have not shown that Plaintiffs' counsel's actions exceeded mere negligence or incompetence.")

Respectfully submitted,

By:   /s  Ziporah Reich_____          /s  Marc M. Susselman\_\_\_\_
        Co-counsel for Plaintiffs          Attorney for Plaintiffs

Dated: December 16, 2020